UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| NORFOLK COUNTY RETIREMENT SYSTEM, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br>v.<br><br>COMMUNITY HEALTH SYSTEMS, INC., WAYNE T. SMITH, and W. LARRY CASH,<br><br>Defendants. | Civil Action No. 3:11-cv-00433<br><br>Honorable John T. Nixon<br>Magistrate E. Clifton Knowles |

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF THE GENERAL RETIREMENT SYSTEM OF THE CITY OF DETROIT FOR APPOINTMENT AS LEAD PLAINTIFF, FOR APPROVAL OF ITS SELECTION OF LEAD COUNSEL, AND FOR CONSOLIDATION OF ALL RELATED ACTIONS**

| | : | |
|---|---|---|
| DE ZHENG, individually and on behalf of all others similarly situated, | : : : | Civil Action No. 3:11-cv-00451 |
| Plaintiff, | : : | Honorable John T. Nixon |
| v. | : : | Magistrate E. Clifton Knowles |
| COMMUNITY HEALTH SYSTEMS, INC., WAYNE T. SMITH, and W. LARRY CASH, | : : : : | |
| Defendants. | : : | |
| MINNEAPOLIS FIREFIGHTERS' RELIEF ASSOCIATION, on behalf of itself and all others similarly situated, | : : : : | Civil Action No. 3:11-cv-00601 Honorable Kevin H. Sharp Magistrate E. Clifton Knowles |
| Plaintiff, | : : | |
| v. | : : | |
| COMMUNITY HEALTH SYSTEMS, INC., WAYNE T. SMITH, W. LARRY CASH, and THOMAS MARK BUFORD, | : : : : | |
| Defendants. | : : | |

# TABLE OF CONTENTS

Page(s)

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION ............................................................................................................... 1

FACTUAL BACKGROUND OF THE RELATED ACTIONS ....................................... 2

ARGUMENT ....................................................................................................................... 5

    1.    Detroit Should be Appointed Lead Plaintiff ........................................... 5

        a.    Detroit Has the Largest Financial Interest in the Relief Sought by the Class ................................................................................................ 5

    2.    Detroit is a Sophisticated Institutional Investor That Satisfies the Relevant Requirements of Rule 23 ........................................................ 7

        a.    Detroit's Claims Are Typical of the Class' Claims ............................ 7

        b.    Detroit Will Fairly and Adequately Represent the Interests of the Class ................................................................................................ 8

    3.    This Court Should Approve Detroit's Choice of Bernstein Litowitz as Lead Counsel for the Class ................................................................... 10

    4.    This Court Should Consolidate the Related Actions ........................... 11

CONCLUSION ................................................................................................................... 12

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Burgraff v. Green Bankshares, Inc.*,
 Nos. 10-cv-00253 and 11-cv-00014, 2011 U.S. Dist. LEXIS 14573
 (E.D. Tenn. Feb. 11, 2011) ................................................................................... 5, 7, 8, 10

*Garden City Employees Retirement System v. Psychiatric Solutions, Inc.*,
 Nos. 09-cv-00882 and 09-cv-01211, 2010 U.S. Dist. LEXIS 42915
 (M.D. Tenn. Apr. 30, 2010) ................................................................................................ 5, 9

*In re American Service Group, Inc.*,
 No. 06-00323, 2006 U.S. Dist. LEXIS 61779 (M.D. Tenn. Aug. 28, 2006) ................... 5, 6, 10

*In re Comverse Technology, Inc. Securities Litigation*,
 No. 06-CV-1825(NGG)(RER), 2007 WL 680779 (E.D.N.Y. Mar. 2, 2007) ........................... 6

*In re Goodyear Tire & Rubber Co. Securities Litigation*,
 Case No. 03CV2166, 2004 U.S. Dist. LEXIS 27043 (N.D. Ohio May 12, 2004) .............. 7, 10

*In re Telxon Corp. Securities Litigation*,
 67 F. Supp. 2d 803 (N.D. Ohio 1999) .................................................................................... 12

*Johnson v. Dana Corp.*,
 236 F.R.D. 349 (N.D. Ohio 2006) ............................................................................................ 6

