# UNITED STATES DISTRICT COURT FOR THE
# MIDDLE DISTRICT OF TENNESSEE AT NASHVILLE

| | |
|---|---|
| NORFOLK COUNTY RETIREMENT SYSTEM, individually and on behalf of all others similarly situated, | Civil Action No. 11-cv-0433 |
| *Plaintiff,* | Judge John T. Nixon<br>Magistrate Judge E. Clifton Knowles |
| - v. - | |
| COMMUNITY HEALTH SYSTEMS, INC., WAYNE T. SMITH, and W. LARRY CASH, | |
| *Defendants.* | |
| DE ZHENG, individually and on behalf of all others similarly situated, | Civil Action No. 11-cv-0451 |
| *Plaintiff,* | Judge John T. Nixon<br>Magistrate Judge E. Clifton Knowles |
| - v. - | |
| COMMUNITY HEALTH SYSTEMS, INC., WAYNE T. SMITH, and W. LARRY CASH, | |
| *Defendants.* | |
| MINNEAPOLIS FIREFIGHTERS' RELIEF ASSOCIATION, individually and on behalf of all others similarly situated, | Civil Action No. 11-cv-0601 |
| *Plaintiff,* | Judge Kevin H. Sharp<br>Magistrate Judge E. Clifton Knowles |
| - v. - | |
| COMMUNITY HEALTH SYSTEMS, INC., WAYNE T. SMITH, W. LARRY CASH and THOMAS MARK BUFORD, | |
| *Defendants.* | |

## MEMORANDUM OF LAW IN SUPPORT OF THE NYC FUNDS' MOTION FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................. ii

I.      PRELIMINARY STATEMENT ................................................................................1

II.     THE NYC FUNDS ...................................................................................................1

III.    BACKGROUND ......................................................................................................2

IV.     ARGUMENT ............................................................................................................5

        A.      Consolidation of the Class Actions Is Appropriate.................................5

        B.      The NYC Funds Should Be Appointed Lead Plaintiff

                1.      The Procedure Required Under the
                        PSLRA for Appointment of Lead Plaintiff.................................7

                2.      The NYC Funds Have Timely Moved
                        for Appointment As Lead Plaintiff ............................................8

                3.      The NYC Funds Have the Largest Financial
                        Interest in the Relief Sought by the Class.................................8

                4.      The NYC Funds Otherwise Satisfy
                        the Requirements of Rule 23....................................................13

        C.      The NYC Funds' Selection of Lead Counsel Should Be Approved.....................15

V.      CONCLUSION.......................................................................................................16

# TABLE OF AUTHORITIES

## Cases

*Aronson v. McKesson HBOC*,
   79 F. Supp. 2d 1146 (N.D. Cal. 1999) ................................................................8, 11

*Beattie v. Centurytel, Inc.*,
   511 F.3d 554 (6th Cir. 2007) .............................................................................13, 14

*Brown v. Earthboard Sports USA, Inc.*,
   481 F.3d 901 (6th Cir. 2007) ...................................................................................10

*Burgraff v. Green Bankshares, Inc.*,
   Nos. 10-cv-0253, 10-cv-0014, 2011 WL 613281 (E.D. Tenn. Feb. 11, 2011) ............... *passim*

*Cantrell v. GAF Corp.*,
   999 F.2d 1007 (6th Cir. 1993) ............................................................................. 6-7

*Craft v. Vanderbilt Univ.*,
   174 F.R.D. 396 (M.D. Tenn. 1996) ..........................................................................14

*Dura Pharmaceuticals Inc. v. Broudo*,
   544 U.S. 336 (2005) ...................................................................................................10

*Eichenholtz v. Verifone Holdings, Inc.*,
   C07-06140, 2008 WL 3925289 (N.D. Cal. Aug. 22, 2008) ...................................10

*Garden City Employees' Retirement System v. Psychiatric Solutions, Inc.*,
   C.A. 3:09-cv-0882, 2010 WL 1790763 (M.D. Tenn. April 30, 2010) ........................... *passim*

*Goldberger v. PXRE Group, Ltd.*,
   Nos. 06-CV-3410 (KMK), 06-CV-3440 (GBD), 06-CV-3544 (KMK),
   06-CV-4638 (KMK), 2007 WL 980417 (S.D.N.Y. Mar. 30, 2007) .........................6

*In re Am. Med. Sys.*,
   75 F.3d 1069 (6th Cir. 1996) ...................................................................................13

*In re American Serv. Group*,
   C.A. 06-cv-0323, 2006 WL 2503648 (M.D. Tenn. Aug. 29, 2006) .............9, 10, 11

*In re Cardinal Health*,
   226 F.R.D. 298 (S.D. Ohio 2005) ..............................................................................9

*In re Comverse Tech. Inc. Sec. Litig.*,
   No. 06-CV-1825, 2007 WL 680779 (E.D.N.Y. Mar. 2, 2007) ...............................10

*In re General Electric Sec. Litig.*,
09 Civ. 1951, 2009 WL 2259502 (S.D.N.Y. July 29, 2009) ..................................................10

*In re Goodyear Tire & Rubber Co. Sec. Litig.*,
No. 5:03 CV 2166, 2004 WL 3314943 (N.D. Ohio May 12, 2004)....................................9, 13

