UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| NORFOLK COUNTY RETIREMENT SYSTEM, Individually and On Behalf of All Others Similarly Situated, | Case No. 3:11-cv-00433 |
| Plaintiff, | Judge John T. Nixon<br>Mag. Judge E. Clifton Knowles |
| v. | |
| COMMUNITY HEALTH SYSTEMS, INC., WAYNE T. SMITH, and W. LARRY CASH, | JURY DEMAND |
| Defendants. | |
| DE ZHENG, Individually and On Behalf of All Others Similarly Situated, | Case No. 3:11-cv-00451 |
| Plaintiff, | Judge John T. Nixon<br>Mag. Judge E. Clifton Knowles |
| v. | |
| COMMUNITY HEALTH SYSTEMS, INC., WAYNE T. SMITH, and W. LARRY CASH, | JURY DEMAND |
| Defendants. | |
| MINNEAPOLIS FIREFIGHTERS' RELIEF ASSOCIATION, On Behalf of Itself and All Others Similarly Situated, | Case No. 3:11-cv-00601 |
| Plaintiff, | Judge Kevin H. Sharp<br>Mag. Judge E. Clifton Knowles |
| v. | |
| COMMUNITY HEALTH SYSTEMS, INC., WAYNE T. SMITH, W. LARRY CASH, and THOMAS MARK BUFORD, | JURY DEMAND |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF
ALBERTA INVESTMENT MANAGEMENT CORP. AND STATE-BOSTON
RETIREMENT SYSTEM FOR CONSOLIDATION, APPOINTMENT
AS LEAD PLAINTIFF, AND APPROVAL OF SELECTION OF COUNSEL**

# TABLE OF CONTENTS

TABLE OF CONTENTS .................................................................................................. i

TABLE OF AUTHORITIES ........................................................................................... ii

PRELIMINARY STATEMENT ......................................................................................1

FACTUAL BACKGROUND ..........................................................................................2

ARGUMENT .................................................................................................................4

I.      THE RELATED ACTIONS SHOULD BE CONSOLIDATED .......................................4

II.     THE INSTITUTIONAL INVESTORS
        SHOULD BE APPOINTED LEAD PLAINTIFF ............................................................5

        A.      The PSLRA Standard for Appointing Lead Plaintiff ...............................................5

        B.      The Institutional Investors Are the "Most Adequate Plaintiff" ..............................6

                1.      The Institutional Investors Have
                        Satisfied the PSLRA's Procedural Requirements ......................................7

                2.      The Institutional Investors Have the Largest
                        Financial Interest in the Relief Sought by the Class ..................................7

                3.      The Institutional Investors Satisfy
                        Rule 23's Typicality and Adequacy Requirements ....................................9

III.    THE INSTITUTIONAL INVESTORS ARE PRECISELY THE
        TYPE OF LEAD PLAINTIFF ENVISIONED BY THE PSLRA....................................12

IV.     THE COURT SHOULD APPROVE THE
        INSTITUTIONAL INVESTORS' CHOICE OF COUNSEL ..........................................14

CONCLUSION............................................................................................................15

# TABLE OF AUTHORITIES

## FEDERAL CASES

*In re Am. Med. Sys., Inc.*,
   75 F.3d 1069 (6th Cir. 1996) .............................................................10

*In re Am. Serv. Group, Inc.*,
   No. 06-cv-323-WJH, 2006 WL 2503648 (M.D. Tenn. Aug. 29, 2006) .................................13

*Burgraff v. Green Bankshares, Inc.*,
   No. 10-cv-253-CLC, 2011 WL 613281 (E.D. Tenn. Feb. 11, 2011)............................ 8, 10-11

*In re Cavanaugh*,
   306 F.3d 726 (9th Cir. 2002) ...............................................................6

*In re Cendant Corp. Litig.*,
   264 F.3d 201 (3d Cir. 2001)..........................................................9, 12, 14

*Craft v. Vanderbilt Univ.*,
   174 F.R.D. 396 (M.D. Tenn. 1996) ......................................................10

*In re Cree, Inc., Sec. Litig.*,
   219 F.R.D. 369 (M.D.N.C. 2003) ......................................................12

*Dura Pharms. Inc. v. Broudo*,
   544 U.S. 336 (2005)......................................................................7

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
   574 F.3d 29 (2d Cir. 2009).................................................................7

*Garden City Employees' Ret. Sys. v. Psychiatric Solutions, Inc.*,
   No. 09-cv-882-WJH, 2010 WL 1790763 (M.D. Tenn. Apr. 30, 2010)............................ 4-5, 8

*Johnson v. Celotex Corp.*,
   899 F.2d 1281 (2d Cir. 1990)...............................................................5

