# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| NORFOLK COUNTY RETIREMENT SYSTEM, Individually and On Behalf of All Others Similarly Situated, | Case No. 3:11-cv-00433 |
| Plaintiff, | Judge John T. Nixon Mag. Judge E. Clifton Knowles |
| v. | |
| COMMUNITY HEALTH SYSTEMS, INC., WAYNE T. SMITH, and W. LARRY CASH, | JURY DEMAND |
| Defendants. | |
| DE ZHENG, Individually and On Behalf of All Others Similarly Situated, | Case No. 3:11-cv-00451 |
| Plaintiff, | Judge John T. Nixon Mag. Judge E. Clifton Knowles |
| v. | |
| COMMUNITY HEALTH SYSTEMS, INC., WAYNE T. SMITH, and W. LARRY CASH, | JURY DEMAND |
| Defendants. | |
| MINNEAPOLIS FIREFIGHTERS' RELIEF ASSOCIATION, On Behalf of Itself and All Others Similarly Situated, | Case No. 3:11-cv-00601 |
| Plaintiff, | Judge Kevin H. Sharp Mag. Judge E. Clifton Knowles |
| v. | |
| COMMUNITY HEALTH SYSTEMS, INC., WAYNE T. SMITH, W. LARRY CASH, and THOMAS MARK BUFORD, | JURY DEMAND |
| Defendants. | |

**MEMORANDUM OF LAW IN FURTHER SUPPORT OF THE
MOTION OF ALBERTA INVESTMENT MANAGEMENT CORP. AND
STATE-BOSTON RETIREMENT SYSTEM FOR CONSOLIDATION,
APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF SELECTION
OF COUNSEL, AND IN OPPOSITION TO THE COMPETING MOTIONS**

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ...................................................................................... ii

INTRODUCTION .................................................................................................. 1

ARGUMENT ......................................................................................................... 3

    I.    AIMCo/Boston Has the Largest Financial Interest in the Action ............................... 3

        A.    AIMCo/Boston's Losses Are
Commensurate with Those of the NYC Funds .................................... 4

            1.    LIFO is the Preferred Measure of Losses .................................... 5

            2.    The Court Should Not Consider the
Trading of Funds that Gained from CHS' Fraud .......................... 5

            3.    The Court Should Not Rely Upon the
NYC Funds' "*Dura*" Loss Calculations ...................................... 7

            4.    Appropriate Calculation of Losses ............................................. 7

        B.    The Court Should Appoint AIMCo/Boston as Lead
Plaintiff Because AIMCo/Boston Purchased the Most Net Shares .................... 10

        C.    The Court Should Appoint AIMCo/Boston as Lead Plaintiff
Because Its Net Expenditures Exceed Those of the NYC Funds ........................ 11

    II.    AIMCO/BOSTON SATISFIES RULE 23 ................................................. 13

    III.    ALL OTHER MOTIONS SHOULD BE DENIED .................................... 14

    IV.    AIMCO/BOSTON'S CHOICE OF LABATON SUCHAROW &
BRANSTETTER STRANCH SHOULD BE APPROVED ....................... 14

CONCLUSION ..................................................................................................... 15

# TABLE OF AUTHORITIES

Page(s)

## FEDERAL CASES

*Bang v. Acura Pharms., Inc.*,
No. 10-cv-5757, 2011 WL 91099 (N.D. Ill. Jan. 11, 2011) ......................................................9

*In re Bank of Am. Corp. Sec., Deriv. & ERISA Litig.*,
258 F.R.D. 260 (S.D.N.Y. 2009) ............................................................................................10

*Boyd v. NovaStar Fin., Inc.*,
No. 07-cv-0139, 2007 WL 2026130 (W.D. Mo. July 9, 2007) ................................................4

*Burgraff v. Green Bankshares, Inc.*,
No. 10-cv-253-CLC, 2011 WL 613281 (E.D. Tenn. Feb. 11, 2011) ....................................3, 4

*In re Cardinal Health, Inc. Sec. Litig.*,
226 F.R.D. 298 (S.D. Ohio 2005) .................................................................................. *passim*

*In re Cavanaugh*,
306 F.3d 726 (9th Cir. 2002) ..................................................................................................14

*In re Cendant Corp. Sec. Litig.*,
182 F.R.D. 144 (D.N.J. 1998) .................................................................................................14

*In re Cendant Corp. Sec. Litig.*,
264 F.3d 201 (3d Cir. 2001) .....................................................................................................9

*In re Cendant Corp. Sec. Litig.*,
404 F.3d 173 (3d Cir. 2005) .....................................................................................................1

*City of Monroe Employees' Ret. Sys. v. Hartford Fin. Servs. Group, Inc.*,
269 F.R.D. 291 (S.D.N.Y. 2010) .............................................................................................5

*In re Comdisco Sec. Litig.*,
150 F. Supp. 2d 943 (N.D. Ill. 2001) ..................................................................................6, 11