*Ohio Public Employees Retirement System v. Fannie Mae*,
 357 F.Supp.2d 1027 (S.D. Ohio 2005) ............................................................................ *passim*

*Weltz v. Lee*,
 199 F.R.D. 129 (S.D.N.Y. 2001) ............................................................................................ 12

STATUTES

15 U.S.C. § 78j(b) ........................................................................................................................ 1, 11

15 U.S.C. § 78t(a) ........................................................................................................................ 1, 11

15 U.S.C. § 78u-4 ..................................................................................................................... *passim*

OTHER AUTHORITIES

17 C.F.R. § 240.10b-5 ........................................................................................................................ 1

Fed. R. Civ. P. 23 ................................................................................................................. 2, 5, 7, 8

Fed. R. Civ. P. 42(a) ........................................................................................................1, 12

H.R. Conf. Rep. No. 104-369 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730 ..................................9

General Retirement System of the City of Detroit ("Detroit") respectfully submits this memorandum in support of its motion (i) for appointment as Lead Plaintiff pursuant to Section 21D(a)(3)(B) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3)(B), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"); (ii) for approval of its selection of Bernstein Litowitz Berger & Grossmann LLP ("Bernstein Litowitz") as Lead Counsel for the Class and The Law Offices of David S. Hagy as Local Counsel, and (iii) for consolidation of all related securities class actions pursuant to Fed. R. Civ. P. 42(a) (the "Related Actions").

## INTRODUCTION

Now pending in this District are three securities class actions brought pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b), 78t(a)), and Securities and Exchange Commission ("SEC") Rule 10b-5 promulgated thereunder (17 C.F.R. § 240.10b-5), that allege that Community Health Systems, Inc. ("CHS" or the "Company") and certain of the Company's senior executives and directors (collectively, the "Defendants") violated the federal securities laws.[1] During the period from July 27, 2006 through April 11, 2011, inclusive (the "Class Period"), Defendants misled investors about CHS' positive financial performance, future business prospects, and, in particular, the Company's revenue earned from Medicare payments. Defendants' material misstatements and omissions artificially inflated the price of CHS common stock and caused substantial damage to the Company's investors when the truth was revealed.

Pursuant to the PSLRA, this Court must appoint the "most adequate plaintiff" to serve as Lead Plaintiff in the Related Actions. 15 U.S.C. § 78u-4(a)(3)(B)(i). In so doing, the Court must

---

[1] The senior executive defendants include: Wayne T. Smith, CHS' Chairman, President and Chief Executive Officer; W. Larry Cash, CHS' Chief Financial Officer and member of the Company's Board of Directors; and Thomas M. Buford, CHS' former Vice President and Corporate Controller and former Vice President and Chief Accounting Officer.

consider which movant has the "largest financial interest" in the relief sought by the Class and whether there has been a *prima facie* showing that the movant is adequate and a typical class representative under Rule 23 of the Federal Rules of Civil Procedure ("Rule 23"). 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

Detroit respectfully submits that it is the "most adequate plaintiff," as defined by the PSLRA. As a result of Defendants' misconduct, Detroit suffered losses of approximately $639,616 on a first-in, first-out ("FIFO") basis and $641,265 on a last-in, first-out ("LIFO") basis, which Detroit believes to be the largest financial interest in the Related Actions. As detailed below, Detroit also satisfies the adequacy and typicality requirements of Rule 23, and fully understands the duties and responsibilities of serving as a Lead Plaintiff. Accordingly, Detroit is presumptively the "most adequate plaintiff" as defined by the PSLRA and should be appointed Lead Plaintiff on behalf of the Class.

Moreover, Detroit is a sophisticated institutional investor, experienced in conducting and supervising counsel in complex securities litigation and is therefore the paradigmatic Lead Plaintiff envisioned by Congress in enacting the PSLRA. Detroit has selected Bernstein Litowitz, a highly-qualified law firm with substantial experience in prosecuting securities class actions to serve as Lead Counsel for the Class. Detroit has worked with Bernstein Litowitz in prior securities litigations, as detailed *infra*, and has demonstrated its ability to actively supervise counsel in those actions. For these reasons, Detroit should be appointed Lead Plaintiff, its selection of Bernstein Litowitz as Lead Counsel for the Class should be approved, and the Related Actions should be consolidated.