*In re Telxon Corp., Sec. Litig.*,
67 F. Supp. 2d 803 (N.D. Ohio 1999) ...............................................................................11

*Johnson v. Dana Corp.*,
236 F.R.D. 349 (N.D. Ohio 2006) ......................................................................................9

*Kaplan v. Gelfond*,
240 F.R.D. 88 (S.D.N.Y. 2007) ..........................................................................................9

*Newman v. Eagle Bldg. Techs.*,
209 F.R.D. 499 (S.D. Fla. 2002) .........................................................................................6

*Ohio ex rel. Montgomery v. Louis Trauth Dairy, Inc.*,
163 F.R.D. 500 (S.D. Ohio 1995) .......................................................................................6

*Sprague v. GMC*,
133 F.3d 388 (6th Cir. 1998) ......................................................................................... 13-14

*Stout v. J.D. Byrider*,
228 F.3d 709 (6th Cir. 2000) ............................................................................................15

*Vladimir v. Bioenvision, Inc.*,
No. 07 Civ. 6416 (SHS) (AJP), 2007 WL 4526532, (S.D.N.Y. Dec. 21, 2007) ...............9, 16

*Weiss v. Friedman, Billings, Ramsey Group, Inc.*,
No. 05 Civ. 4617(RJH), 2006 WL 197036 (S.D.N.Y. Jan. 25 2006).......................................9

**Statutes**

Fed. R. Civ. P. 42(a) ........................................................................................................5

Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4(a)(3) *et seq.*:

-- 15 U.S.C. § 78u-4(a)(3)(A) ............................................................................................7

-- 15 U.S.C. § 78u-4(a)(3)(A)(i) .........................................................................................7

-- 15 U.S.C. § 78u-4(a)(3)(A)(i)(II) ....................................................................................7

-- 15 U.S.C. § 78u-4(a)(3)(B)(ii) ........................................................................................5

-- 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I) .........................................................................1, 7, 12, 13

-- 15 U.S.C. § 78u-4(a)(3)(B)(v) .................................................................................................15

**Other Authorities**

H.R. Rep. No. 104-369, at 34 (1995) (Conf. Rep.)
    (reprinted at 1995 U.S.C.C.A.N. 730, 733) .........................................................................12

MANUAL FOR COMPLEX LITIGATION, FOURTH, § 11.631 (2004) ................................................ 5-6

# I. PRELIMINARY STATEMENT

Movants the New York City Employees' Retirement System ("NYCERS"), the Teachers Retirement System of the City of New York ("TRS"), the New York City Teachers' Variable Annuity Program ("TRS-VA"), the New York City Police Pension Fund ("Police"), and the New York City Fire Department Pension Fund ("Fire") (collectively, the "NYC Funds" or "Movants"), respectfully submit this memorandum of law in support of their motion, pursuant to Section 21D(a)(3) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3), as amended by the Private Securities Litigation Reform Act of 1995 ("PSLRA"), and Rule 42(a) of the Federal Rules of Civil Procedure, for an order (1) consolidating the above-captioned actions; (2) appointing the NYC Funds as Lead Plaintiff of the class of purchasers of the securities of Community Heath Systems, Inc. ("CHS" or the "Company"); and (3) approving the NYC Funds' selection of Lowey Dannenberg Cohen & Hart, P.C. ("Lowey Dannenberg") as Lead Counsel for the Class, and Miller & Martin PLLC as local counsel.

# II. THE NYC FUNDS

The NYC Funds purchased 768,706 shares of CHS common stock during the proposed Class Period, as defined below, and suffered losses of $4,812,687 calculated based upon the "FIFO" methodology, and losses of $4,413,165 based upon the "LIFO" methodology. *See* Certifications and Loss Analyses, annexed as Exhibit 1 to the Declaration of Barbara J. Hart, executed on July 8, 2011 ("Hart Decl."). The NYC Funds believe that they have the largest individual financial interest in these actions, and otherwise satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure, which would make the NYC Funds presumptively the most adequate Lead Plaintiff to prosecute this litigation of all movants. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

Movants are pension systems of the City of New York. *See* Declaration of Karen J. Seemen, executed on July 8, 2011 ("Seemen Decl."), ¶¶ 2-3. Collectively, the systems have more than $129.8 billion in assets and serve more than 663,600 active and retired New York City employees. *Id*., ¶ 3.[1] As demonstrated herein, the NYC Funds are eminently qualified to serve as Lead Plaintiff for the putative class, and have a proven history of achieving multi-million dollar class settlements in other cases where they have served as the lead plaintiff. Seemen Decl. ¶¶ 9-14. The NYC Funds are precisely the type of institutional investor Congress had in mind to step forward and prosecute class actions on behalf of public investors who have been defrauded.

## III. BACKGROUND

CHS was founded in 1985 and operates and leases more than 130 acute-care hospitals in non-urban markets in 29 states. *See* the Complaint filed in *Norfolk County Retirement System v. Community Health Systems, Inc., et al.* ("Compl."), at ¶ 2 (Ex. 4 to Hart Decl.). In 2011, the Company generated $13 billion in revenue. *Id*. Because approximately 27.2 percent of the Company's net operating revenue is derived from Medicare reimbursement payments, the Company's profitability is highly dependent on its relationship with the agency and compliance with Medicare requirements. *Id*.