*In re McKesson HBOC, Inc. Sec. Litig.*,
   97 F. Supp. 2d 993 (N.D. Cal. 1999) ......................................................9

*In re Mills Corp. Sec. Litig.*,
   No. 06-cv-77, 2006 WL 2035391 (E.D. Va. May 30, 2006)..................................12

*Ohio Pub. Employees' Ret. Sys v. Fannie Mae*,
   357 F. Supp. 2d 1027 (S.D. Ohio 2005) ......................................... 10-11

Case 3:11-cv-00433   Document 30   Filed 07/08/11   Page 3 of 21 PageID #: 498

*In re Regions Morgan Keegan Closed-End Fund Litig.*,
No. 07-cv-2830-EPW, 2010 WL 5173851 (W.D. Tenn. Dec. 15, 2010) ............... 9, 11-12, 15

*Rutland v. Infosonics Corp.*,
No. 06-cv-1231, 2006 WL 3746716 (S.D. Cal. Oct. 23, 2006) ................................................8

*In re Waste Mgmt., Inc. Sec. Litig.*,
128 F. Supp. 2d 401 (S.D. Tex. 2000) ...................................................................................14

## DOCKETED CASES

*In re Am. Int'l Group, Inc. Sec. Litig.*,
No. 04-cv-8141 (S.D.N.Y.)....................................................................................................14

*Cole v. Health Mgmt. Assocs., Inc.*,
07-cv-484, slip op. (M.D. Fla. May 14, 2008)........................................................................8

*In re Countrywide Fin. Corp. Sec. Litig.*,
No. 07-cv-5295 (C.D. Cal.) ...................................................................................................14

*Mahapatra v. Fuqi Int'l, Inc.*,
No. 10-cv-2515, slip op. (S.D.N.Y. July 26, 2010) ..............................................................13

*In re Monster Worldwide, Inc. Sec. Litig.*,
No. 07-cv-2237, Hr'g Tr. (S.D.N.Y. June 14, 2007) .............................................................15

*In re Nortel Network Corp. ERISA Litig.*,
No. 03-md-1537-JTN (M.D. Tenn.) ......................................................................................15

## FEDERAL STATUTES

15 U.S.C. § 78j(b) ......................................................................................................................3

15 U.S.C. § 78t(a) ......................................................................................................................3

15 U.S.C. § 78u-(4) *et seq.*............................................................................................. *passim*

17 C.F.R. § 240.10b-5.................................................................................................................3

Fed. R. Civ. P. 23(a) ............................................................................................................ 9-10

Fed. R. Civ. P. 42(a) ..................................................................................................................5

Alberta Investment Management Corp. ("AIMCo") and State-Boston Retirement System

("Boston," and together with AIMCo, the "Institutional Investors") respectfully submit this

Memorandum of Law in support of their Motion, pursuant to Section 21D(a)(3) of the Securities

Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3), as amended by the Private

Securities Litigation Reform Act of 1995 (the "PSLRA"), for an order: (1) consolidating the

above-captioned related actions (the "Action"); (2) appointing the Institutional Investors as Lead

Plaintiff for a class of purchasers (the "Class") of Community Health Systems, Inc. ("CHS" or

the "Company") common stock between July 27, 2006 and April 11, 2011, inclusive (the "Class

Period");[1] (3) approving the Institutional Investors' selection of Labaton Sucharow LLP

("Labaton Sucharow") as Lead Counsel for the Class and Branstetter, Stranch & Jennings, PLLC

("Branstetter Stranch") as Liaison Counsel for the Class; and (4) granting such other and further

relief as the Court may deem just and proper.

## PRELIMINARY STATEMENT

AIMCo and Boston—institutional investors with tens of billions of dollars in assets under

management—respectfully submit that they should be appointed Lead Plaintiff on behalf of

purchasers of CHS common stock during the Class Period who incurred damages as a result of

the Defendants' alleged violations of the Exchange Act.  As set forth in detail below, the

Institutional Investors retained nearly all—94.7 percent—of the shares of CHS common stock

they purchased during the Class Period on the New York Stock Exchange at the close of the

Class Period, and suffered losses of $4,098,606, as calculated under the last-in-first-out ("LIFO")

---

[1]  The complaints filed against CHS assert different class periods.  After it is appointed, the Lead
Plaintiff will reconcile the different class periods upon filing a consolidated complaint.  For
purposes of this Motion, the Institutional Investors adopt the longest class period involved in
these actions.

loss calculation methodology.[2]  Accordingly, the Institutional Investors have a substantial financial interest in the relief sought by this litigation—an interest believed to be greater than that of any competing movant.  The Institutional Investors also meet the typicality and adequacy requirements of Rule 23 of the Federal Rules of Civil Procedure ("Rule 23") because their claims are typical of those of absent Class members, and they will fairly and adequately represent the interests of the Class.  Indeed, the PSLRA's legislative history shows that AIMCo and Boston are precisely the type of sophisticated institutional investors whose participation in securities class actions the PSLRA was meant to foster.  In short, the Institutional Investors are the "most adequate plaintiff" and should be appointed Lead Plaintiff.