*In re Critical Path, Inc. Sec. Litig.*,
156 F. Supp. 2d 1102 (N.D. Cal. 2001) .................................................................................10

*Dura Pharms., Inc. v. Broudo*,
544 U.S. 336 (2005) ..................................................................................................................7

*Eastwood Enterprises, LLC v. Farha*,
No. 07-cv-1940, 2008 WL 687351 (M.D. Fla. Mar. 11, 2008) ...............................................9

- ii -

*In re Elan Corp. Sec. Litig.*,
   No. 08-cv-9179, 2009 WL 1321167 (S.D.N.Y. May 11, 2009) ...............................................8

*Garden City Employees' Ret. Sys. v. Psychiatric Solutions, Inc.*,
   No. 09-cv-882-WJH, 2010 WL 1790763 (M.D. Tenn. Apr. 30, 2010)...................................4

*Goldberger v. PXRE Group, Ltd.*,
   No. 06-cv-3410, 2007 WL 980417 (S.D.N.Y. Mar. 30, 2007)...................................5

*Frank v. Dana Corp.*,
   237 F.R.D. 171 (N.D. Ohio 2006) ...................................6

*See Johnson v. Dana Corp.*,
   236 F.R.D. 349 (N.D. Ohio 2006) ...................................5

*Klugmann v. Am. Capital Ltd.*,
   No. 09-cv-05, 2009 WL 2499521 (D. Md. Aug. 13, 2009)...................................9

*Kuriakose v. Fed. Home Loan Mortgage Co.*,
   No. 08-cv-7281, 2008 WL 4974839 (S.D.N.Y. Nov. 24, 2008)............................................12

*Lax v. First Merchants Acceptance Corp.*,
   No. 97-cv-2715, 1997 WL 461036 (N.D. Ill. Aug. 11, 1997) ...................................3

*Makor Issues & Rights, Ltd. v. Tellabs, Inc.*,
   256 F.R.D. 586 (N.D. Ill. 2009)...................................5

*In re McKesson HBOC, Inc. Sec. Litig.*,
   97 F. Supp. 2d 993 (N.D. Cal. 1999) ...................................6

*In re Mills Corp. Sec. Litig.*,
   No. 06-cv-77, 2006 WL 2035391 (E.D. Va. May 30, 2006)............................................12, 15

*In re Network Assocs., Inc. Sec. Litig.*,
   76 F. Supp. 2d 1017 (N.D. Cal. 1999) ...................................10

*Newman v. Eagle Bldg. Techs.*,
   209 F.R.D. 499 (S.D. Fla. 2002)...................................6

*Ohio Pub. Employees' Ret. Sys v. Fannie Mae*,
   357 F. Supp. 2d 1027 (S.D. Ohio 2005) ...................................13

*In re Pfizer, Inc. Sec. Litig.*,
   233 F.R.D. 334 (S.D.N.Y. 2005) ...................................8

*In re Regions Morgan Keegan Closed-End Fund Litig.*,
No. 07-cv-2830-SHM, 2010 WL 5173851 (W.D. Tenn. Dec. 15, 2010) .................................9

*Sofran v. LaBranche & Co.*,
220 F.R.D. 398 (S.D.N.Y. 2004) .........................................................................14

*In re Spectranetics Corp. Sec. Litig.*,
No. 08-cv-2048, 2009 WL 1663953 (D. Colo. June 15, 2009) ...............................................10

*Teamsters Local 617 Pension & Welfare Funds v. Apollo Group, Inc.*,
No. 06-cv-2674, 2007 WL 2692217 (D. Ariz. Sept. 11, 2007) ..............................................11

*In re Watchguard Sec. Litig.*,
No. 05-cv-678, 2005 U.S. Dist. LEXIS 40923 (W.D. Wash. July 13, 2005) ........................ 7-8

## DOCKETED CASES

*Police & Fire Ret. Sys. of the City of Detroit v. Safenet, Inc.*,
No. 06-cv-5797 (S.D.N.Y.)...........................................................................................2

*In re Amkor Tech., Inc. Sec. Litig.*,
No. 07-cv-278 (D. Ariz.)...............................................................................................2

## FEDERAL STATUTES

15 U.S.C. § 78u-4(a)(3) *et seq.* ............................................................................. *passim*

On July 8, 2011, Alberta Investment Management Corp. ("AIMCo") and State-Boston

Retirement System ("Boston") moved, pursuant to Section 21D(a)(3) of the Securities Exchange

Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3), as amended by the Private Securities

Litigation Reform Act of 1995 (the "PSLRA"), respectfully requesting an order:

(1) consolidating the above-captioned, related actions (collectively, the "Action"); (2) appointing

AIMCo/Boston as Lead Plaintiff of a class of purchasers of Community Health Systems, Inc.