**FACTUAL BACKGROUND OF THE RELATED ACTIONS**

Tennessee-based CHS is among the largest publicly-traded operators of hospitals in the U.S. in terms of number of facilities and net operating revenues. CHS owns, leases, or operates

2

133 hospitals in 29 states, with an aggregate of approximately 19,500 licensed beds. In 2010, CHS generated a record $13 billion in net operating revenue due in large part to Medicare reimbursements, which account for over 27% of the Company's earnings.

Defendants engaged in an expansive scheme to defraud the Medicare reimbursement system despite its critical importance to CHS' financial health. Specifically, the Company engaged in a systematic practice of admitting, rather than observing, patients for purely financial, rather than clinical purposes. This practice was codified in an internal manual developed and used exclusively by CHS called the "Blue Book." In stark contrast to the Blue Book, which was designed to implement the Company's fraudulent scheme, three-quarters of the hospitals in the U.S. use one of two sets of independent, evidence-based, clinical criteria to determine patient admissions.

Due to its improper admissions practices, CHS' observation rate is significantly lower than the rate of other similarly situated hospital groups, and well below the national average. While the national observation rate is 12.7%, the Company's observation rate is only 4.89%. In other words, CHS-run hospitals are approximately 62% less likely to observe patients as outpatients than other similarly situated hospitals.

CHS' improper admissions practices enabled the Company to bilk hundreds of millions of dollars from Medicare, which paid an average of over $3,300 – or 257% – more per patient for inpatient care than outpatient care to Company-run hospitals. A lawsuit filed against CHS by Tenet Healthcare Corporation, which was the target of a recent takeover attempt by the Company, estimated that CHS overbilled Medicare by $232 million to $306 million from 2006 to 2009.[2]

---

[2] The Tenet lawsuit is styled *Tenet Healthcare Corporation v. Community Health Sys. Inc.*, 11-cv-00732.

3

Further, CHS used its acquisitions to expand its fraudulent scheme. For example, prior to being acquired in 2007, Triad Hospitals, Inc. utilized widely-recognized clinical admissions criteria to determine patient admissions and its observation rate was in line with the national average at 11.13%. After CHS acquired Triad and implemented the Blue Book, however, the observation rate at Triad-run hospitals plummeted to 5.31%, a drop-off of 52% in just one year.

The filing of the Tenet lawsuit on April 11, 2011 revealed CHS' alleged fraud and caused the Company's stock to plummet approximately 36%, wiping out approximately $1.3 billion in market value in a single day. On April 15, 2011, CHS disclosed that it received a subpoena from the Office of Inspector General of the U.S. Department of Health and Human Services ("OIG") concerning the Company's improper billing practices.

On April 18, 2011, CHS further revealed that, over six months earlier, CtW Investment Group wrote to the Company's board of directors, accusing CHS of improperly billing Medicare. Shortly thereafter, on April 22, 2011, through a motion filed in an unsealed *qui tam* lawsuit, the U.S. Department of Justice announced that multiple U.S. attorneys' offices and the OIG would consolidate their investigations into CHS' improper billing practices. Nearly one month later, on May 18, 2011, CHS disclosed that it had also received subpoenas from the SEC and the Houston office of the OIG.

On May 9, 2011, the first of the Related Actions, styled *Norfolk County Retirement System v. Community Health Sys.,* 11-cv-00433, was filed on behalf of CHS investors, asserting Exchange Act claims against Defendants. That same day, notice of the *Norfolk* action was published on *Globe Newswire*, alerting investors to a Class Period of July 27, 2006 through April 8, 2011. *See* Hagy Decl., Exh. A.[3] The Class Period was subsequently expanded to end on April

---

[3] The Declaration of David S. Hagy, filed contemporaneously with this motion, is referred to herein as the "Hagy Decl."