On April 11, 2011, the *Wall Street Journal* published an article entitled "Tenet Claims Community Health Overbilled Medicare," which publicly exposed for the first time CHS's various alleged improper billing practices, including the systematic violation of Medicare requirements by improperly boosting inpatient admissions at the Company's hospitals for

---

[1] The New York City Comptroller is investment advisor to, and custodian of, the NYC Funds. Pursuant to Title 13 of the New York City Administrative Code, the Boards of Trustees of the NYC Funds have delegated to the Comptroller of the City of New York investment responsibility for management of the NYC Funds' assets. Seemen Decl., ¶ 4. The NYC Funds are thus collectively managed by the Comptroller and have a proven track record of prosecuting class actions claims as lead plaintiff. *Id.*, ¶¶ 4-10.

financial rather than clinical reasons. These charges stem from CHS's unsuccessful effort to acquire Tenet Healthcare Corp. ("Tenet"), a hospital chain based in Dallas. *See Tenet Healthcare Corp. v. Community Health Systems, Inc.*, 11 cv 00732 (N.D. Tex.); Compl. at ¶ 2. According to Tenet, CHS had, for at least ten years, been improperly admitting patients on an inpatient basis when such patients actually should have been admitted on an outpatient observation basis, resulting in higher payments from Medicare than CHS was entitled to. *Id.*

Following these disclosures, CHS common stock plummeted nearly 36 percent, declining $14.41 from $40.30 on Friday, April 8, to close at $25.89 on April 11, on extraordinarily heavy trading volume of more than 44 million shares. *Id.*; *see also* Ex. 4 to Hart Decl. The Company's single-day drop in market value was nearly $1.3 billion. Disclosure of pending governmental investigations followed, and the price of CHS stock has failed to recover.[2]

Beginning on May 9, 2011, three securities class action lawsuits (the "Actions") were filed in this District against CHS and certain of its senior officers and directors. Two of these actions are pending before the Honorable John T. Nixon (*Norfolk County Retirement System v. Community Health Systems, Inc. et al.*, CA 3:11-cv-0433-JTN ("*Norfolk*"), and *Zheng v. Community Health Systems, Inc. et al.*, C.A. 3:11-cv-00451 ("*Zheng*")). The other action filed in this Court is pending before the Honorable Kevin H. Sharp and bears the caption *Minneapolis*

---

[2] On April 15, 2011, CHS disclosed that it had received a document subpoena from the U.S. Department of Health and Human Services, Office of the Inspector General (the "OIG"), in connection with an investigation of possible improper claims submitted to Medicare and Medicaid. Compl. at ¶ 55. On April 22, 2011, the Company disclosed that it had been contacted by the DOJ regarding a whistleblower *qui tam* complaint concerning improper Medicare billing. *Id.* Then, on April 25, 2011, CHS announced that the DOJ, in light of allegations raised in "other *qui tam* complaints in other jurisdictions," had consolidated its investigation of CHS with multiple federal and state prosecutors' offices and the OIG. *Id.* The DOJ also disclosed that as a result of the ongoing investigation of CHS's use of the Blue Book's questionable admissions criteria and the *Tenet* lawsuit, the U.S. had moved to stay the *qui tam* action so it could make a more informed decision about intervening in that lawsuit. *Id.* On May 13, 2011, the SEC issued a document subpoena relating to the foregoing inquiries, lawsuits and investigations, including documents relied upon in responding to the *Tenet* litigation.

*Firefighters' Relief Association v. Community Health Systems, Inc. et al.*, C.A. 3:11-cv-00601-KHS ("*Minneapolis Firefighters*"). *See* Exs. 3-5 to Hart Decl.

The class action complaints charge the Company and certain senior officers and directors with violations of Sections 10(b) (the antifraud provision) and 20(a) (the controlling person provision) of the Securities Exchange Act of 1934 and SEC Rule 10b-5. *Id.* The complaints each allege that, during the class period, July 27, 2006 through April 8, 2011 (the "Class Period"):[3] (1) the Company systematically engaged in fraudulent medical billing practices by deceptively driving up in-patient admissions at its facilities; and (2) issuing materially and misleading statements about, among other things, its financial results and compliance with federal regulations. *Id.*

The putative class action complaints also allege that throughout the Class Period, Defendants repeatedly misled investors about the real basis for its apparent success. *Id.* Specifically, Defendants are alleged to have made materially false and misleading statements about CHS' compliance with the regulations of Medicare and its chief source of revenue, and also reported to the public revenues, profits, and earnings growth that were artificially inflated by virtue of its systematic deception of the agency. Compl. at ¶ 5.

On May 9, 2011, a press release (the "Notice") was issued notifying all purchasers of CHS securities between July 27, 2006 and April 8, 2011 of the pendency of the first-filed securities class action. *See* Ex. 2 to Hart Decl. As required by the PSLRA, the Notice advised class members that lead plaintiff applications must be made within 60 days of the Notice, which is July 8, 2011. *Id.*

---

[3] The *Zheng* and *Minneapolis Firefighters* actions defined the class period as July 27, 2006 through April 11, 2011, one business day longer than the *Norfolk* class period.