The Institutional Investors also respectfully request that the Court approve their choice of counsel.  The Institutional Investors' choice for Lead Counsel, Labaton Sucharow, is a nationally-recognized securities class action firm that has recovered billions of dollars in damages for injured shareholders.  The Institutional Investors' choice for Liaison Counsel, Branstetter Stranch, is a respected firm with which Labaton Sucharow is already collaborating in Tennessee federal court on another securities fraud class action.  These firms are eminently qualified to prosecute this case and have extensive experience in the prosecution of class actions and securities fraud claims such as those asserted in the Action.

**FACTUAL BACKGROUND**

Pending before the Court are three complaints that were filed against: (1) CHS, a leading operator of general acute care hospitals; (2) Wayne T. Smith (CHS' Chairman, President, and

---

[2]  A copy of the PSLRA-required Certification submitted by the Institutional Investors is attached as Exhibit A to the Declaration of J. Gerard Stranch, IV (the "Stranch Declaration"), submitted herewith.  This Certification sets forth all transactions of the Institutional Investors in CHS common stock during the Class Period.  In addition, a chart reflecting the calculation of the Institutional Investors' financial losses on CHS common stock purchased during the Class Period is attached as Exhibit B to the Stranch Declaration.

2

Chief Executive Officer since 2001); (3) W. Larry Cash (a member of the CHS Board since 2001 and CHS' Chief Financial Officer and an Executive Vice President since 1997); and (4) Thomas Mark Buford (Corporate Controller since 1986, Vice President since 1988, and currently a Senior Vice President and Chief Accounting Officer of CHS) (collectively, "Defendants"). The complaints allege violations of Sections 10(b) and 20(a) of the Exchange Act[3] and U.S. Securities and Exchange Commission ("SEC") Rule 10b-5 ("Rule 10b-5") promulgated thereunder.[4]

Founded in 1985, CHS operates and leases more than 130 acute-care hospitals in non-urban markets in 29 states.[5] For fiscal year 2010, CHS generated $13 billion in revenue, and approximately 27.2 percent of CHS' net operating revenue was derived from Medicare reimbursement payments in fiscal year 2010. Because a significant proportion of CHS' net operating revenue is derived from Medicare reimbursement payments, the Company's profitability is highly dependent on its relationship with the agency and compliance with Medicare requirements.

At its facilities, CHS provides both inpatient admission and outpatient observation services. Hospitals admit on an inpatient basis patients who present for treatment while suffering from complex medical conditions that will likely require care for 24 hours or more. Hospitals admit on an outpatient observation basis patients whose medical condition requires care for less than 24 hours, and whose condition is not so serious that the full panoply of inpatient services is indicated. Medicare pays less for outpatient observation treatment than for inpatient treatment

---

[3] *See* 15 U.S.C. §§ 78j(b) and 78t(a).

[4] *See* 17 C.F.R. § 240.10b-5.

[5] CHS is a Delaware corporation headquartered in Franklin, Tennessee.

3

because outpatient treatment requires a shorter hospital stay and typically less testing and monitoring.

The complaints allege that CHS has systematically boosted its Medicare revenues by admitting for inpatient services patients who medically required outpatient observation only. This practice, which violated not only stringent Medicare rules, but the Company's own written policies, made the Company appear to be vastly more profitable than it was in reality, and artificially inflated the value of CHS' stock.

Before the markets opened on April 11, 2011, Tenet Health Corporation ("Tenet") filed a report on Form 8-K that disclosed the results of its own thorough investigation into CHS' admission practices. According to Tenet, CHS had, for at least ten years, been improperly admitting patients on an inpatient basis when such patients actually should have been admitted on an outpatient observation basis, resulting in higher payments from Medicare than the payments to which CHS was legitimately entitled. As a result of these revelations, CHS common stock fell 35.76 percent, or $14.41, to close at $25.89 on April 11, 2011.

The Company's misconduct and the revelations thereof have caused CHS' stockholders to incur hundreds of millions of dollars in losses.