("CHS") common stock between July 27, 2006 and April 11, 2011, inclusive (the "Class

Period"); and (3) approving AIMCo/Boston's selection of Labaton Sucharow LLP ("Labaton

Sucharow") as Lead Counsel for the Class and Branstetter, Stranch & Jennings, PLLC

("Branstetter Stranch") as Liaison Counsel for the Class.

This is AIMCo/Boston's opposition brief to the competing lead plaintiff/lead counsel

motion filed by: the New York City Employees' Retirement System ("NYCERS"); the Teachers

Retirement System of the City of New York ("TRS"); the New York City Teachers' Variable

Annuity Program ("TRS-VA"); the New York City Police Pension Fund ("Police"); and the New

York City Fire Department Pension Fund ("Fire") (collectively, the "NYC Funds").[1]

## INTRODUCTION

In enacting the PSLRA, Congress charged lead plaintiffs in securities fraud class actions

with the fiduciary responsibility of representing absent plaintiffs in class action litigation brought

under the federal securities laws.[2]  Courts serve a gate-keeping role in carrying out the PSLRA's

goal of ensuring only the best qualified movant for lead plaintiff be selected.  Here,

---

[1]  On July 21, 2011, the General Retirement System of the City of Detroit ("Detroit") filed a
Notice of Non-Opposition (Dkt. #43), stating that "Detroit recognizes that its losses are less than
those claimed by the competing movants."

[2]  *In re Cendant Corp. Sec. Litig.*, 404 F.3d 173, 198 (3d Cir. 2005).

AIMCo/Boston is the movant "most capable of adequately representing the interests of class members" and should be appointed lead plaintiff.[3] 15 U.S.C. § 78u-4(a)(3)(B)(i).

Under the PSLRA, the critical issue that drives the Court's selection of lead plaintiff is a determination of which movant has the largest financial interest in this litigation. Here, the factor usually used by courts to decide this issue—largest trading losses—results in a draw. The NYC Funds' claimed lead in losses is the result of their improper inclusion of trading by one fund, Fire, that in fact *benefited* from CHS' fraud in the amount of nearly half a million dollars. When Fire's losses are excluded, the raw trading losses of AIMCo/Boston and the NYC Funds are virtually identical.

Fortunately, it is easy for the Court to break the tie in this case, because AIMCO/Boston is the decisive leader with respect to "net shares purchased," a factor that many courts have found to be the most important criterion for determining largest financial interest. AIMCo/Boston purchased nearly 48,000 more shares on a net basis during the Class Period than did the NYC Funds. Moreover, AIMCo/Boston spent nearly $2 million dollars more than the NYC Funds in purchasing artificially-inflated shares during the Class Period.

In light of its strong financial interest, and its lack of any infirmities under Rule 23, AIMCo/Boston is the "most adequate plaintiff" in the Action, and should be appointed Lead Plaintiff.

---

[3] As with the members of the NYC Funds, both of the constituent members of AIMCo/Boston are well-known advocates for shareholder rights. AIMCo's recent efforts, as part of a shareholder consortium, to press a prominent Dutch mail and shipping company into splitting off a portion of its assets in the interest of shareholder value were widely reported in the international press. *See* Joint Decl. of Carole Hunt & Daniel J. Greene ("Joint Declaration" or "Jt. Decl.") at ¶6 (Dkt. #34). Boston has obtained settlements and settlements in principle of nearly $165 million on behalf of injured investors. *Id.*; *see also Police & Fire Ret. Sys. of the City of Detroit v. Safenet, Inc.*, No. 06-cv-5797 (S.D.N.Y.) (settled for $25 million), and *In re Amkor Tech., Inc. Sec. Litig.*, No. 07-cv-278 (D. Ariz.) (settled for more than $11 million).

## ARGUMENT

Based on the analysis outlined in the PSLRA, AIMCO/Boston is the presumptive lead plaintiff in the Action. In the first step of the procedure outlined in the statute, the Court is charged with identifying the "person" or "***group of persons***" with the "largest financial interest" in the class' claims. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I) (emphasis added). In the second step, the Court determines whether ***that*** movant also meets the typicality and adequacy requirements of Rule 23. Here, AIMCo/Boston has the largest financial interest of any movant, and easily satisfies the adequacy and typicality requirements of Rule 23.

## I.    AIMCo/Boston Has the Largest Financial Interest in the Action

In the Sixth Circuit, there are at four factors that courts have considered in identifying which lead plaintiff movant has the largest financial interest in an action. These factors, the so-called "*Lax* factors," include: (1) the amount of loss suffered by the movant; (2) the number of net shares purchased by the movant during the class period; (3) the total net funds expended by the movant during the class period; and (4) the total number of shares purchased in the class period. *Burgraff v. Green Bankshares, Inc.* ("*Green Bankshares*"), No. 10-cv-253-CLC, 2011 WL 613281, at *2 (E.D. Tenn. Feb. 11, 2011); *see also Lax v. First Merchants Acceptance Corp.*, No. 97-cv-2715, 1997 WL 461036, at *5 (N.D. Ill. Aug. 11, 1997)); *In re Cardinal Health, Inc. Sec. Litig.*, 226 F.R.D. 298, 303 (S.D. Ohio 2005) (same).