4

11, 2011 by the second of the Related Actions, styled *Zheng v. Community Health Sys, Inc.*, 11-cv-00451. The PSLRA permits any member of the Class to move for appointment as Lead Plaintiff within 60 days of the publication of notice. 15 U.S.C. § 78u-4(a)(3)(A). Detroit has satisfied that requirement by making this motion.

## ARGUMENT

### 1. Detroit Should be Appointed Lead Plaintiff

Detroit respectfully submits that it should be appointed Lead Plaintiff because it is the movant "most capable of adequately representing the interests of class members." 15 U.S.C. § 78u-4(a)(3)(B)(i); *see also Garden City Emps. Ret. Sys. v. Psychiatric Solutions, Inc.*, Nos. 09-cv-00882 and 09-cv-01211, 2010 U.S. Dist. LEXIS 42915, at *8 (M.D. Tenn. Apr. 30, 2010) (Haynes, Jr., J.). The PSLRA sets forth the procedure for selecting the lead plaintiff in class actions arising under the securities laws and provides a presumption favoring the plaintiff with the largest financial interest who also meets the typicality and adequacy requirements under Rule 23. *Garden City*, 2010 U.S. Dist. LEXIS 42915, at *8; *In re Am. Serv. Group, Inc.*, No. 06-00323, 2006 U.S. Dist. LEXIS 61779, at *7 (M.D. Tenn. Aug. 28, 2006) (Haynes, Jr., J.). Under the PSLRA, the Court "shall" adopt a presumption that the most adequate plaintiff is "the person or group of persons that … (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and (cc) otherwise satisfies the requirements of Rule 23 …." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I); *see also Burgraff v. Green Bankshares, Inc.*, Nos. 10-cv-00253 and 11-cv-00014, 2011 U.S. Dist. LEXIS 14573, at *9 (E.D. Tenn. Feb. 11, 2011) (same).

### a. Detroit Has the Largest Financial Interest in the Relief Sought by the Class

Detroit believes that it has the largest financial interest of any qualified movant and should therefore be appointed Lead Plaintiff on behalf of the Class. 15 U.S.C. § 78u-

5

4(a)(3)(B)(iii); *Am. Serv. Group*, 2006 U.S. Dist. LEXIS 61779, at *7. The PSLRA "provides no definitive method for determining the 'largest financial interest' … [and therefore,] the method used and the factors considered in determining each movant's financial interest remain[s] fully within the discretion of the district court." *Am. Serv. Group*, 2006 U.S. Dist. LEXIS 61779, at *8. Courts commonly employ the "FIFO" and "LIFO" accounting methods to calculate financial interest for purposes of appointing a Lead Plaintiff. *See, e.g., Johnson v. Dana Corp.*, 236 F.R.D. 349, 352 (N.D. Ohio 2006) (recognizing that "courts have adopted two competing methodologies [to determine financial interest]: 'first in, first out' (FIFO) and 'last in, first out' (LIFO)" and endorsing LIFO); *Ohio Pub. Emps. Ret. Sys. v. Fannie Mae*, 357 F.Supp.2d 1027, 1033 (S.D. Ohio 2005) (accepting loss calculation based on FIFO); *In re Comverse Tech., Inc. Sec. Litig.*, No. 06-CV-1825(NGG)(RER), 2007 WL 680779, at *7 n.10 (E.D.N.Y. Mar. 2, 2007) (finding that "Courts have recognized two potential accounting methods when assessing gains/losses that result from the purchase and sale of securities" and identifying FIFO and LIFO as those methods).[4] Under either of these accounting methodologies, Detroit's loss is substantial. Indeed, as a result of CHS' alleged misconduct and the subsequent market correction of the price of the Company's common stock, Detroit sustained losses of approximately $639,616 on a FIFO basis and $641,265 on a LIFO basis. In light of these significant losses, which Detroit believes represent the largest financial interest in the Related Actions, Detroit is entitled to the statutory presumption as the most adequate plaintiff and should be appointed Lead Plaintiff for the Class.

---

[4] Under the FIFO method, sales are offset against the movant's inventory of stock acquisitions, starting with the earliest and moving chronologically forward. Under the LIFO method, sales are offset against the movant's inventory of stock acquisitions, starting with the latest and moving chronologically backward. Losses calculated on both FIFO and LIFO bases for Detroit are included in the chart annexed to the Hagy Decl., Exh. C.