## IV.    ARGUMENT

The PSLRA provides that once adequate notice of a pending class action is given, the Court will conduct a "two-step" process:    (1) consolidation of the pending actions and (2) appointment of lead plaintiff.  *See Garden City Employees' Retirement System v. Psychiatric Solutions, Inc*., C.A. 3:09-cv-0882, 2010 WL 1790763, at \*2 (M.D. Tenn. April 30, 2010) ("*Garden City*").

Where, as here, more than one action on behalf of a class asserting substantially the same claims has been filed, the PSLRA requires the Court to address consolidation before it appoints a Lead Plaintiff.  The PSLRA provides that "a court shall not make the [lead plaintiff and counsel determination] decision until "after such decision [on the motion to consolidate] is rendered."  15 U.S.C. § 78u-4(a)(3)(B)(ii).  *See Garden City*, 2010 WL 1790763, at \*2.

### A.    Consolidation of the Class Actions Is Appropriate

Consolidation of the Actions is appropriate here, where three similar securities class actions complaints, alleging near identical claims against the same defendants, were filed as the result of the public disclosures beginning on April 8, 2011 concerning CHS's allegedly improper business practcies.  Rule 42(a) of the Federal Rules of Civil Procedure provides:

> (a)    Consolidation.    If actions before the court involve a common question of law or fact, the court may:
>
> (1)    join for hearing or trial any or all matters at issue in the actions;
>
> (2)    consolidate the actions; or
>
> (3)    issue any other orders to avoid unnecessary cost or delay.

Fed. R. Civ. P. 42(a).  Consolidation pursuant to Rule 42(a) of the Federal Rules of Civil Procedure is appropriate when actions involve common questions of law and fact.  MANUAL FOR

COMPLEX LITIGATION, FOURTH, § 11.631, at 121-22 (2004); *see also Ohio ex rel. Montgomery v. Louis Trauth Dairy, Inc.*, 163 F.R.D. 500, 503 (S.D. Ohio 1995) ("[t]he only requirement in order to consolidate claims for trial is a common question of law"); *Goldberger v. PXRE Group, Ltd.*, Nos. 06-CV-3410 (KMK), 06-CV-3440 (GBD), 06-CV-3544 (KMK), 06-CV-4638 (KMK), 2007 WL 980417, at *2 (S.D.N.Y. Mar. 30, 2007) ("In determining the propriety of consolidation, district courts have broad discretion, and generally favor the view that considerations of judicial economy favor consolidation").  Consolidation is common in federal securities class action cases, and "is recognized as benefiting the court and the parties by expediting pretrial proceedings, reducing case duplication and minimizing the expenditure of time and money by all persons concerned."  *Newman v. Eagle Bldg. Techs.*, 209 F.R.D. 499, 501-02 (S.D. Fla. 2002) (citing *In re Olsten Corp. Sec. Litig.*, 3 F. Supp. 2d 286, 294 (E.D.N.Y. 1998)).

Here, the Actions assert nearly identical factual and legal issues – each alleges federal securities violations resulting from the dissemination of false and/or misleading financial and other misstatements relating to CHS' inpatient and Medicare billing practices.  *Compare* Exs. 4, 5 & 6 to Hart Decl.  The complaints allege material misrepresentations relating to CHS's financial statements filed during the virtually identical alleged class periods – July 27, 2006 through April 8, 2011 – in violation of the federal securities laws.  CHS and certain senior executives are defendants in these cases, and the claims against them are similar.  Because the parties, claims and facts are largely overlapping among these cases, consolidating them is appropriate.

Moreover, the Sixth Circuit has noted that consolidation is appropriate where:

> the risks of prejudice and confusion [are] overborne by the risk of
> inconsistent adjudications of common factual and legal issues, the

> burden on parties, witnesses and available judicial resources posed by multiple lawsuits, the length of time required to conclude multiple suits as against a single one, and the relative expense to all concerned of the single-trial, multiple-trial alternatives.

*Cantrell v. GAF Corp.*, 999 F.2d 1007, 1011 (6th Cir. 1993) (quoting *Hendrix v. Raybestos-Manhattan, Inc.*, 776 F.2d 1492, 1495 (11th Cir. 1985)).  Here, absent consolidation, there is a likely risk of inconsistent adjudications of common legal and factual issues.

### B.     The NYC Funds Should Be Appointed Lead Plaintiff

#### 1.     The Procedure Required Under the PSLRA for Appointment of Lead Plaintiff

Under the PSLRA, the plaintiff who files the initial action must, within twenty days of filing the complaint, publish a notice in a "widely circulated national business-oriented publication or wire service," informing class members of the pendency of the action and their right to file a motion for appointment as lead plaintiff.  15 U.S.C. § 78u-4(a)(3)(A)(i).  The Notice must inform class members of their right to file a motion for appointment as lead plaintiff within 60 days of publication of the notice.  15 U.S.C. § 78u-4(a)(3)(A).  Within 60 days after publication of the notice, any "person" or "group of persons" who are members of the proposed class may apply to the court to be appointed as lead plaintiff, regardless of whether they have previously filed a complaint in the action.  15 U.S.C. § 78u-4(a)(3)(A)(i)(II).