## ARGUMENT

## I.   THE RELATED ACTIONS SHOULD BE CONSOLIDATED

Three related securities class actions have been filed in this Court against the Defendants. The PSLRA provides that "[i]f more than one action on behalf of a class asserting substantially the same claim or claims arising under this chapter has been filed," a court shall not appoint a lead plaintiff "until after the decision on the motion to consolidate is rendered." 15 U.S.C. § 78u-4(a)(3)(B)(ii); *see also Garden City Employees' Ret. Sys. v. Psychiatric Solutions, Inc.*

4

("*Psychiatric Solutions*"), No. 09-cv-882-WJH, 2010 WL 1790763, at *2 (M.D. Tenn. Apr. 30, 2010) (same). Under Rule 42(a), consolidation is appropriate when the actions involve common questions of law or fact. Fed. R. Civ. P. 42(a). The Court has broad discretion under Rule 42(a) to consolidate cases. *Johnson v. Celotex Corp.*, 899 F.2d 1281, 1284 (2d Cir. 1990).

Here, the related actions are ideally suited for consolidation pursuant to Rule 42(a) because their unification will expedite pretrial proceedings, reduce case duplication, and minimize the expenditure of time and money for all concerned parties. These actions present substantially similar factual and legal issues, arise from the same alleged scheme by Defendants, and allege violations of the Exchange Act. Because these actions are based on the same facts and involve the same subject matter, discovery obtained in this lawsuit will undoubtedly be relevant to all other actions. Accordingly, consolidation of the above-captioned actions is appropriate under Rule 42(a) and the PSLRA, and the Institutional Investors respectfully submit that these actions should be consolidated.

## II. THE INSTITUTIONAL INVESTORS SHOULD BE APPOINTED LEAD PLAINTIFF

### A. The PSLRA Standard for Appointing Lead Plaintiff

The PSLRA provides a straightforward procedure for selecting a lead plaintiff for "each private action arising under [the Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(l); *see also* 15 U.S.C. § 78u-4(a)(3)(B) (setting forth procedure for selecting lead plaintiff). Section 21D(a)(3)(A)(i) of the Exchange Act, as amended by the PSLRA, specifies that:

> Not later than 20 days after the date on which the complaint is filed, the plaintiff or plaintiffs shall cause to be published, in a widely circulated national business-oriented publication or wire service, a notice advising members of the purported plaintiff class–

> (I)     of the pendency of the action, the claims asserted therein, and the purported class period; and
>
> (II)    that, not later than 60 days after the date on which the notice is published, any member of the purported class may move the court to serve as lead plaintiff of the purported class.

15 U.S.C. § 78u-4(a)(3)(A)(i); *see also In re Cavanaugh*, 306 F.3d 726, 729 (9th Cir. 2002).

Under the PSLRA, a court is to consider any motion made by class members and appoint the movant that the court determines to be most capable of adequately representing the interests of the class as lead plaintiff. Specifically, the PSLRA provides that a court:

> shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members (. . . the "most adequate plaintiff") . . . .

15 U.S.C. § 78u-4(a)(3)(B)(i).

In adjudicating a lead plaintiff motion, a court shall adopt a presumption that the "most adequate plaintiff" is the person or group of persons who: (1) filed a complaint or made a motion to serve as lead plaintiff; (2) has the largest financial interest in the relief sought by the class; and (3) who otherwise satisfies the requirements of Rule 23. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). This presumption may be rebutted by proof that the presumptively most adequate plaintiff "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

**B.     The Institutional Investors Are the "Most Adequate Plaintiff"**

The Institutional Investors respectfully submit that they are the presumptively "most adequate plaintiff" because they have complied with PSLRA procedural requirements, hold the largest financial interest of any movant, and satisfy Rule 23's typicality and adequacy requirements.

6

### 1. The Institutional Investors Have Satisfied the PSLRA's Procedural Requirements

The Institutional Investors have filed this motion to serve as lead plaintiff in a timely manner. Pursuant to 15 U.S.C. § 78u-4(a)(3)(A)(i), Labaton Sucharow, which represented the first plaintiff to file a complaint in the Action, caused notice regarding the pending nature of this case to be published on *Globe Newswire*, a widely-circulated, national, business-oriented news wire service, on May 9, 2011. *See* Stranch Decl. Ex. C. Thus, as permitted by the PSLRA, any person who is a member of the proposed Class may apply to be appointed lead plaintiff within sixty (60) days after publication of the notice, *i.e.*, on or before July 8, 2011. The Institutional Investors have filed their motion within the required period.