However, the application of these four *Lax* factors, and how much weight to be accorded each factor, is within the sound discretion of the Court. Underscoring this point, this Court has pointed out that "[t]he PSLRA provides no definitive method for determining the largest financial interest." *Garden City Employees' Ret. Sys. v. Psychiatric Solutions, Inc.,* No. 09-cv-882-WJH, 2010 WL 1790763, at *3 (M.D. Tenn. Apr. 30, 2010) (quotations omitted). Instead,

the Court in its discretion should determine the best method to be used. *Green Bankshares*, 2011
WL 613281, at *2.

As demonstrated below, application of the four-factor test leads to a finding that
AIMCo/Boston has a larger financial interest than the NYC Funds. While AIMCo/Boston
readily acknowledges that losses are usually outcome-determinative when the difference in
losses is compelling, here the difference between losses, when calculated properly, is *de minimus*.
However, the application of the two most important remaining *Lax* factors, net shares purchased
and total net expenditures, puts AIMCo/Boston clearly on top.[4]

| Movant Name | Net Shares Purchased | Total Net Expenditures | Losses | Total Shares |
|---|---|---|---|---|
| AIMCo/Boston | 453,820 | ($16,855,486) | ($4,098,606) | 479,170 |
| NYC Funds | 406,217 | ($14,937,662) | ($4,118,988) | 722,019 |

A.     <u>AIMCo/Boston's Losses Are Commensurate with Those of the NYC Funds</u>

Using the method of loss calculation preferred by all courts, and after subtracting the
reported losses of Fire, the member of the NYC Funds that actually enjoyed **net gains** from the
alleged fraud, the competition between the losses of AIMCo/Boston and those of the NYC Funds
is essentially a draw.[5]

---

[4] Total shares purchased is the least significant *Lax* factor because it fails to directly correspond
to a movant's actual investment on a net basis in a company's stock. *See, e.g., Boyd v. NovaStar
Fin., Inc.*, No. 07-cv-0139, 2007 WL 2026130, at *3 (W.D. Mo. July 9, 2007) ("[T]he number of
shares purchased during the class period is less relevant than the *net* number of shares purchased
during the class period, as the latter figure will represent the number of shares purchased after
the fraud and held when the fraud was revealed.").

[5] Furthermore, of all of the candidates seeking appointment as lead plaintiff, AIMCo suffered
the largest individual loss, irrespective of the loss methodology used or *Lax* factor considered.
Courts are loath to appoint groups of movants as lead plaintiff when doing so would mean that
the individual movant with the largest financial interest would not serve as lead plaintiff. *See
Goldberger v. PXRE Group, Ltd.*, No. 06-cv-3410, 2007 WL 980417, at *5 (S.D.N.Y. Mar. 30,
*(continued . . . )*

### 1.     <u>LIFO is the Preferred Measure of Losses</u>

The NYC Funds offer no fewer than four different ways of calculating their trading losses. However, it is the widely-used, last-in-first-out ("LIFO") loss calculation methodology that the Court should rely upon here. *Makor Issues & Rights, Ltd. v. Tellabs, Inc.*, 256 F.R.D. 586, 599 (N.D. Ill. 2009) (surveying cases, and holding that "[n]umerous courts that have held that LIFO analysis is the appropriate method for determining loss due to securities fraud"); *see also City of Monroe Employees' Ret. Sys. v. Hartford Fin. Servs. Group, Inc.*, 269 F.R.D. 291, 296 (S.D.N.Y. 2010) ("consistent with the majority of courts in this district, we find that LIFO is the most accurate measure of actual losses suffered by stockholders in that it takes into account any gains accrued from sales during the class period").[6]

### 2.     The Court Should Not Consider the<br>    <u>Trading of Funds that Gained from CHS' Fraud</u>

Even when employing this LIFO methodology, however, the loss estimate proffered by the NYC Funds is incorrect. This is because the NYC Funds improperly include in their calculations the trading losses of Fire, a fund whose sales of fraud-inflated shares actually resulted in a net profit of nearly half a million dollars.

The PSLRA expressly recognizes that where "unique defenses" exist, a movant may not meet the adequacy or typicality requirements of Rule 23 and should be rejected as a lead plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(bb) (explaining that lead plaintiff presumption can be rebutted by "unique defenses that render such plaintiff incapable of adequately representing the class"). In light of these concerns, courts decline to consider losses from applicants for lead

---

2007) (declining to appoint a group of seven investors with the largest financial interest in the aggregate because doing so would displace the individual movant with a larger financial interest than any of the members of the movant group).