### 2. Detroit is a Sophisticated Institutional Investor That Satisfies the Relevant Requirements of Rule 23

In addition to possessing the largest financial interest in the Related Actions, Detroit should be appointed Lead Plaintiff because it "satisfies the requirements of Rule 23 …." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc); *see also Burgraff*, 2011 U.S. Dist. LEXIS 14573, at *9 (citing the statute and discussing the requirements of Rule 23). Indeed, Detroit has affirmatively demonstrated that it meets the adequacy and typicality requirements of Rule 23, which are the only relevant provisions of Rule 23 for purposes of determining a Lead Plaintiff appointment under the PSLRA. *See Id.* ("Under Rule 23, there are two requirements for establishing lead plaintiff: '(1) "the claims or defenses of the representative parties are typical of the claims or defenses of the class," and (2) "the representative parties will fairly and adequately protect the interests of the class."'"); *Fannie Mae*, 357 F.Supp.2d at 1034 (finding that "at this stage in the proceedings, Plaintiffs need only make a *prima facie* showing that they meet the typicality and adequacy prerequisites of Rule 23.").

#### a. Detroit's Claims Are Typical of the Class' Claims

Detroit satisfies the typicality requirements of Rule 23. Typicality can be established by showing that the claims of the proposed lead plaintiff "arise[] from the same event or practice or course that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory." *Burgraff*, 2011 U.S. Dist. LEXIS 14573, at *9 (citing *Beattie v. Century-Tel, Inc.*, 511 F.3d 554, 561 (6thCir. 2007)); *see also In re Goodyear Tire & Rubber Co. Sec. Litig.*, Case No. 03CV2166, 2004 U.S. Dist. LEXIS 27043, at *28 (N.D. Ohio May 12, 2004) (finding that "a plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory.").

Here, Detroit's claims are typical of the claims of the members of the proposed Class because, just like all other Class members, Detroit: (1) purchased or otherwise acquired CHS common stock during the applicable period; (2) at prices allegedly artificially inflated by Defendants' materially false and misleading statements and omissions; and (3) suffered damages when the truth about the Company was disclosed. *See Burgraff*, 2011 U.S. Dist. LEXIS 14573, at *9 (finding the typicality element satisfied where plaintiff alleged that Defendants "violated the federal securities laws by disseminating false and misleading statements" and the plaintiff "purchased GRNB securities at prices artificially inflated by [D]efendants' misrepresentations and omissions" like other class members.); *see also Fannie Mae*, 357 F.Supp.2d at 1034-35 (same). Accordingly, Detroit has identical, non-competing, and non-conflicting interests with the Class in establishing Defendants' liability.

        **b.**      **Detroit Will Fairly and Adequately Represent the Interests of the Class**

Detroit will fairly and adequately represent the Class. The primary purpose of Rule 23's adequacy requirement is to ensure that there are no conflicts of interest between the purported lead plaintiff and other class members and that lead counsel is qualified to conduct the litigation. *Fannie Mae*, 357 F.Supp.2d at 1034 (finding that "[a] plaintiff can show that it fairly and adequately represents the interests of the class, pursuant to Rule 23(a)(4), if it appears that (1) plaintiff's interests are not antagonistic to those of the class they seek to represent and (2) plaintiff's counsel is qualified to conduct the litigation."). As set forth above, no such conflicts exist between Detroit and the Class. To the contrary, Detroit "has [demonstrated] both the ability and the incentive to represent the class's claims aggressively." *Burgraff*, 2011 U.S. Dist. LEXIS 14573, at *10.