The reviewing court must next consider the losses allegedly suffered by the various movants and select as the presumptive Lead Plaintiff the one "who has the largest financial interest . . . [and] otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure."  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).  "There is a 'rebuttable presumption' that the most adequate plaintiff to serve as lead plaintiff is the person or group of persons that (1) has either filed a complaint or made a motion in response to a notice; (2) has the largest financial

interest in the relief sought by the class; and (3) satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure." *Burgraff v. Green Bankshares, Inc.*, Nos. 10-cv-0253, 10-cv-0014, 2011 WL 613281, at *1 (E.D. Tenn. Feb. 11, 2011).

### 2. The NYC Funds Have Timely Moved for Appointment as Lead Plaintiff

Here, the initial notice was published on May 9, 2011. *See* Ex. 2 to Hart Decl. The 60-day period under the PSLRA during which motions for the appointment of Lead Plaintiff must be filed expires on July 8, 2011. The NYC Funds have timely moved within the statutory 60-day period. As required by the PSLRA and local rules, the NYC Funds have also provided Certifications setting forth their transactions in CHS securities during the Class Period. *See* Certifications, Ex. 1 to the Hart Decl. The Certifications indicate that the NYC Funds have analyzed the facts and the complaints filed in the Actions, fully understand the responsibilities of serving as lead plaintiff, and are willing to serve in the best interests of the class. *Id.* In addition, the NYC Funds have retained established, experienced counsel that specializes in this field. *See* Lowey Dannenberg Firm Resume, Ex. 6 to Hart Decl.; Seemen Decl., ¶ 14.

### 3. The NYC Funds Have the Largest Financial Interest in the Relief Sought by the Class

The NYC Funds believe they have the largest individual financial interest in the relief sought by the Class of any class member that has moved to be designated Lead Plaintiff.[4] The NYC Funds therefore are presumptively the most adequate plaintiff. Under the PSLRA, the court must "presume" that the lead plaintiff with the "largest financial interest" in the litigation and whose claims are typical of other putative class members is the most adequate plaintiff. *See Garden City*, 2010 WL 1790763, at *2.

---

[4] In *Aronson v. McKesson HBOC*, 79 F. Supp. 2d 1146, 1157 n.11 (N.D. Cal. 1999), the court recognized that the NYC Funds "are essentially one person for purposes of the Reform Act."

Courts in the Sixth Circuit have adopted the widely-recognized four-factor test for determining the largest financial interest, focusing on: "(1) the number of shares that the movant purchased during the putative class period; (2) the number of net shares purchased during the putative class period; (3) the total net funds expended by the plaintiff during the putative class period; and (4) the approximate loss suffered by the plaintiffs." *See, e.g., In re American Serv. Group*, C.A. 06-cv-0323, 2006 WL 2503648, at *3 (M.D. Tenn. Aug. 29, 2006) (appointing institutional investor as lead plaintiff); *Garden City,* 2010 WL 1790763, at *2 (same); *Burgraff*, 2011 WL 613281, at *2.

The most important factor in the determination of who should be appointed the lead plaintiff is the fourth factor—the approximate loss suffered during the class period.[5] In determining a class member's losses in the context of securities class actions, courts generally use one of two accounting methods: the "first-in, first-out" (FIFO) method, or the "last-in, first-out" (LIFO) method. *See, e.g., Johnson v. Dana Corp.*, 236 F.R.D. 349, 352-53 (N.D. Ohio 2006) (discussing FIFO versus LIFO methodologies); *In re Cardinal Health*, 226 F.R.D. 298, 303-04 (S.D. Ohio 2005) (same); *In re Goodyear Tire & Rubber Co. Sec. Litig.*, No. 5:03 CV 2166, 2004 WL 3314943, at *4 (N.D. Ohio May 12, 2004) (same).[6]

---

[5] *See, e.g., Vladimir v. Bioenvision*, Inc., No. 07 Civ. 6416 (SHS) (AJP), 2007 WL 4526532, at *5 (S.D.N.Y. Dec. 21, 2007) ("Most courts have found the fourth factor, the approximate loss suffered during the class period, to be the most important factor in determining who should be the lead plaintiff"); *In re Comverse Tech., Inc. Sec. Litig.*, No. 06-CV-1825 (NGG) (RER), 2007 WL 680779, at *3 (E.D.N.Y. Mar. 2, 2007) ("Most courts consider the fourth factor, the approximate loss a plaintiff suffered during the class period, to be most influential in identifying the plaintiff with the largest financial interest"); *Kaplan v. Gelfond*, 240 F.R.D. 88, 93 (S.D.N.Y. 2007) ("[W]e, as have other courts, shall place the most emphasis on the last of the four factors: the approximate loss suffered by the movant"); *Weiss v. Friedman, Billings, Ramsey Group, Inc.*, No. 05 Civ. 4617(RJH), 2006 WL 197036, at *3 (S.D.N.Y. Jan. 25 2006) ("The amount of financial loss is the most significant of [the four] elements").