### 2. The Institutional Investors Have the Largest Financial Interest in the Relief Sought by the Class

The PSLRA instructs the Court to adopt a rebuttable presumption that the "most adequate plaintiff" for lead plaintiff purposes is the movant with the largest financial interest in the relief sought by the class, so long as the movant meets the requirements of Rule 23. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

The Institutional Investors purchased 479,170 shares of CHS common stock during the Class Period, and retained 94.7 percent of these shares, or 453,820 shares of CHS stock, at the end of the Class Period. *See* Loss Analysis, Stranch Decl. Ex. B. The impact of this fact cannot be overstated, since Supreme Court and recent circuit court decisions make clear that investment losses attributable to stock sales prior to disclosure of the fraud cannot be recovered in a securities fraud action. *See, e.g.*, *Dura Pharms. Inc. v. Broudo*, 544 U.S. 336, 342 (2005) ("if . . . the purchaser sells the shares . . . before the relevant truth begins to leak out, the misrepresentation will not have led to any loss."); *see also In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 41 (2d Cir. 2009) (excluding in-and-out investors who sold their stock

before corrective disclosures were made from a class for failing establish loss causation). Significantly, AIMCo did not sell any of the shares it purchased during the Class Period. As such, the Institutional Investors' losses are not affected by the removal of "in-and-out" losses associated with pre-disclosure stock sales, nor is their trading otherwise atypical. The Institutional Investors suffered substantial losses of approximately $4,098,606 calculated under the LIFO method of accounting for purchases and sales.

Courts in the Sixth Circuit consider the following four factors in determining which movant has the largest financial interest in an action: (1) the number of shares purchased during the class period, (2) the number of net shares purchased during the class period, (3) the total net funds expended by the movant during the class period; and (4) the amount of loss suffered by the movant. *Burgraff v. Green Bankshares, Inc.* ("*Green Bankshares*"), No. 10-cv-253-CLC, 2011 WL 613281 (E.D. Tenn. Feb. 11, 2011). Although the fourth factor, amount of loss, is often the first factor reviewed by courts, it is only a starting point for the analysis of "largest financial interest." *See Psychiatric Solutions*, 2010 WL 1790763, at *3 ("the plaintiff with the larger numeric loss is not automatically the plaintiff with the largest financial interest." (internal quotations omitted) (citing *In re Moral Fin. Corp. Sec. Litig.*, 414 F. Supp. 2d 398, 403 (S.D.N.Y. 2006); *In re Pfizer Inc. Sec. Litig.*, 233 F.R.D. 334, 338 (S.D.N.Y. 2005)). Indeed, courts have affirmed that the second factor—the number of net shares purchased during the class period—can be the determinative factor in evaluating competing movants' financial interest in the litigation because it seeks to exclude losses unrelated to fraud from movants' loss calculations. *See, e.g., Cole v. Health Mgmt. Assocs., Inc.*, 07-cv-484, slip op. at 13 (M.D. Fla. May 14, 2008) ("when in-and-out transactions are ignored, the number of net shares purchased is the most significant factor"); *Rutland v. Infosonics Corp.*, No. 06-cv-1231, 2006 WL 3746716, at

*6 (S.D. Cal. Oct. 23, 2006) ("At least as a first approximation, the candidate with the most net shares purchased will normally have the largest potential damage recovery.") (internal quotations and citations omitted). The amount of net shares purchased is particularly important where, as here, a fraud is revealed in a single, full disclosure. *See, e.g.*, *In re McKesson HBOC, Inc. Sec. Litig.*, 97 F. Supp. 2d 993, 996-97 (N.D. Cal. 1999) ("A net purchaser will, presumably, have a greater interest in the litigation, because he or she was induced by the fraud to purchase shares, and has been left 'holding the bag' when the fraudulent inflation is revealed.").

The Institutional Investors are presently unaware of any other movant with a larger financial interest in the outcome of the Action. Consequently, and because they also satisfy Rule 23's typicality and adequacy requirements, the Institutional Investors are entitled to the legal presumption that they are the most adequate plaintiff.

### 3. The Institutional Investors Satisfy Rule 23's Typicality and Adequacy Requirements

In addition to the largest financial interest requirement, the PSLRA also directs that the lead plaintiff must "otherwise satisf[y] the requirements of Rule 23 . . . ." 15 U.S.C. § 78u-(4)(a)(3)(B)(iii)(I)(cc). With respect to class certification, Rule 23(a) requires that: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) such claims are typical of those of the class; and (4) the representative will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a). However, only the adequacy and typicality requirements of Rule 23 need to be met at the lead plaintiff stage. *In re Regions Morgan Keegan Closed-End Fund Litig.*, No. 07-cv-2830-EPW, 2010 WL 5173851, at *5 (W.D. Tenn. Dec. 15, 2010) (citing *In re Cendant Corp. Litig.*, 264 F.3d 201, 263 (3d Cir. 2001)).