[6] Indeed, FIFO has been criticized by courts in the Sixth Circuit for its tendency to overstate damages. *See Johnson v. Dana Corp.*, 236 F.R.D. 349, 353 (N.D. Ohio 2006).

plaintiff who sold more shares than they purchased during the class period ("net sellers") and who also profited from sales of inflated stock during the class period ("net gainers"). *See In re Comdisco Sec. Litig.*, 150 F. Supp. 2d 943, 946 (N.D. Ill. 2001) (observing that net seller is "totally out of the running for designation as lead plaintiff").

Net sellers and gainers are not suitable lead plaintiffs because they are subject to the unique defenses that they cannot prove damages and may have profited from a company's fraud. *See, e.g.*, *Cardinal Health*, 226 F.R.D. at 308 (dismissing "net gainers" from a lead plaintiff group because "proving damages and typicality will be the bête noir[e] of these two entities"); *Frank v. Dana Corp.*, 237 F.R.D. 171, 172 (N.D. Ohio 2006) ("Because parties which are net sellers and net gainers, with respect to the relevant securities transactions during the class period, may have more trouble proving damages at trial, courts frequently reject their applications to serve as lead plaintiffs."); *In re McKesson HBOC, Inc. Sec. Litig.*, 97 F. Supp. 2d 993, 997 (N.D. Cal. 1999) ("a net seller has arguably *profited* more from the fraud than it has been injured, possibly reducing its incentive to litigate").

Here, NYC Funds-member Fire is both a net seller and a net gainer, making it an unsuitable representative for a class of investors injured by their purchases of fraud-inflated stock. Accordingly, Fire's losses should be excluded in determining the NYC Funds' losses. *See, e.g.*, *Cardinal Health*, 226 F.R.D. at 308 (disaggregating net gainers from movant group because they were subject to a unique defense that they were not damaged by the alleged fraud).[7]

---

[7]  The mere potential that Defendants will launch such an attack in this case is a sufficiently compelling reason to deny the NYC Funds' motion. *Newman v. Eagle Bldg. Techs.*, 209 F.R.D. 499, 504 (S.D. Fla. 2002) (noting that the threat that a potential attack "might imperil certification of a class in this case" is enough to warrant denial of its motion for appointment as lead plaintiff).

### 3. The Court Should Not Rely Upon the NYC Funds' "*Dura*" Loss Calculations

The Court should reject the NYC Funds' proffer of alternative loss numbers purportedly derived from a method rooted in loss causation jurisprudence. In *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, 343 (2005), the Supreme Court held that, under the federal securities laws, plaintiffs must plead that the alleged fraud was the proximate cause of their losses. Because district courts must select lead plaintiffs at a very early stage of litigation—before fact discovery and before the plaintiff has had an opportunity to fully develop its theory of the case— courts have concluded that total losses are the appropriate consideration with respect to determining largest financial interest, based principally on the notion that trading losses themselves are at best a rough estimate of an actual financial interest in the outcome of the litigation because losses and damages are two entirely distinct calculations. *In re Watchguard Sec. Litig.*, No. 05-cv-678, 2005 U.S. Dist. LEXIS 40923, at *15 n.6 (W.D. Wash. July 13, 2005) ("The Supreme Court did not suggest that a court should guess about the effect of . . . as-yet- unknown factors [that may affect the price of a security] in selecting a lead plaintiff, nor did it consider the issue.").

Even if the Court were to use the NYC Funds' *Dura* LIFO loss calculation, the NYC Funds' losses would be greater than AIMCo/Boston's losses by $178,266, or 4.1 percent. Because this difference is so slight, the Court should not hinge such an important determination as largest financial interest on this factor alone.

### 4. Appropriate Calculation of Losses

As reflected in the chart below, without Fire, the NYC Funds' LIFO loss is $4,118,988— only $20,382, or barely one-half of one percent more than AIMCo/Boston's losses.



Even with the inclusion of Fire, however, AIMCo/Boston's LIFO losses are only 1.6 percent smaller than those of the NYC Funds. Under either scenario, AIMCo/Boston's losses should be treated as comparable to those of the NYC Funds. *See, e.g.*, *In re Elan Corp. Sec. Litig.*, No. 08-cv-9179, 2009 WL 1321167, at *1 (S.D.N.Y. May 11, 2009) (finding losses that differed by 0.5 percent as "basically equal"); *In re Pfizer, Inc. Sec. Litig.*, 233 F.R.D. 334, 338 (S.D.N.Y. 2005) (finding that a movant with $22.4 million in alleged losses and another $22.8 million in alleged losses had "roughly equal damages," "[g]iven the probable margin of error involved in the damage estimates").