Indeed, as a sophisticated institutional investor, with a real financial stake in this

litigation, Detroit is the paradigmatic Lead Plaintiff envisioned by Congress. *See* H.R. Conf. Rep. No. 104-369, at \*34 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, 733 (finding that "increasing the role of institutional investors in class actions will ultimately benefit shareholders and assist courts by improving the quality of representation in securities class actions"); *see also Garden City*, 2010 U.S. Dist. LEXIS 42915, at \*10 (recognizing that "the PSLRA's legislative history reflects a Congressional intention to favor institutional investors that have the greater financial resources and experience to satisfy their fiduciary duties to the class members."). Detroit manages approximately $2.2 billion in assets for approximately 8,330 active members and 11,480 retired members. Having suffered a substantial loss as a result of CHS' misconduct, as detailed above, Detroit can be counted on to vigorously pursue the best possible recovery for the Class from all culpable parties. *Fannie Mae*, 357 F.Supp.2d at 1035 (finding the adequacy element satisfied where plaintiff alleged that they suffered damages "in the same way as the other class members as a result of buying Fannie Mae stock at artificially inflated prices.").

Not only does Detroit have the resources to litigate the Related Actions and supervise Class counsel, but, as set forth in its Certification, Detroit has prior experience serving as lead plaintiff in securities litigations and is familiar with the responsibilities associated therewith. *See* Hagy Decl., Exh. B. In fact, Detroit currently serves as a lead plaintiff in *Hoff v. Popular, Inc.*, Case No. 09-cv-1428 (D.P.R.), in which preliminary approval for settlement was granted on June 20, 2011. Detroit also served as a lead plaintiff in *In re International Rectifier Corp. Securities Litigation*, No. 07-cv-2544 (C.D. Cal.), which settled in 2010 for $90 million. Notably, Bernstein Litowitz, Detroit's proposed Lead Counsel, represented Detroit in both of those actions, which serves as a testament to the fact that Detroit is more than capable of litigating securities class actions and supervising Class counsel to pursue a recovery on behalf of the Class.

9

Significantly, Detroit also considered and approved moving for appointment as Lead Plaintiff in the Related Actions, and has submitted a Certification in which it affirmed its understanding of the duties owed to the Class. *See* Hagy Decl., Exh. B. Through this Certification, Detroit acknowledges the fiduciary obligations it will undertake if appointed Lead Plaintiff by the Court in the Related Actions. Detroit also demonstrated its adequacy by retaining highly-experienced counsel and timely seeking appointment as Lead Plaintiff. *See e.g.*, *Burgraff*, 2011 U.S. Dist. LEXIS 14573, at *10 (finding the adequacy requirement satisfied where "the movant has not only filed a motion to be appointed lead [], but he has also hired experienced counsel, which indicates his willingness to fairly and competently represent the interests of the class."). Accordingly, the interests of Detroit are perfectly aligned with those of the Class, and there is no evidence of any antagonism between Detroit and the Class.

### 3. This Court Should Approve Detroit's Choice of Bernstein Litowitz as Lead Counsel for the Class

The PSLRA vests authority in the lead plaintiff to select and retain lead counsel, subject to this Court's approval. 15 U.S.C. § 78u-4(a)(3)(B)(v); *In re Am. Serv. Group, Inc.*, 2006 U.S. Dist. LEXIS 61779, at *7. Courts should not disturb the lead plaintiff's choice of counsel unless necessary to "protect the interests of the plaintiff class." H.R. Conf. Rep. No. 104-369 at *35, *reprinted in* 1995 U.S.C.C.A.N. at 734; *Fannie Mae*, 357 F.Supp.2d at 1034 (same).

Detroit has retained the law firm of Bernstein Litowitz to serve as Lead Counsel for the Class. Bernstein Litowitz has extensive experience litigating securities class actions and has successfully prosecuted numerous securities class actions on behalf of injured investors. *See* Hagy Decl., Exh. D; *see also Goodyear*, 2004 U.S. Dist. LEXIS 27043, at *31-32 (finding that Bernstein Litowitz is qualified in securities class action lawsuits and has achieved excellent results in various actions.). Significantly, Bernstein Litowitz served as co-lead counsel in *In re*