[6] Under FIFO, "a plaintiff's sales of defendant's shares during the class period are matched first against any pre-existing holdings of shares. The net gains or losses from those transactions are excluded from damage calculations." *Johnson*, 236 F.R.D. at 352. "In contrast, under LIFO a plaintiff's sales of defendant's shares during the class period are matched first against the plaintiff's most recent purchase of

Further, in a securities action, price inflation alone is insufficient. A plaintiff must show that an economic loss occurred, *i.e.*, a decline in value after the truth behind the misrepresentations or omissions has become known in the market. *Dura Pharmaceuticals Inc. v. Broudo*, 544 U.S. 336, 346-47 (2005); *Brown v. Earthboard Sports USA, Inc.*, 481 F.3d 901, 920 (6th Cir. 2007). In *Dura*, the Supreme Court recognized that gains or losses sustained from stock sales <u>prior</u> to revelation of the alleged fraud do not bear on losses because they are not causally related to the corrective disclosures revealing the misconduct.

Since *Dura*, in determining the financial interests of lead plaintiff applicants, many courts do not consider gains or losses resulting from stock sales that occurred before defendants' alleged fraud was revealed to the market. *See, e.g., In re General Electric Sec. Litig.*, 09 Civ. 1951, 2009 WL 2259502, at *4 (S.D.N.Y. July 29, 2009); *In re Comverse Tech. Inc. Sec. Litig.*, No. 06-CV-1825, 2007 WL 680779, at *7 (E.D.N.Y. Mar. 2, 2007); *Eichenholtz v. Verifone Holdings, Inc.*, C07-06140, 2008 WL 3925289, at *3 (N.D. Cal. Aug. 22, 2008) ("the court finds no reason to include losses in its calculations that would later be considered uncompensable. Indeed, it is difficult, if not impossible, to demonstrate loss causation for shares bought *and* sold before the disclosure of the misstatements and omissions") (emphasis in original).

As reflected in their Certifications and Loss Analyses, during the proposed Class Period, under the FIFO matching method, the NYC Funds purchased and held 687,752 shares ("retention shares") through the April 11, 2011 disclosure of CHS's alleged misconduct, expending $24,144,819. *See* Ex. 1 to Hart Decl. Under the LIFO matching method, the NYC Funds had

---

defendant's shares and gains or losses from those transactions are considered in damage calculations." *Id.* "The methods used and the factors considered in determining each movant's financial interest remain fully within the discretion of the district court." *In re American Serv. Group*, 2006 WL 2503648, at *2 (citation and internal quotation marks omitted).

508,289 retention shares through the end of the Class Period, expending $18,713,931. The NYC

Funds' FIFO losses are $4,812,687, and LIFO losses are $4,413,165. *Id.* at Ex. 1[7]

As of this filing, the NYC Funds are not aware of any motion for appointment as Lead

Plaintiff made by an individual movant who claims to have sustained greater financial losses in

connection with the purchase and sale of CHS common stock during the Class Period. Upon

information and belief, because the NYC Funds' financial interest in this matter is the largest of

any competing lead plaintiff movant, it should be designated the presumptive Lead Plaintiff.

*Garden City,* 2010 WL 1790763, at *2 (the PSLRA provides a rebuttable presumption in favor

of the class member with the "largest financial interest.")

By emphasizing financial stake, the PSLRA was intended to encourage institutional

investors like the NYC Funds to take up the mantle as lead plaintiff. *Id.*, at *3; *In re American

Serv. Group*, 2006 WL 2503648, at *3 ("the PSLRA's legislative history reflects Congressional

intent to favor institutional investors, that have the greater financial resources and experience to

satisfy their fiduciary duties to the class members"); *In re Telxon Corp., Sec. Litig.*, 67

F. Supp. 2d 803, 821 (N.D. Ohio 1999) ("There is no doubt . . . that, throughout the PSLRA's

legislative history, there is repeated mention of the need to increase participation in securities

fraud class actions by institutional investors; it could even be said that the legislative history

reflects a preference for institutional investors. That fact cannot be denied"); *Aronson v.

McKesson HBOC*, 79 F. Supp. 2d 1146, 1153 (N.D. Cal. 1999) ("the framers of the [PSLRA]

envisioned that established institutional investors would take control of securities litigation").

---

[7]  As indicated in the summary of loss calculations (Exhbhit 1 to Hart Decl.), the NYC Funds purchased a total of 768,706 shares during the Class Period, and had 401,032 "net shares" purchased (after deducting shares sold during the Class Period). Net funds expended were $14,657,541. The NYC Funds' losses, if one does not apply *Dura* to offset gains and losses from sales prior to the April 11, 2011 disclosure, were $5,063,076 under FIFO, and $4,100,989 under LIFO.

*See* H.R. Rep. No. 104-369, at 34 (1995) (Conf. Rep.) (the PSLRA was intended "to increase the likelihood that institutional investors will serve as lead plaintiffs" because, among other reasons, institutional investors and other class members with large amounts at stake "will represent the interests of the plaintiff class more effectively than class members with small amounts at stake") (reprinted at 1995 U.S.C.C.A.N. 730, 733).