Under Rule 23(a)(3), the claims or defenses of the representative party must be typical of those of the class. Typicality is satisfied when the lead plaintiff has suffered the same or similar injuries as the absent class members, as a result of the same course of conduct by defendants, and its claims are based on the same legal issues. *See In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1082 (6th Cir. 1996) ("[A] plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory.") (quotation omitted); *Green Bankshares*, 2011 WL 613281, at *3 (same). The claims of the lead plaintiff need not be identical to the claims of the class to satisfy typicality. *See Craft v. Vanderbilt Univ.*, 174 F.R.D. 396, 404 (M.D. Tenn. 1996) (holding that typicality "may be satisfied even if there are factual distinctions between the named plaintiffs and those of other class members") (quotation omitted).

The typicality requirement is satisfied here because the Institutional Investors, which are not subject to any unique or special defenses, seek the same relief and advance the same legal theories as other Class members. Like all members of the Class, the Institutional Investors: (1) purchased or acquired CHS securities during the Class Period; (2) at prices artificially inflated by Defendants' misrepresentations and omissions; and (3) suffered damages as a result. *See Ohio Pub. Employees' Ret. Sys v. Fannie Mae* ("*Fannie Mae*"), 357 F. Supp. 2d 1027, 1034-35 (S.D. Ohio 2005) (discussing the typicality requirement). These shared claims, which are based on the same legal theory, and arise from the same events and course of conduct as the Class' claims, satisfy Rule 23(a)(3)'s typicality requirement.

**(b)** **The Institutional Investors Will Fairly and Adequately Represent the Interests of the Class**

The adequacy of representation requirement of Rule 23(a)(4) is satisfied when a representative party establishes that it "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The purpose of the adequacy requirement is to ensure there are no conflicts of interest between the purported lead plaintiff and the other class members. *Green Bankshares*, 2011 WL 613281, at *3 (citing *Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 562 (6th Cir. 2007)). In the Sixth Circuit, adequacy is determined based on common interests between the lead plaintiff and the class and whether the representative "demonstrate[s] that it has both the ability and the incentive to represent the class's claims aggressively." *Regions Morgan Keegan*, 2010 WL 5173851, at *5. Representation is adequate when: (1) class counsel is qualified, experienced and generally able to conduct the litigation and (2) the class members do not have interests that are antagonistic to one another. *See Fannie Mae*, 357 F. Supp. 2d at 1034 (setting forth ways movants can meet the adequacy requirement).

The Institutional Investors will fairly and adequately represent the interests of the proposed Class. No antagonism exists between the Institutional Investors' interests and those of the absent Class members; rather, the interests of the Institutional Investors and the Class members are squarely aligned. In addition, the Institutional Investors have retained counsel highly experienced in prosecuting securities class actions vigorously and efficiently, and have timely submitted their choice to the Court for approval, in accordance with the PSLRA. *See* 15 U.S.C. §§ 78u-4(a)(3)(A)(i)(II) and (B)(v). Prior to filing the first complaint in the Action, Labaton Sucharow initiated an extensive investigation into CHS and its policies, including efforts to identify potential witnesses with knowledge of CHS' practices. Courts place great weight on the investigative work conducted by lead plaintiff movants' choice of counsel. *See,*

*e.g.*, *In re Cree, Inc., Sec. Litig.*, 219 F.R.D. 369, 373 (M.D.N.C. 2003) ("The court is also guided . . . by the provisions of . . . Rule 23(g) . . . providing that in appointing class counsel the court must consider the work counsel has done in identifying or investigating potential claims in the actions . . . ."); *In re Mills Corp. Sec. Litig.*, No. 06-cv-77, 2006 WL 2035391, at *3 (E.D. Va. May 30, 2006) (citing lead counsel's efforts to identify and investigate potential claims in the action). "That [the Institutional Investors] ha[ve] hired such accomplished counsel [as Labaton Sucharow] supports a finding that it has the intention of aggressively prosecuting the class's claims." *Regions Morgan Keegan*, 2010 WL 5173851, at *5. The Institutional Investors suffered substantial losses due to Defendants' alleged fraud and, therefore, have a sufficient interest in the outcome of this case to ensure vigorous prosecution of the Action. Accordingly, the Institutional Investors satisfy the adequacy requirement.