Both the NYC Funds and AIMCo/Boston are appropriate lead plaintiff groups under the PSLRA, which expressly allows for the appointment of the person or "group of person" to serve as lead plaintiff. Accordingly, it is appropriate for the Court to aggregate the losses of AIMCo and Boston. As courts in this district have recognized, the aggregation of the losses of the members of a group, and the appointment of a group of class members as lead plaintiff, is appropriate under the PSLRA. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I); *see, e.g.*, *In re Regions*

*Morgan Keegan Closed-End Fund Litig.*, No. 07-cv-2830-SHM, 2010 WL 5173851, at *13

(W.D. Tenn. Dec. 15, 2010) (approving appointment of lead plaintiff group). Most courts allow

small groups of investors to act together as lead plaintiff even if they did not have a pre-existing

relationship. *Bang v. Acura Pharms., Inc*., No. 10-cv-5757, 2011 WL 91099, at *2 (N.D. Ill. Jan.

11, 2011) (noting that the trend "seems to be away from a blanket prohibition against 'lead

plaintiff groups' with no pre-existing relationship") (citing *Sabbagh v. Cell Therapeutics, Inc.*,

No. 10-cv-414, 2010 WL 3064427, at *4-5 (W.D. Wash. Aug. 2, 2010)). Courts have observed

that the PSLRA "contains no requirement mandating that the members of a proper group be

'related' in some manner; it requires only that any such group 'fairly and adequately protect the

interests of the class'" and that cohesiveness—whether a group will fairly and adequately protect

the interests of the class—is the appropriate test. *Eastwood Enterprises, LLC v. Farha*, No. 07-

cv-1940, 2008 WL 687351, at *2 (M.D. Fla. Mar. 11, 2008) (quotation omitted).

Furthermore, in addition to satisfying the adequacy and typicality requirements of Rule

23, AIMCo and Boston have demonstrated that they are a cohesive unit that will fairly and

adequately represent the Class under the standard articulated by the Third Circuit in *In re

Cendant Corp. Securities Litigation*, 264 F.3d 201, 266 (3d Cir. 2001). The Joint Declaration

submitted by AIMCo/Boston on July 8, 2011 amply demonstrates that AIMCo and Boston, not

their counsel, made the informed decision to make a joint motion, and that both funds are

sophisticated and prepared to work together to prosecute the Action. *See* Jt. Decl. ¶ 4; *see also

Klugmann v. Am. Capital Ltd.*, No. 09-cv-05, 2009 WL 2499521, at *5 (D. Md. Aug. 13, 2009)

("[E]ach member of [the group] has submitted a detailed declaration attesting that he believes

that the [group] members can act as a cohesive group. The declarations explain the members'

prior communications and lay out the methods by which they intend to communicate with each

other regarding the litigation."); *In re Spectranetics Corp. Sec. Litig.*, No. 08-cv-2048, 2009 WL 1663953, at *6 (D. Colo. June 15, 2009) (appointing group of investors as lead plaintiff because "the certifications and declarations submitted by the members of the [group] demonstrate that the members of the [group] can and will work together to oversee the litigation, and to monitor the work of counsel"); *Cardinal Health*, 226 F.R.D. at 307-08 (finding a group of institutional investors to be a permissible aggregation because it was composed of a small group of sophisticated investors, had proposed a manner of communication and decision-making, and had selected counsel that would "represent deftly the class's interests"). AIMCo and Boston have spoken on a conference call and plan to communicate regularly in the future (Jt. Decl. ¶¶ 8, 11), understand their duties as class representatives (*Id.* ¶¶ 8-9, 11-12), and have established mechanisms for decision-making and supervision of counsel (*Id.* ¶¶ 8-9, 11). AIMCo and Boston have also each designated internal personnel to represent them. *See In re Bank of Am. Corp. Sec., Deriv. & ERISA Litig.*, 258 F.R.D. 260, 270 (S.D.N.Y. 2009) (describing adequacy of group's declaration). Thus, AIMCo/Boston makes a strong showing that it will act collectively and separately from its counsel.

      **B.**    **The Court Should Appoint AIMCo/Boston as Lead
               Plaintiff Because AIMCo/Boston Purchased the Most Net Shares**

Given the minimal difference between the losses of the lead plaintiff movants, the Court should rely on the key consideration of the second *Lax* factor, net shares purchased, to select the optimal lead plaintiff. On this point, AIMCo/Boston is the prevailing movant.

A movant's net shares is determined by "subtract[ing] the number of shares sold by a candidate from those purchased during the class period." *In re Network Assocs., Inc. Sec. Litig.*, 76 F. Supp. 2d 1017, 1027 (N.D. Cal. 1999). In fact, many courts consider net shares to be the key determinant of financial interest, ***even more so than trading losses***. *See In re Critical Path,*

*Inc. Sec. Litig.*, 156 F. Supp. 2d 1102, 1107-08 (N.D. Cal. 2001) (holding that an evaluation of the number of net shares purchased is the "most straightforward method for approximation of financial interest in the recovery sought," and that, under this approach, "the number of net shares purchased during the class period is determinative" of which party has the "largest financial interest"); *see also Cardinal Health,* 226 F.R.D. at 311 (noting that "[a] small amount of net shares is typically not favored when choosing a plaintiff under the four factor method").