*WorldCom, Inc. Securities Litigation*, No. 02-CV-3288 (DLC) (S.D.N.Y.), in which settlements totaling in excess of $6 billion – one of the largest recoveries in securities class action history – were obtained for the class. Other examples in which courts have recognized Bernstein Litowitz as adequate and qualified class counsel in securities class actions include *In re Nortel Networks Corp. Securities Litigation*, No. 05-MD-1659 (LAP) (S.D.N.Y.), and *In re Refco, Inc. Securities Litigation*, No. 05-CV-8626 (JSR) (S.D.N.Y.). Bernstein Litowitz has also represented investors in complex class actions in this and other judicial districts in Tennessee, including in the *In re HCA Inc. Securities Litigation*, Case No. 05-cv-960 (M.D. Tenn.) (settled for $20 million), *In re Accredo Health, Inc. Securities Litigation*, Case No. 03-cv-2216 (W.D. Tenn.) (settled for $33 million), and *In re King Pharmaceuticals, Inc. Securities Litigation*, Case No. 03-cv-77 (E.D. Tenn.) (settled for $38.25 million). In light of the foregoing, Detroit's choice of Bernstein Litowitz should be appointed Lead Counsel for the Class.

### 4. This Court Should Consolidate the Related Actions

Presently pending in this District are at least three Related Actions brought pursuant to Sections 10(b) and 20(a) of the Exchange Act, and Rule 10b-5 promulgated thereunder. The Related Actions are as follows:

| Case | Civil No. | Date Filed |
|---|---|---|
| *Norfolk County Retirement System v. Community Health Systems, Inc.* | 11-cv-433 | May 9, 2011 |
| *De Zheng v. Community Health Systems, Inc.* | 11-cv-451 | May 12, 2011 |
| *Minneapolis Firefighters' Relief Association v. Community Health Systems, Inc.* | 11-cv-601 | June 21, 2011 |

These actions present virtually identical factual and legal issues, as they all arise out of the same alleged misstatements and omissions regarding CHS' financial condition, business prospects, and in particular, the revenue CHS received from Medicare payments. Accordingly,

consolidation is appropriate under Rule 42(a) of the Federal Rules. *See, e.g.*, *In re Telxon Corp. Sec. Litig.*, 67 F. Supp. 2d 803, 806 (N.D. Ohio 1999) (consolidating actions sharing both factual and legal issues in common); *Weltz v. Lee*, 199 F.R.D. 129, 131 (S.D.N.Y. 2001) ("In securities actions where the complaints are based on the same 'public statements and reports,' consolidation is appropriate if there are common questions of law and fact and the defendants will not be prejudiced.") (internal citation omitted).

## CONCLUSION

For the above reasons, Detroit respectfully requests that the Court: (1) appoint Detroit as Lead Plaintiff; (2) approve Detroit's choice of Bernstein Litowitz to serve as Lead Counsel for the Class and The Law Office of David S. Hagy to serve as Local Counsel; (3) consolidate all Related Actions; and (4) grant such other relief as the Court may deem just and proper.

DATED: July 8, 2011                                  Respectfully submitted,

By: /s/ David S. Hagy
David S. Hagy (Bar # 027003)
**THE LAW OFFICE OF DAVID S.
 HAGY, PLC**
1507 16th Avenue South
Nashville, Tennessee 37212
Telephone: (615) 515-7774
dhagy@hagylaw.com

*Local Counsel for Detroit*

Gerald H. Silk
Avi Josefson
Laurence J. Hasson
**BERNSTEIN LITOWITZ BERGER
 & GROSSMANN LLP**
1285 Avenue of the Americas
New York, New York 10019
Telephone: (212) 554-1400

12

Case 3:11-cv-00433   Document 22-2   Filed 07/08/11   Page 17 of 18 PageID #: 102

Facsimile: (212) 554-1444
jerry@blbglaw.com
avi@blbglaw.com
laurenceh@blbglaw.com

*Counsel for Detroit and Proposed Lead Counsel for the Class*

CERTIFICATE OF SERVICE

I certify that on this 8th day of July 2011, a copy of the foregoing Memorandum of Law in Support of the Motion of the General Retirement System of the City of Detroit for Appointment as Lead Plaintiff, for Approval of Its Selection of Lead Counsel, and for Consolidation of All Related Actions was filed electronically in the ECF system. Notice of this filing will be sent to counsel of record by operation of the Court's electronic filing system.

      /s/     David S. Hagy