The legislative history of the PSLRA also demonstrates that it was intended to prompt institutional investors, such as the NYC Funds, to serve as lead plaintiff. As the Statement of Managers for the PSLRA noted:

> The Conference Committee seeks to increase the likelihood that institutional investors will serve as lead plaintiffs by requiring courts to presume that the member of the purported class with the largest financial stake in the relief sought is the "most adequate plaintiff.
>
> The Conference Committee believes that . . . in many cases the beneficiaries of pension funds – small investors – ultimately have the greatest stake in the outcome of the lawsuit. Cumulatively, these small investors represent a single large investor interest. Institutional investors and other class members with the large amounts at stake will represent the interests of the plaintiff class more effectively than class members with small amounts at stake.

H.R. Rep. No. 104-369, at 34 (1995) (Conf. Rep.).

The New York City Comptroller has investment responsibility for the NYC Funds' assets (Seemen Decl., ¶ 4). Its Office and counsel, *i.e.,* the New York City Law Department, actively staff and oversee any litigation they undertake, precluding a lawyer-driven result. In so doing, the NYC Funds satisfy the PSLRA's prerequisites for appointment as lead plaintiff by assuring that the litigation will be prosecuted solely for the benefit of the class. Seemen Decl., ¶¶ 4, 6-8. The NYC Funds should be appointed as Lead Plaintiff pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(iii).

### 4. The NYC Funds Otherwise Satisfy the Requirements of Rule 23

In addition to possessing the largest financial interest in the outcome of the litigation, the lead plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(3)(B)(iii). Under Rule 23(a), there are two requirements for establishing lead plaintiff: (1) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (2) the representative parties will fairly and adequately protect the interest of the class. *Burgraff*, 2011 WL 613281, at *3. At the lead plaintiff appointment stage, "[t]he moving plaintiff must make only a preliminary showing that the adequacy and typicality requirements under Rule 23 have been met." *Id.*; *see also In re Goodyear Tire & Rubber Co. Secs. Litig.*, 2004 WL 3314943, at *6 ("the Court must find that [the lead plaintiff] would satisfy Rule 23's typicality and adequacy requirements before it can appoint . . . [a] lead plaintiff"). Consequently, in deciding a lead plaintiff motion, courts limit their inquiry to the typicality and adequacy prongs of Rule 23(a), and defer examination of the remaining requirements until a class certification motion is filed. *Id.*

Under Rule 23(a)(3), the claims or defenses of the representative parties must be typical of those of the class. Typicality exists where the plaintiff's claims arise from the same series of events and are based on the same legal theories as the claims of all the class members. *Beattie v. Centurytel, Inc.*, 511 F.3d 554, 561 (6th Cir. 2007); *In re Am. Med. Sys.*, 75 F.3d 1069, 1082 (6th Cir. 1996) ("'plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory") (internal quote omitted). Typicality does not require that there be no factual differences between the class representatives and the class members because it is the generalized nature of the claims asserted which determines whether the class representatives are typical. *See Sprague v. GMC*, 133 F.3d 388, 399 (6th Cir. 1998) ("[t]he premise of the typicality

requirement is simply stated: as goes the claim of the named plaintiff, so go the claims of the class"); *Craft v. Vanderbilt Univ.*, 174 F.R.D. 396, 404 (M.D. Tenn. 1996) (typicality may be satisfied "'even if there are factual distinctions between the named plaintiffs and those of other class members'").

The NYC Funds satisfy the typicality requirements of Rule 23 because, just like all other class members they: (1) purchased CHS stock at prices artificially inflated by the false and misleading statements issued by defendants; (2) have claims that arise out of the same course of events and are based on the same legal theories; and (3) suffered damages when CHS's true condition became known to the marketplace, causing its share price to substantially decline. *Burgraff*, 2011 WL 613281, at *3. These questions of liability are common to all proposed class members.

Under Rule 23, the representative party must also "fairly and adequately protect the interest of the class." Fed. R. Civ. P. 23(a)(4). The PSLRA directs the court to limit its inquiry of the movant's adequacy to represent the class to the following: (1) the absence of potential conflict between the proposed lead plaintiff and the class members; and (2) the class representative's choice of counsel who is qualified, experienced, and able to vigorously conduct the proposed litigation. *See, e.g.*, *Burgraff*, 2011 WL 613281, at *3 ("The purpose of the adequacy requirement is to ensure that there are no conflicts of interest between the purported lead plaintiff and the other class members"), citing *Beattie*, 511 F.3d at 562.

The NYC Funds' interest in aggressively and vigorously pursuing the claims against defendants is aligned with the interests of the members of the class, who similarly suffered losses, *i.e.*, they purchased CHS stock and their investments were impaired by the defendants' conduct. There is no antagonism between the NYC Funds' interests and those of the other

members of the class.  The NYC Funds have also demonstrated their intention to take an active role in the management of the litigation, working closely with their counsel to achieve the best possible result for the class.  *See* Seemen Decl., ¶¶ 9-17.

Moreover, the NYC Funds are themselves experienced at serving as class action Lead Plaintiffs.  The NYC Funds are currently Lead Plaintiffs in one pending federal securities class action, and have recently concluded two other class actions, obtaining hundreds of millions of dollars for injured investors.  *Id.*, ¶¶ 8-9.