## III. THE INSTITUTIONAL INVESTORS ARE PRECISELY THE TYPE OF LEAD PLAINTIFF ENVISIONED BY THE PSLRA

In addition to satisfying the requirements of Rule 23, AIMCo and Boston—large, sophisticated institutional investors—are the type of investors Congress sought to encourage to assume a more prominent role in securities litigation with the enactment of the PSLRA's lead plaintiff provisions. *See id.* at *6 ("One of the main purposes Congress sought to advance when enacting the PSLRA was to promote the appointment of institutional investors as lead plaintiffs."). Congress noted in the PSLRA Statement of Managers Report that the PSLRA was formulated "to increase the likelihood that institutional investors will serve as lead plaintiff[]," in part, because "[i]nstitutional investors and other class members with large amounts at stake will represent the interests of the plaintiff class more effectively than class members with small amounts at stake." *Cendant*, 264 F.3d at 244, 264 (quoting S. Rep. No. 104-98, at 10 (1995),

*reprinted in* 1995 U.S.C.C.A.N. 679, 690 and H.R. Rep. No. 104-369, at 34 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, 733).

AIMCo is one of Canada's largest institutional investors. AIMCo oversees and manages the retirement income needs of more than 300,000 active and retired public sector employees and has approximately $70 billion in assets under management. Boston manages more than $3.1 billion in assets for more than 34,000 active and retired members throughout the City of Boston, Massachusetts.

AIMCo and Boston are sophisticated institutional investors with sufficient resources to adequately litigate the Action and supervise Class counsel. *See In re Am. Serv. Group, Inc.*, No. 06-cv-323-WJH, 2006 WL 2503648, at *3 (M.D. Tenn. Aug. 29, 2006) ("[Institutional investor movant's] assets reflect its financial ability to commit the resources to pursue the interests of the putative class in this litigation."). The Institutional Investors understand the fiduciary duties of a lead plaintiff, are willing to oversee the vigorous prosecution of the Action, and have pledged to "provid[e] testimony at deposition and trial, if necessary." *See* Certification, Stranch Decl. Ex. A.

The Institutional Investors have demonstrated their commitment to working cohesively together in the efficient prosecution of the Action by executing a Joint Declaration. *See* Joint Decl. of Carole Hunt and Daniel J. Greene ("Jt. Decl."), submitted herewith; *see, e.g.*, *Mahapatra v. Fuqi Int'l, Inc.*, No. 10-cv-2515, slip op. at 15 (S.D.N.Y. July 26, 2010) ("[the group's declaration] satisfactorily evinces [its] ability (and desire) to work collectively to manage the litigation so that they are able to cooperate and pursue the litigation separately and apart from their lawyers") (internal quotations and citations omitted). The Joint Declaration

advises the Court of the Institutional Investors' close cooperation and ability to effectively oversee the litigation, including protocols for joint decision-making. *See* Jt. Decl. ¶¶ 5, 8-12.

Thus, as demonstrated herein, the Institutional Investors are the very personification of the lead plaintiff contemplated by the PSLRA.

## IV. THE COURT SHOULD APPROVE THE INSTITUTIONAL INVESTORS' CHOICE OF COUNSEL

The PSLRA vests authority in the lead plaintiff to select and retain lead counsel for the class, subject to the court's approval. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v). "[T]he court should generally employ a deferential standard in reviewing the lead plaintiff's choices." *Cendant*, 264 F.3d at 274. The Institutional Investors selected Labaton Sucharow, highly-qualified counsel, to serve as Lead Counsel for the Class and Branstetter Stranch to serve as Liaison Counsel for the Class.

Labaton Sucharow, the Institutional Investors' selection for Lead Counsel, has excelled as lead counsel in numerous important actions on behalf of defrauded investors. Labaton Sucharow is lead counsel in *In re American International Group, Inc. Securities Litigation*, No. 04-cv-8141 (S.D.N.Y.), in which it recently achieved settlements-in-principle totaling approximately $1 billion. In addition, Labaton Sucharow is lead counsel in *In re Countrywide Financial Corp. Securities Litigation*, No. 07-cv-5295 (C.D. Cal.), which resulted in a settlement of $624 million—the largest securities fraud settlement arising from the financial crisis of 2007 to 2008. Labaton Sucharow also served as lead counsel in the Waste Management securities litigation, which resulted in a settlement of $457 million, one of the largest common-fund securities class action settlements ever achieved at the time. *See In re Waste Mgmt., Inc. Sec. Litig.*, 128 F. Supp. 2d 401, 432 (S.D. Tex. 2000) (stating that Labaton Sucharow "ha[s] been shown to be knowledgeable about and experienced in federal securities fraud class actions"); *see*

14

*also* Labaton Sucharow Firm Resume, Stranch Decl. Ex. D.  Also, Labaton Sucharow is currently serving as lead or co-lead counsel in the securities fraud cases against The Bear Stearns Cos., Inc., Federal National Mortgage Association (Fannie Mae), Satyam Computer Services Ltd., and others.  In *In re Monster Worldwide, Inc. Securities Litigation*, No. 07-cv-2237, Hr'g Tr. at 24:25-25:1 (S.D.N.Y. June 14, 2007), Judge Jed S. Rakoff appointed Labaton Sucharow as lead counsel, stating that "the Labaton firm is very well known to . . . courts for the excellence of its representation."