Courts focus upon movants' net shares purchased because class period sales can cause a movant to "derive unwitting benefits rather than true losses from the alleged securities fraud . . . ." *Comdisco*, 150 F. Supp. 2d at 945. By this measure, AIMCo/Boston is *by a wide margin* the movant with the largest financial interest in this litigation.



### C. The Court Should Appoint AIMCo/Boston as Lead Plaintiff Because Its Net Expenditures Exceed Those of the NYC Funds

The fact that AIMCo/Boston's net expenditures purchasing CHS stock exceed those of the NYC Funds weighs strongly in favor of AIMCo/Boston's selection as lead plaintiff in this action. Courts often rely on net expenditures—that is, the total amount spent purchasing stock

during the class period less the total amount gained from the sale of stock during the class period—in selecting lead plaintiffs. *See, e.g.*, *Kuriakose v. Fed. Home Loan Mortgage Co.*, No. 08-cv-7281, 2008 WL 4974839, at *3 (S.D.N.Y. Nov. 24, 2008) (considering net expenditures as one factor demonstrating largest financial interest); *Teamsters Local 617 Pension & Welfare Funds v. Apollo Group, Inc.*, No. 06-cv-2674, 2007 WL 2692217, at *5 (D. Ariz. Sept. 11, 2007) (comparing net expenditures of movants); *In re Mills Corp. Sec. Litig.*, No. 06-cv-77, 2006 WL 2035391, at *3 n.1 (E.D. Va. May 30, 2006) (same).

Whether or not Fire's transactions are included, AIMCo/Boston is decisively in the lead on this measure. The chart below reflects the 12.8 percent difference between the $14.9 million of net expenditures by the NYC Funds without Fire and the more than $16.8 million of net expenditures by AIMCo/Boston.



With more than $16.8 million in net expenditures, AIMCo/Boston spent on a net basis $1.9 million more that the NYC Funds purchasing CHS stock during the Class Period. If Fire's trades are included in the NYC Funds' net expenditures—reducing their net expenditures to $14.4

million—AIMCo/Boston spent $2.4 million than the NYC Funds purchasing CHS stock during the Class Period.

Given AIMCo/Boston's significant investment on a net basis in CHS stock—***an investment that is larger than that of any other movant***—it has a heightened motive to pursue recovery of the losses it sustained on its purchases of CHS stock during the Class Period.

## II.      AIMCO/BOSTON SATISFIES RULE 23

As explained in its opening brief, AIMCo/Boston easily satisfies the requirements of Rule 23.  In contrast to the NYC Funds, a member of which, as explained *supra* at 4-7, is subject to unique defenses with respect to reliance and damages, AIMCo/Boston satisfies the typicality requirement because it seeks the same relief and advances the same legal theories as other Class members.  AIMCo/Boston is not subject to any unique or special defenses.  Like all members of the Class, AIMCo/Boston: (1) purchased or acquired CHS common stock during the Class Period; (2) at prices artificially inflated by Defendants' misrepresentations and omissions; and (3) suffered damages as a result.  *See Ohio Pub. Employees' Ret. Sys v. Fannie Mae*, 357 F. Supp. 2d 1027, 1034-35 (S.D. Ohio 2005) (discussing the typicality requirement).  These shared claims, which are based on the same legal theory and arise from the same events and course of conduct as the Class' claims, satisfy Rule 23(a)(3)'s typicality requirement.

AIMCo/Boston will fairly and adequately represent the interests of the proposed Class. No antagonism exists between AIMCo/Boston's interests and those of the absent Class members; rather, the interests of AIMCo/Boston and Class members are squarely aligned.  In addition, AIMCo/Boston has retained counsel highly-experienced in vigorously and efficiently prosecuting securities class actions, and has timely submitted its choice to the Court for approval in accordance with the PSLRA.  *See* 15 U.S.C. §§ 78u-4(a)(3)(A)(i)(II) and (B)(v).

AIMCo/Boston suffered substantial losses due to Defendants' alleged fraud and, therefore, has a sufficient interest in the outcome of this case to ensure vigorous prosecution of the Action. Accordingly, AIMCo/Boston satisfies the adequacy requirement.

Accordingly, AIMCo/Boston should be appointed Lead Plaintiff in the Action.

## III.  ALL OTHER MOTIONS SHOULD BE DENIED

The only remaining movants, the NYC Funds, do not possess the largest financial interest, *see supra* at 3-12, and they cannot offer proof to rebut the presumption garnered by AIMCo/Boston. Accordingly, the NYC Funds' motion should be denied. *See In re Cavanaugh*, 306 F.3d 726, 732 (9th Cir. 2002) ("[s]o long as the plaintiff with the largest losses satisfies the typicality and adequacy requirements, he is entitled to lead plaintiff status"); *Sofran v. LaBranche & Co.*, 220 F.R.D. 398, 403 (S.D.N.Y. 2004) (denying motions of other movants when presumptive lead plaintiff satisfied adequacy and typicality requirements of Rule 23 and other movants provided no proof to rebut presumption).