Finally, as shown below, the NYC Funds' proposed Lead Counsel, Lowey Dannenberg, is highly qualified, experienced and able to prosecute this complex litigation in a professional manner.  *See* Lowey Dannenberg Firm Resume, attached as Ex. 6 to Hart Decl.  Thus, the NYC Funds are the most adequate Lead Plaintiff in this case.

### C.      The NYC Funds' Selection of Lead Counsel Should Be Approved

The Lead Plaintiff is empowered under the PSLRA to select and retain counsel to represent all class members, subject to the approval of the court.   *See* 15 U.S.C. § 78u-4(a)(3)(B)(v).   In making this determination, the Court must consider whether the proposed counsel are qualified, experienced, and generally able to conduct the litigation.  *See Stout v. J.D. Byrider*, 228 F.3d 709, 717 (6th Cir. 2000).  *See also Garden City,* 2010 WL 1790763, at *4 ("the role of class counsel is akin to that of a fiduciary to the absent class members") (citation omitted).

The NYC Funds have selected Lowey Dannenberg to act as Lead Counsel for the class. Lowey Dannenberg is among the preeminent plaintiffs' class action law firms, having taken leading roles in numerous important actions on behalf of defrauded investors, including most recently in *In re Juniper Securities Litigation* and *In re Bayer Securities Litigation*.  *See* Lowey Dannenberg Firm Resume, Ex. 6 to Hart Decl.; Seemen Decl. ¶ 14.  Lowey Dannenberg has

been recognized recently as appropriate lead counsel in cases brought since the passage of the PSLRA.  Hart Decl. ¶ 8.

Moreover, in "'[g]iving the Lead Plaintiff primary control for the selection of counsel was a critical part of Congress' effort to transfer control of securities class actions from lawyers to investors.'"  *Bioenvision*, *supra*, 2007 WL 4526532, at *11 (citing cases).  In this regard, Lowey Dannenberg was selected by the NYC Funds to act as Lead Counsel through the NYC Funds' rigorous multi-phased selection process.  *See* Seemen Decl., ¶ 14.  This process included the negotiation of a limitation of attorneys' fees that Lowey Dannenberg may seek that are far less than fees typically awarded in securities fraud class action litigation.  *Id.,* ¶ 18.  This selection process and fee negotiation demonstrate the NYC Funds' commitment to run the litigation and forestall a lawyer-driven result disfavored by the PSLRA.

## V.      CONCLUSION

For the foregoing reasons, the NYC Funds respectfully request that the above captioned cases be consolidated, that they be appointed as Lead Plaintiff for the Class, and that Lowey Dannenberg Cohen, P.C. be appointed as Lead Counsel for the Class, and Miller & Martin PLLC as local counsel.

Dated: July 8, 2011

<div style="margin-left:40%">

MILLER & MARTIN PLLC

By:    s/ T. Harold Pinkley
        T. Harold Pinkley (TN Bar No.: 009830)
        Kyle A. Young (TN Bar No.: 028357)
        1200 One Nashville Place
        150 Fourth Avenue, North
        Nashville, TN 37219
        Phone (615) 744-8548
        Fax (615) 744-8643

        *Local Counsel*

</div>

LOWEY DANNENBERG COHEN & HART, P.C.
Barbara J. Hart (BH-3231)
David C. Harrison (DH-3834)
Thomas Skelton (TS-7908)
Scott V. Papp (SP-6005)
One North Broadway, Suite 509
White Plains, NY 10601
Telephone: (914) 997-0500
Telecopier: (914) 997-0035
E-mail: bhart@lowey.com

*Counsel for the NYC Funds and*
*  [Proposed] Lead Counsel for Plaintiff Class*

## CERTIFICATE OF SERVICE

I hereby certify that, on this the 8th day of July, 2011, the foregoing was electronically filed with the Clerk of this Court using the Court's ECF system, which will automatically serve a copy of same upon the following attorneys of record:

Christopher J. Keller
Labaton Sucharow LLP
140 Broadway
New York, NY 10005
Email: ckeller@labaton.com

John R. Jacobson
Riley, Warnock & Jacobson
1906 West End Avenue
Nashville, TN 37203
Email: jjacobson@rwjplc.com

James Gerard Stranch , IV
Branstetter, Stranch & Jennings
227 Second Avenue, N
4th Floor
Nashville, TN 37201
Email: gstranch@branstetterlaw.com

Evan Jude Saucier
Kirkland & Ellis (NY)
Citigroup Center
601 Lexington Avenue
New York, NY 10022-4611
Email: evan.saucier@kirkland.com

Michael W. Stocker
Labaton Sucharow LLP
140 Broadway
New York, NY 10005
Email: mstocker@labaton.com

James Maxwell Cooper
Kirkland & Ellis (NY)
Citigroup Center
601 Lexington Avenue
New York, NY 10022-4611
Email: max.cooper@kirkland.com

Rachel A. Avan
Labaton Sucharow LLP
140 Broadway
New York, NY 10005
Email: ravan@labaton.com

Peter Duffy Doyle
Kirkland & Ellis (NY)
Citigroup Center
601 Lexington Avenue
New York, NY 10022-4611
Email: peter.doyle@kirkland.com

s/ T. Harold Pinkley
T. Harold Pinkley