Branstetter Stranch, the Institutional Investors' Proposed Liaison Counsel, has been providing diverse legal services to its clients for more than fifty years, is experienced in complex commercial litigation, and regularly practices in this District.  As set out in its firm resume attached as Exhibit F to the Stranch Declaration, Branstetter Stranch has litigated numerous cases in the federal courts of Tennessee, as well as nationwide, and serves as counsel for plaintiffs in class actions and complex litigation, including securities, derivative, and ERISA cases, such as *In re Nortel Network Corp. ERISA Litigation*, No. 03-md-1537-JTN (M.D. Tenn.), in which Branstetter Stranch serves as co-lead counsel.  Branstetter Stranch is currently acting as liaison counsel to Labaton Sucharow in *Regions Morgan Keegan*.  Thus, the Court may be assured that by granting this motion, the Class will receive the highest caliber of legal representation.

## <u>CONCLUSION</u>

For the foregoing reasons, the Institutional Investors respectfully request that the Court: (1) consolidate the above-captioned, related cases; (2) appoint the Institutional Investors as Lead Plaintiff; (3) approve the Institutional Investors' selection of Labaton Sucharow as Lead Counsel and Branstetter Stranch as Liaison Counsel; and (4) grant such other relief as the Court may deem just and proper.

Dated: July 8, 2011

Respectfully submitted,

 /s/ J. Gerard Stranch, IV

J. Gerard Stranch, IV, BPR# 023045
**BRANSTETTER, STRANCH &**
**JENNINGS, PLLC**
227 Second Avenue North
Nashville, Tennessee 37201
Telephone: (615) 254-8801
Facsimile: (615) 250-3937
Email: gstranch@branstetterlaw.com

*Proposed Liaison Counsel for the Class*

Christopher J. Keller
Joseph A. Fonti
Michael W. Stocker
**LABATON SUCHAROW LLP**
140 Broadway
New York, New York 10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477
Emails: ckeller@labaton.com
jfonti@labaton.com
mstocker@labaton.com

*Counsel for the Institutional Investors*
*and Proposed Lead Counsel for the Class*

16

## CERTIFICATE OF SERVICE

I hereby certify that on July 8, 2011, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following CM/ECF participants:

- **Rachel A. Avan**
  ravan@labaton.com

- **James Maxwell Cooper**
  max.cooper@kirkland.com

- **Peter Duffy Doyle**
  peter.doyle@kirkland.com

- **John R. Jacobson**
  jjacobson@rwjplc.com,
  twhite@rwjplc.com,
  mkillen@rwjplc.com

- **Christopher J. Keller**
  ckeller@labaton.com,
  ejo@labaton.com

- **Evan Jude Saucier**
  evan.saucier@kirkland.com

- **Michael W. Stocker**
  mstocker@labaton.com

- **James Gerard Stranch, IV**
  gstranch@branstetterlaw.com,
  cbatey@branstetterlaw.com,
  sbryant@branstetterlaw.com

- **Jeffrey A. Berens**
  jeff@dyerberens.com

- **Joel A. Blanchet**
  joel.blanchet@kirkland.com

- **James L. Davidson**
  jdavidson@rgrdlaw.com,
  e_file_fl@rgrdlaw.com

- **Michael I. Fistel , Jr**
  mfistel@holzerlaw.com

- **David J. George**
  dgeorge@rgrdlaw.com

- **Robert J. Robbins**
  rrobbins@rgrdlaw.com

- **Frederic S. Fox**
  ffox@kaplanfox.com

- **Richard A. Lockridge**
  lockrra@locklaw.com

- **Pamela A. Mayer**
  pmayer@kaplanfox.com

- **Michael K. Radford**
  mradford@flynnandradford.com

- **Karen Hanson Riebel**
  khriebel@locklaw.com

- **Joel B. Strauss**
  jstrauss@kaplanfox.com

  _/s/ J. Gerard Stranch, IV_

J. Gerard Stranch, IV, BPR# 023045
**BRANSTETTER, STRANCH &**
  **JENNINGS, PLLC**
227 Second Avenue North
Nashville, Tennessee  37201
Telephone: (615) 254-8801
Facsimile: (615) 250-3937
Email: gstranch@branstetterlaw.com

17