## IV.  AIMCO/BOSTON'S CHOICE OF LABATON SUCHAROW
## & BRANSTETTER STRANCH SHOULD BE APPROVED

Although courts have discretion regarding the appointment of lead counsel, *In re Cendant Corp. Sec. Litig.*, 182 F.R.D. 144, 150 (D.N.J. 1998), "[c]ourts typically do not disturb a lead plaintiff's choice of counsel unless doing so is necessary to protect the interests of the class." *Cardinal Health*, 226 F.R.D. at 305. AIMCo/Boston demonstrated in its opening memorandum that its choice of counsel, Labaton Sucharow, has the experience and resources to litigate this Action. *See* Mem. of Law in Supp. of Mot. of AIMCo/Boston ("Opening Mem.") (Dkt. #30) at 11-12, 14-15. For example, as lead counsel in *Eastwood Enterprises*, which involved WellCare Health Plans, Inc.'s systematic overcharging of state Medicaid programs, co-lead counsel Labaton Sucharow achieved a settlement of $200 million in 2010. Labaton Sucharow has also

initiated an extensive investigation into CHS and its policies. Courts place great weight on the investigative work conducted by lead plaintiff movants' choice of counsel. *See, e.g.*, *Mills*, 2006 WL 2035391, at *3 (citing lead counsel's efforts to identify and investigate potential claims in the action).

Branstetter Stranch is equally distinguished. The firm has prosecuted numerous cases in the federal courts of Tennessee, as well as nationwide, and serves as counsel for plaintiffs in class actions and complex litigation, including securities, derivative, and ERISA cases. Branstetter Stranch is currently acting as liaison counsel to Labaton Sucharow in *Regions Morgan Keegan*.

**CONCLUSION**

For the foregoing reasons, AIMCo/Boston respectfully requests that the Court: (1) consolidate the above-captioned, related cases; (2) appoint AIMCo/Boston as Lead Plaintiff; and (3) approve AIMCo/Boston's selection of Labaton Sucharow as Lead Counsel and Branstetter Stranch as Liaison Counsel.

Dated: July 25, 2011

Respectfully submitted,

 /s/ J. Gerard Stranch, IV

J. Gerard Stranch, IV, BPR# 023045
James G. Stranch
**BRANSTETTER, STRANCH &
  JENNINGS, PLLC**
227 Second Avenue North
Nashville, Tennessee  37201
Telephone: (615) 254-8801
Facsimile: (615) 250-3937
Email: gstranch@branstetterlaw.com

*Proposed Liaison Counsel for the Class*

Christopher J. Keller
Joseph A. Fonti
Michael W. Stocker
**LABATON SUCHAROW LLP**
140 Broadway
New York, New York 10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477
Emails: ckeller@labaton.com
      jfonti@labaton.com
      mstocker@labaton.com

*Counsel for AIMCo/Boston and*
*Proposed Lead Counsel for the Class*

## CERTIFICATE OF SERVICE

I hereby certify that on July 25, 2011, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following CM/ECF participants:

- **Barbara J. Hart**
  bhart@lowey.com

- **Christopher J. Keller**
  ckeller@labaton.com, ejo@labaton.com

- **David Harrison**
  dharrison@lowey.com

- **David S. Hagy**
  dhagy@hagylaw.com

- **Evan Jude Saucier**
  evan.saucier@kirkland.com

- **James Gerard Stranch, IV**
  gstranch@branstetterlaw.com,
  cbatey@branstetterlaw.com,
  jstranch@branstetterlaw.com,
  lcasey@branstetterlaw.com,
  sbryant@branstetterlaw.com

- **James Maxwell Cooper**
  max.cooper@kirkland.com

- **Joel A. Blanchet**
  joel.blanchet@kirkland.com

- **Kyle A. Young**
  kyoung@millermartin.com

- **John R. Jacobson**
  jjacobson@rwjplc.com,
  mkillen@rwjplc.com,
  twhite@rwjplc.com

- **Michael W. Stocker**
  mstocker@labaton.com

- **Peter Duffy Doyle**
  peter.doyle@kirkland.com

- **Rachel A. Avan**
  ravan@labaton.com

- **T. Harold Pinkley**
  hpinkley@millermartin.com,
  mferrell@millermartin.com

- **Thomas Skelton**
  tskelton@lowey.com


 */s/ J. Gerard Stranch, IV*

J. Gerard Stranch, IV, BPR# 023045
**BRANSTETTER, STRANCH &
    JENNINGS, PLLC**
227 Second Avenue North
Nashville, Tennessee  37201
Telephone: (615) 254-8801
Facsimile: (615) 250-3937
Email: gstranch@branstetterlaw.com