UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSE
NASHVILLE DIVISION

| | |
|---|---|
| NORFOLK COUNTY RETIREMENT SYSTEM, individually and on behalf of all others similarly situated, | CONSOLIDATED CIVIL ACTION NO.: 11-cv-0433 |
| *Plaintiff,* | JUDGE JOHN T. NIXON MAG. JUDGE JOE B. BROWN |
| v. | |
| COMMUNITY HEALTH SYSTEMS, INC., WAYNE T. SMITH and W. LARRY CASH, | JURY TRIAL DEMANDED |
| *Defendants.* | |

# MEMORANDUM OF LAW
## IN SUPPORT OF LEAD PLAINTIFF'S MOTION
### TO LIFT THE PSLRA DISCOVERY STAY

**LOWEY DANNENBERG COHEN
& HART, P.C.**
Barbara J. Hart (admitted *pro hac vice*)
David C. Harrison (admitted *pro hac vice*)
Scott V. Papp (admitted *pro hac vice*)
One North Broadway, Suite 509
White Plains, NY 10601
Tel.:   (914) 997-0500
Fax:   (914) 997-0035

**PROVOST UMPHREY, LLP**

W. Michael Hamilton
TN Bar No. 10720
4205 Hillsboro Pike
Suite 303
Nashville, Tennessee 37215
Tel.:   (615) 297-1932
Fax:   (615) 297-1986

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................... ii

I.      INTRODUCTION ....................................................................................... 1

II.     FACTUAL BACKGROUND ......................................................................... 3

        A.  The DOJ Investigation and Settlements .................................................. 5

        B.  The Progress of the Derivative Action ................................................... 5

III.    ARGUMENT ............................................................................................. 7

        A.  The PSLRA Stay Is Not Intended To Block Legitimate Discovery Where
            Viable Claims Are Apparent ................................................................. 7

        B.  The PLSRA's Stay of Discovery Should Be Lifted In Order To Prevent
            Undue Prejudice and to Preserve Evidence ........................................... 10

            1.  Lead Plaintiff Will Suffer Undue Prejudice If The PSLRA Stay
                Is Not Lifted .............................................................................. 11

            2.  Lifting the Discovery Stay is Necessary To Preserve Evidence ........... 13

IV.     CONCLUSION ......................................................................................... 15

# TABLE OF AUTHORITIES

## Cases

*Anderson v. First Sec. Corp.*,
    157 F. Supp. 2d 1230 (D. Utah 2001) ............................................................ 10

*In re Bank of America Corp. Sec., Derv., & ERISA Litig.*,
    No. 09-mdl-2058, 2009 U.S. Dist. LEXIS 108322 (S.D.N.Y. Nov. 16, 2009) ...... 9, 11, 12

*In re Delphi Corp. Sec., Derivative & "ERISA" Litig.*,
    No. 05-md-1725, 2007 U.S. Dist. LEXIS 10408 (E.D. Mich. Feb. 15, 2007) ................. 8

*In re FirstEnergy Corp. Secs. Litig.*,
    229 F.R.D. 541 (N.D. Ohio 2004) ............................................................... 9

*In re Grand Casinos Secs. Litig.*,
    988 F. Supp. 1270 (D. Minn. 1997) .............................................................. 10

*In re LaBranche Sec. Litig.*,
    333 F. Supp. 2d 178 (S.D.N.Y. 2004) ................................................... 8, 9, 10, 11

*In re Lernout & Hauspie Secs. Litig.*,
    214 F. Supp. 2d 100 (D. Mass. 2002) .......................................................... 8

*In re Massey Energy Co. Secs. Litig.*,
    No. 5:10-0689, 2011 U.S. Dist. LEXIS 111175
    (S.D. W. Va. Sept. 28, 2011) ............................................................ 9, 10, 14, 15

*In re Royal Ahold N.V. Sec. & ERISA Litig.*,
    220 F.R.D. 246 (D. Md. 2004) ................................................................. 14, 15

*In re Silicon Graphics Sec. Litig.*,
    970 F. Supp. 746 (N.D. Cal. 1997) ............................................................. 10

*In re Worldcom Sec. Litig.*,
    234 F. Supp. 2d 301 (S.D.N.Y. 2002) ...................................................... 8, 9, 10

*Pension Trust Fund for Operating Eng'r v. Assisted Living Concepts, Inc.*,
    943 F. Supp. 2d 913 (E.D. Wis. 2013) .......................................................... 10

*Seippel v. Sidley, Austin, Brown & Wood L.L.P.*,
    No. 03 Civ. 6942 (SAS), 2005 U.S. Dist. LEXIS 2388 (S.D.N.Y. Feb. 17, 2005) ..... 9, 10

*Tooley v. Donaldson, Lufkin, & Jenrette, Inc.*,
    845 A.2d 1031 (Del. 2004) ..................................................................... 12

*Vacold L.L.C. v. Cerami,*
    No. 00 Civ. 4024 (AGS), 2001 U.S. Dist. LEXIS 1589 (S.D.N.Y. Feb. 16, 2001) .......... 8

*Waldman v. Wachovia Corp.,*
    No. 08-2913(SAS), 2009 U.S. Dist. LEXIS 1988 (S.D.N.Y. Jan. 12, 2009) ......... 9, 10, 11

## **Statutes**

Private Securities Litigation Reform Act of 1995,
    15 U.S.C. § 78u-4(b)(3)(B) (2006) ............................................................... 1, 10

H.R. Conf. Rep. No. 104-369 (1995), reprinted in 1995 U.S.C.C.A.N. 730................................ 7

S. Rep. No. 104-98 (1995), reprinted in 1995 U.S.C.C.A.N. 679 .................................... 8

## **Other**

Som P. Dala and Howard S. Suskin, *Staying Shareholder Derivative Suits*
*In Favor Of Related Securities Class Actions*, AMERICAN BAR ASSOCIATION,
SECTION OF LITIGATION 1 (Dec. 6, 2012)............................................................12

# I.   INTRODUCTION

Lead Plaintiff, the New York City Employee Retirement System, the Teachers' Retirement System of the City of New York, the New York City Teachers' Variable Annuity Program, the New York City Police Pension Fund, and the New York City Fire Department Pension Fund (collectively, the "Funds" or "Lead Plaintiff") hereby moves this Court for an order lifting the automatic stay of discovery imposed by the Private Securities Litigation Reform Act of 1995 (the "PSLRA Stay") in this class action during the pendency of Defendant Community Health Systems, Inc.'s ("CHS") motion to dismiss.  15 U.S.C. 78u-4(b)(3)(B).

Lead Plaintiff seeks relief from the PSLRA Stay because in light of rulings and settlements in related matters that reinforce the merits of the class claims here, Congress' rationale in enacting the statutory stay provision, *i.e.*, to prevent frivolous cases from proceeding with discovery, is resoundingly not implicated here.  The landmark Department of Justice ("DOJ") settlements and decisions in the parallel derivative proceeding make clear that Lead Plaintiff's claims are very far from frivolous.

Beginning in 2009, multiple *qui tam* actions were filed under seal against CHS that it was fraudulently admitting patients to overbill the government.  On April 11, 2011, the Tenet Corporation ("Tenet") publicly claimed fraud at CHS was pervasive and ongoing, and subsequently the DOJ entered into a $98 million *qui tam* settlement with CHS, one of the largest of such settlements in U.S. history, and an additional $75 million settlement with CHS related to fraudulent Medicaid reimbursement.

This case and the parallel derivative proceeding in *Plumbers and Pipefitters Local Union No. 630 Pension-Annuity Trust Fund et al. v. Smith et al.*, No. 11-cv-00489 (M.D. Tenn.) (the "Derivative Action") were filed in the wake of and echoed many of the same allegations made by

Tenet.  On September 27, 2013, this Court denied, in part, CHS' motion to dismiss the complaint in the Derivative Action and recently re-affirmed that decision when it denied CHS' motion for reconsideration.  One of the Court's key findings, for purposes of pleading the required mental state in this securities fraud case, was that the derivative Plaintiffs adequately pled CHS was aware that obtaining significant increases in admissions rates could not have been done without using improper means.

Relief from the PSLRA Stay will foster efficiencies in the discovery process between this action and the Derivative Action, where this Court entered a Case Management Order setting forth pre and post mediation deadlines for documents and depositions.  The discovery that will be sought and produced in both of these actions will substantially overlap.  The same documents and witnesses will be examined.  And the same Magistrate Judge is assigned to oversee this process in both actions.  This should pose no burden on CHS as it has already produced many relevant documents to the DOJ.  Having this action and the Derivative Action veer off on separate discovery tracks will necessarily lead to substantial and avoidable duplication.  This serves neither the parties interests, nor the Court's.

Lead Plaintiff submits that lifting the PSLRA Stay is necessary to alleviate further undue prejudice and to preserve evidence.  Courts have the discretion to modify the PSLRA Stay where, as here, it imposes an unnecessary freeze on meritorious litigation and prejudices Lead Plaintiff's ability to prosecute this action, even while the parallel investigations and related derivative actions have settled or are progressing with discovery and mediation.  Derivative actions are usually viewed as corollary proceedings resolved to address harm to the Corporation, but are of no value to remedy the direct damages incurred by shareholders.  In addition, given the nearly three and half years since this action was commenced, including the nearly two years that

CHS' motion to dismiss has remained *sub judice*, Lead Plaintiff believes that probative evidence of CHS' wrongdoing will no longer be available as employees become former employees and memories fade. Notably, Gary Newsome, a former CHS Division Director, resigned from Health Management Associates, Inc. and left the country. In addition, Carolyn Lipp (a senior CHS executive in charge of the rollout of the Blue Book) retired. Further, key non-parties may no longer have relationships with CHS. Company-wide e-mail systems and storage could also be changing over the course of time.

Lead Plaintiff respectfully requests the Court to lift the PSLRA Stay because allowing discovery to proceed on these non-frivolous claims, at the same time discovery proceeds in the Derivative Action, will promote greater efficiency, alleviate undue prejudice and preserve probative evidence. The viability of Lead Plaintiff's claims is even more manifest now that the Court has denied CHS' motion for reconsideration in the Derivative Action.

## II. FACTUAL BACKGROUND

Formal allegations of fraudulent admission and billing practices at CHS initially began in 2009 when the first of seven *qui tam* actions were filed against CHS. *See* Declaration of Scott V. Papp (Papp Decl."), ¶2. While those cases remained under seal, Tenet publicly alleged on April 11, 2011 that CHS was fraudulently billing Medicare on a massive scale. *Id.*, ¶3; *see also* Cmp., ¶3.[1] In the wake of that disclosure, this action was filed on May 9, 2011 on behalf of all CHS shareholders seeking to recover the resulting $1.2 billion loss in the market value of CHS stock. Dkt. No. 1.

On December 28, 2011, the Court consolidated this action with two other similar securities class actions and appointed the Funds as Lead Plaintiff. Dkt. No. 64. On March 23, 2012, the parties jointly agreed to a scheduling order setting deadlines for the filing of a

---

[1] "Cmp." refers to the Consolidated Class Action Complaint filed in this action. *See* Dkt. No. 70.

consolidated class action complaint and CHS' motion to dismiss. Dkt. No. 67. In addition, the parties stipulated to the production of certain books and records that were produced by CHS in the Derivative Action, including copies of the Blue Book and certain redacted minutes of CHS' Board meetings. *Id.*

On July 29, 2012, Lead Plaintiff filed its Consolidated Class Action Complaint (the "Complaint") alleging that shareholders suffered damages due to the revelations that CHS boosted its revenue through various means of overbilling and that its unsustainable revenue enhancing practices would no longer be available due to the regulatory investigations and the inevitably greater governmental oversight. Dkt. No. 70. In particular, the Complaint alleges that CHS used improper admission criteria contained in the Blue Book, rigged its Pro-MED software, and set admissions quotas. *See, e.g.,* Cmp. at ¶¶8-12, 58, 62, 78, 82-88, 91-95, 100-121, 128-138, 142-154. Tenet and nominal plaintiffs in the Derivative Action made many of the same allegations. Papp Decl., ¶¶3, 10.

CHS moved to dismiss the Complaint on September 11, 2012 (the "Motion"). *Id.*, ¶4. That Motion was fully submitted on January 23, 2013 nearly two years ago. *Id.*

Over the past several years while the Motion has been fully submitted, factual and legal developments have unfolded that further support denial of the Motion. Settlements and court decisions, including from the Supreme Court of the United States, have been previously submitted to this Court.[2] Additionally, given the extended period of time that the Motion has been pending, Lead Plaintiff filed a Motion to Ascertain the Status of the Action; but that motion has now itself been pending for more than a year. *See* Dkt. No. 96.

---

[2] *See, e.g.,* Dkt. No. 93 (Supplemental Memorandum of Law in Opposition to Defendants' Motion to Dismiss); Dkt. No. 101 (Lead Plaintiff's Notice Of Supplemental Authority); Dkt. No. 105 (Notice of Recent Settlement Between the U.S. Justice Department and Community Health Systems, Inc.); Dkt. No. 108 (Lead Plaintiff's Notice Of Recent Corporate Integrity Agreement Between The U.S. Office Of Inspector General And Community Health Systems, Inc.); and Dkt. No. 111 (Lead Plaintiff's Notice Of Supplemental Authority).

## A.    The DOJ Investigation and Settlements

Both the *qui tam* actions and Tenet (on a broader scale) alleged that CHS had been improperly admitting patients in order to boost its revenue. Papp Decl., ¶¶2-3. After Tenet's allegations became public, the DOJ then expanded its investigation, subpoenaing documents from CHS and third parties and interviewing current and former CHS employees. *Id.* at 5-6. That investigation eventually culminated in settlements where CHS agreed, *inter alia*, to pay the U.S. government $98 million, the fifth largest *qui tam* settlement in U.S. history, and the second largest False Claims Act settlement in a Medicare billing case (*Id.* ¶7; *see also* Dkt. No. 105 at Ex. A); and a second settlement with DOJ where CHS agreed to pay $75 million to settle claims that CHS improperly submitted claims for Medicaid reimbursement in New Mexico. Papp Decl., ¶8. CHS also entered into a Corporate Integrity Agreement with the Office of Inspector General ("OIG") whereby CHS agreed to extensive reporting and monitoring over the course of the next five years. *See* Dkt. No. 108 at Ex. A.

## B.    The Progress of the Derivative Action

Shortly after this action was filed, two shareholder derivative actions were filed on or after May 24, 2011 against CHS' directors on behalf of CHS, that were later consolidated into the Derivative Action. Papp Decl., ¶9. The nominal plaintiffs in that action filed a Verified Amended Consolidated Shareholder Derivative Complaint on March 15, 2012 (the "Derivative Complaint"). *Id.*, ¶10. On May 14, 2012, CHS filed a motion to dismiss the Derivative Complaint. *Id.*, ¶11.

By Order dated September 27, 2013, this Court denied, in part, CHS' motion to dismiss the Derivative Complaint, holding that nominal plaintiffs breach of fiduciary claims were viable. *See* Order dated September 27, 2013, attached as Ex. 6 to Papp Decl. The Court found

adequately pled the allegations that CHS' "own set of admission criteria called the 'Blue Book ... utilize[ed] much more general and subjective standards than the guidelines used by the vast majority of hospitals in the industry." *Id.* at 6, 18. The Court also found adequately pled the allegations that by adopting standards that allowed admissions without objective evidence of medical necessity, CHS purported to qualify for insurance reimbursements at significantly higher rates than it would have been entitled to receive had these patients been properly treated through observation status without being admitted. *Id.* at 5-6. The Court similarly found adequately pled allegations that CHS' scheme to boost admissions was readily apparent in newly acquired hospitals. For example, one year after CHS's acquisition of the Triad hospital chain, observation status rates at Triad hospitals dropped by 50%, while "one-day admissions"—a red flag for improper admissions and potential overbilling—increased by almost 33%. *Id.* at 7. While CHS management attributed its financial success to the realization of synergies at Triad and efficiencies achieved through a standardized operation platform, it failed to disclose that CHS's success was in fact due to improper admissions practices. *Id.* The Court put the matter succinctly -- "obtaining significant increases in admissions rates… at Triad hospitals could not have been done without using improper means." *Id.* at 18.

This Court's decisions as to the adequacy of the Derivative Complaint go a long way toward establishing a viable cause of action, including the element of scienter, on Lead Plaintiff's Rule 10 b-5 claim. But there is more. On October 14, 2013, CHS moved for reconsideration of the September 29, 2013 Order in the Derivative Action. Papp Decl., ¶13. While that reconsideration motion was pending, the Court denied CHS' motion to stay discovery in the Derivative Action and held an initial case management conference on November 10, 2014, in which defendants and nominal derivative plaintiff set discovery deadlines both pre and post

mediation (which is scheduled for March 2015.) *See* November 10, 2014 Case Management Order ("CMO"), attached as Ex.7 to the Papp Decl.[3] Prior to the mediation, the CMO requires that CHS produce "all documents [it] provided to the Department of Justice . . . related to short-stay admissions originating in the emergency department . . .," as well as initial disclosures and insurance agreements. *Id*. at 3.[4]

On December 22, 2014, this Court denied CHS' reconsideration motion by reaffirming the September 29, 2013 Order and specifically holding that: (1) each CHS Director Defendant was "involved in revising and approving at least one operative version of the Blue Book between 2000 and 2009; and (2) "Defendants were aware that obtaining significant increases in admissions rates ... could not have been done without using improper means" because of "Defendants' wealth of knowledge and experience ... combined with their diligence and concern with increasing admissions rates at CHS hospitals." *See* Order dated December 22, 2014, at 5-7, attached as Ex. 8 to the Papp Decl.

## III.   ARGUMENT

### A.   The PSLRA Stay Is Not Intended To Block Legitimate Discovery Where Viable Claims Are Apparent

None of the abuses that led to the passage of the PSLRA Stay provision are present here. According to PSLRA's legislative history, the purpose of the automatic stay is "to minimize the incentives for plaintiffs to file frivolous securities class actions in the hope either that corporate defendants will settle those actions rather than bear the high cost of discovery," *see* H.R. Conf. Rep. No. 104-369, at 37 (1995), reprinted in 1995 U.S.C.C.A.N. 730, 736; or that the plaintiff

---

[3] The Derivative Action parties subsequently informed the Court that they had jointly agreed to mediate in March 2015.  Papp Decl., ¶15.

[4] The CMO also sets forth a post-mediation through trial discovery schedule, including fact and expert discovery deadlines, the number of depositions permitted for each party, a briefing schedule for dispositive motions, and provides for the last day to amend or add parties. Papp Decl., ¶14.

will find during discovery some sustainable claim not alleged in the complaint. *See* S. Rep. No. 104-98 at 14, reprinted in 1995 U.S.C.C.A.N. 679, 693; *see also In re WorldCom, Inc. Sec. Litig.*, 234 F. Supp. 2d 301, 305 (S.D.N.Y. 2002) ("Congress enacted the discovery stay in order to minimize the incentives for plaintiffs to file frivolous securities class actions"); *In re LaBranche Sec. Litig.*, 333 F. Supp. 2d 178, 181 (S.D.N.Y. 2004) (noting that Congress enacted the PSLRA to prevent plaintiffs from using securities fraud lawsuits "as a vehicle to conduct discovery in the hope of finding a sustainable claim.").

Here, in contrast, the numerous *qui tam* actions and DOJ investigations targeting CHS's short-stay admission practices, and resulting landmark settlements, tend to demonstrate that Lead Plaintiff's claims against CHS are meritorious, and unequivocally establish that the claims are not frivolous. The presence of government investigations parallel to PSLRA actions has been held to be a basis to lift the automatic stay. In *In re Delphi Corp. Sec., Derv. & "ERISA" Litig.*, No. 05-md-1725, 2007 U.S. Dist. LEXIS 10408, at *25 (E.D. Mich. Feb. 15, 2007), the court held that the SEC's investigation of the same underlying facts that were alleged by plaintiffs "demonstrates that this is not a 'frivolous securities class action' brought against innocent parties." *See also In re WorldCom, Inc. Sec. Litig.*, 234 F. Supp. 2d at 305 (where the complaint was not initiated as a "fishing expedition," the rationales underlying the PSLRA are not contravened"); *In re Lernout & Hauspie*, 214 F. Supp. 2d 100, 106 (D. Mass. 2002) (granting limited discovery where "[n]either of the perceived abuses addressed by Congress is present"); *Vacold LLC and Immunotherapy, Inc. v. Cerami*, No. 00 Civ 4024 (AGS), 2001 U.S. Dist. LEXIS 1589, at *24 (S.D.N.Y. Feb. 16, 2001) (modifying the discovery stay where the request "does not implicate a concern that plaintiffs are seeking discovery to coerce a settlement").

The DOJ investigations of CHS resulted in a historic $98 million settlement agreement to resolve claims that CHS was systematically improperly billing Medicare for unnecessary admissions at over 90% of CHS' hospitals across the United States. Papp Decl., ¶7. Indeed, each CHS hospital named in the Complaint and referred to by the various confidential witnesses is listed in the CHS-DOJ settlement agreement as having improperly billed Medicare for unnecessary admissions. *Id.*

Further, federal courts frequently lift the PSLRA stay to allow plaintiffs to receive copies of documents and testimony produced in parallel government investigations. *See, e.g., In re FirstEnergy Corp. Sec. Litig.*, 229 F.R.D. 541, 545 (N.D. Ohio 2004) (granting partial lift of discovery stay to obtain documents produced to the government); *see also In re Bank of America Corp. Sec., Derv., & ERISA Litig.*, No. 09-mdl-2058, 2009 U.S. Dist. LEXIS 108322, at *8 (S.D.N.Y. Nov. 16, 2009) (granting motion to lift PSLRA stay because plaintiffs would be unduly prejudiced where "discovery is moving apace in parallel litigation.").[5] In *Bank of America*, the Court reasoned that "[c]ourts have modified the discovery stay in securities class actions when doing so would not frustrate Congress's purposes in enacting the PSLRA." *Id.* at *4.

The Court's rulings in the parallel Derivative Action concerning the improper admissions practices and permitting discovery to proceed there further support a lifting of the PSLRA Stay. As one court explained in *Seippel v. Sidley, Austin, Brown & Wood LLP*, No. 03 Civ. 6942 (SAS), 2005 U.S. Dist. LEXIS 2388 (S.D.N.Y. 2005):

> Courts have modified the discovery stay in cases involving concurrent investigations by governmental agencies when doing so would not frustrate Congress' purposes in enacting the PSLRA [because] the cost of such discovery

---

[5] *See also; In re Massey Energy Co. Secs. Litig.*, No. 5:10-0689, 2011 U.S. Dist. LEXIS 111175, at *7 (S.D. W.Va. Sept. 28, 2011); *Waldman v. Wachovia Corp.*, No. 08-2913(SAS), 2009 U.S. Dist. LEXIS 1988 at *4 (S.D.N.Y. Jan. 12, 2009); *In re WorldCom, Inc. Sec. Litig.*, 234 F. Supp. 2d at 306; *In re LaBranche*, 333 F. Supp. 2d at 181-84.

to defendants is minimal, as the documents have already been compiled for production, while plaintiffs would suffer severe prejudice if discovery in their case is delayed while government investigations and other lawsuits proceed ahead of them.

2005 U.S. Dist. LEXIS 2388, at *4-5.  The fact that CHS has already found, reviewed and organized the requested documents in connection with the DOJ investigation and the parallel Derivative Action justifies lifting the discovery stay.  *See Pension Trust Fund for Operating Eng'r v. Assisted Living Concepts, Inc.*, 943 F. Supp. 2d 913, 915 (E.D. Wis. 2013) ("One of the principal purposes of the PSLRA stay is to eliminate the cost of discovery before the potential merit is assessed at the motion to dismiss phase.  However, *that burden is slight when a defendant has already found, reviewed and organized the documents*") (citation omitted) (emphasis added).

**B.      The PSLRA's Stay of Discovery Should Be Lifted In Order To Prevent Undue Prejudice and to Preserve Evidence**

The PSLRA Stay is not absolute.  15 U.S.C. §78u-4(b)(3)(B).  Courts routinely lift the PSLRA stay to prevent undue prejudice or to preserve evidence in circumstances, like here, where a simultaneous government investigation had begun and a parallel derivative case is proceeding.  [*Lowey: throughout the brief, you can probably shorten repeat citations*] *See, e.g., In re Massey Energy Co. Secs. Litig.*, 2011 U.S. Dist. LEXIS 111175, at *7 (granting plaintiffs' motion to lift PSLRA stay to prevent undue prejudice and preserve evidence); *Waldman v. Wachovia Corp.*, 2009 U.S. Dist. LEXIS 1988, at *4 (granting plaintiffs' motion to lift PSLRA stay where defendant had "already found, reviewed and organized the documents") (Scheindlin, J.); *In re LaBranche Sec. Litig.*, 333 F. Supp. 2d at 182 (granting plaintiffs' motion to lift PSLRA

stay where discovery stay would prejudice plaintiffs' ability to make informed decision about their litigation strategy and defendants had already produced documents to regulatory agencies).[6]

As discussed below, absent a lifting of the PSLRA Stay, Lead Plaintiff will be unduly prejudiced because, without so much as a discovery meet and confer, this case has been pending for over three and a half years, during which time both the government and nominal plaintiffs in the Derivative Action have received discovery from CHS. Time passing increases the likelihood that evidence will be lost.

### 1. Lead Plaintiff Will Suffer Undue Prejudice If The PSLRA Stay Is Not Lifted

Undue prejudice has been found in situations where plaintiffs would be deprived of the opportunity to make informed decisions about their litigation strategy and would fall substantially behind parallel government or regulatory actions. *See In re Bank of America Corp.*, 2009 U.S. Dist. LEXIS 108322, at *8; *Waldman*, 2009 U.S. Dist. LEXIS 1988, at *4. Here, CHS has already produced great quantities of documents to the DOJ as part of its investigations into CHS' admission practices, which led to over $173 million in settlements with the DOJ in 2014. Further, the Court has entered the CMO in the Derivative Action whereby CHS is obligated to produce all of the documents it produced to the DOJ to a Plaintiff nominally representing CHS. Lead Plaintiff representing the innocent and financially damaged shareholders is at a significant disadvantage without this discovery. *See In re LaBranche Sec. Litig.*, 333 F. Supp. 2d at 182 (quoting *In re WorldCom*, 234 F. Supp. 2d at 305) (noting that plaintiffs would be prejudiced "without access to documents that currently form the core" of the proceedings in both the

---

[6] *See also In re WorldCom, Inc. Sec. Litig.*, 234 F. Supp. 2d at 305 (same); *Anderson v. First Sec. Corp.*, 157 F. Supp. 2d 1230, 1242 (D. Utah 2001) (granting plaintiffs' motion to lift PSLRA stay to prevent undue prejudice because of the confidentiality agreement that precluded Plaintiffs from obtaining specific information prior to filing their Complaint); *In re Grand Casinos Sec. Litig.*, 988 F. Supp. 1270, 1272 (D. Minn. 1997) (explaining that Congress gave district courts discretion to grant relief from the stay); *In re Silicon Graphics, Inc. Sec. Litig.*, 970 F. Supp. 746, 760 (N.D. Cal. 1997) (same).

parallel derivative action and a government investigation.) Such undue prejudice is particularly evident here because CHS is currently producing its DOJ production to the nominal plaintiff in the Derivative Action in advance of their upcoming mediation. Lead Plaintiff will be unduly prejudiced by their inability to coordinate efficiently and "keep a-pace" with the Derivative Action. *In re Bank of America Corp.*, 2009 U.S. Dist. LEXIS 108322, at *8. As such, lifting the PSLRA Stay is warranted here.

Moreover, derivative suits rarely drive ahead of shareholder litigation. For good reason, the opposite is the norm. Here, massive corporate fraud is alleged to have occurred. A direct shareholder class action suit involves a right to bring a direct action for monetary harm. *Id.* In that case, the recovery flows directly to the shareholders who seek to recover their substantial losses due to investment in CHS' stock.

In contrast, a derivative suit enables a shareholder to bring suit on behalf of the corporation for harm done to the corporation – the recovery in such a suit goes to the corporation. *See Tooley v. Donaldson, Lufkin, & Jenrette, Inc.*, 845 A. 2d 1031, 1036 (Del. 2004). Moreover, the amount of damages at issue in a derivative suit is often contingent on the outcome of the direct shareholder suit. Som P. Dala and Howard S. Suskin, *Staying Shareholder Derivative Suits In Favor Of Related Securities Class Actions*, AMERICAN BAR ASSOCIATION, SECTION OF LITIGATION 1 (Dec. 6, 2012) ("ABA Article") ("it is often difficult, if not impossible, to gauge the potential scope of damages in the derivative suit before the class action is decided"). As a result of being contingent on the recovery of the direct shareholder suit, derivative recovery often ends up being a fraction of that recovered by the direct shareholder suit. *See and compare In re Cendant Corporation Secs. Litig.*, No. 98-cv-1664 (D.N.J.) (recovering approximately $3.2 billion for shareholders) *with In re Cendant Corporation Derivative Action Litig.*, 98-cv-1998

(D.N.J.) (recovering $54 million for the corporation); *In re AOL Time Warner Secs. Litig.*, 02-md-1500 (S.D.N.Y.) (recovering approximately $2.6 billion for shareholders) *with In re AOL Time Warner Shareholder Derivative Litig.*, 02-cv-6302 (S.D.N.Y.) (recovering $200 million for corporation); and *In re Juniper Networks Secs. Litig.*, 06-cv-4327 (N.D. Cal.) (recovering $169.5 million for shareholders) *with In re Juniper Derivative Actions*, 06-cv-3396 (N.D. Cal.) (recovering $22.7 million for corporation).

Further, the Derivative Complaint pleads damages that are necessarily based on the CHS' legal exposure, including this securities class action. *See* Derivative Complaint,[7] attached as Exhibit 5 to the Papp Decl., ¶6 ("Defendants' actions have also subjected the Company to complex and expensive-to-defend securities class action lawsuits"); ¶108 ("Defendants further breached their fiduciary duties by making, or allowing the Company to make, improper statements in their public filings concerning their Medicare and Medicaid revenues they knew were unwarranted and improperly obtained.") ¶118 ("As a result of the misconduct described above, and by failing to properly consider the interests of the Company and its public shareholders, defendants have caused Community Health to incur (and Community Health may continue to incur) *significant legal liability* and/or legal costs to defend itself as a result of defendants' unlawful actions.") (emphasis added). Thus, to have the Derivative Action proceed to discovery and settlement or other final resolution while this Action remains frozen by the PSLRA is inefficient and prejudicial.

## 2. Lifting the Discovery Stay Is Necessary To Preserve Evidence

The Court should lift the PSLRA Stay to ensure that all documents, information, and evidence are preserved. During the three and half years since his case was filed, CHS has

---

[7] Undue prejudice is further exemplified here where Lead Plaintiff is forced to cite to an outdated version of the complaint in the Derivative Action since the operative Derivative Complaint was filed *under seal* on March 15, 2012. *See* Derivative Action, Dkt No. 50.

merged with or acquired numerous hospital systems across the United States. Most notably, in January 2014, CHS merged with Health Management Associates, Inc. ("HMA"), a large hospital system with over 70 hospitals, raising the likelihood that structural changes have and will be made at CHS. Papp Decl., ¶17. For example, it was widely reported that HMA stopped using Pro-MED software after Tenet's allegations became public. *Id.*, ¶21. Thus, CHS' merger with HMA would require CHS to drop Pro-MED, or HMA hospitals to install it again after the merger. In addition, CHS also acquired Mercy Health Partners, Memorial Health Systems, Metro South Medical Center, Moses Healthcare System, Sharon Regional Medical Center, Natchez Regional Medical Center, and Gafney Medical Center. *Id.*, ¶18. The layering on and integration of additional entities due to CHS' continuing mergers and acquisitions raise concerns that evidence, whether paper records or emails or other electronic records, will not be preserved. *See In re Massey Energy Co. Secs. Litig.*, 2011 U.S. Dist. LEXIS 111175, at *7 (granting plaintiffs' motion to the lift PSLRA stay because the acquisition of defendant constituted an extraordinary circumstance that could lead to inadvertent destruction of documents); *In re Royal Ahold N.V. Sec. & ERISA Litig.*, 220 F.R.D. 246, 251 (D. Md. 2004) (lifting the discovery stay because the "necessity to preserve evidence appear[ed] substantial" where the defendant was reorganizing and there was a "reasonable concern" that the documents could be lost despite defendant's "best efforts to preserve them").

In addition, inevitably key witnesses will continue to leave CHS' employ. That process has already begun. For example, Carolyn Lipp, a senior CHS executive in charge of the rollout of the Blue Book who reported directly to CHS' Chief Executive Officer, has retired. Papp Decl., ¶19. Also, Gary Newsome, a former CHS Division Director, left the employ of CHS in 2008 to become the Chief Executive Officer of HMA. *Id.*, ¶20. After allegations surfaced that

HMA, too, was being investigating for fraudulently billing Medicare for short-stay admissions, Newsome retired from HMA, left the United States and is reportedly living in South America. *Id.* Lead Plaintiff is thus faced with a "shifting corporate landscape and concerns about evidentiary loss that are by no means 'wholly speculative.'" Therefore, Lead Plaintiff should not be required to rely on assurances of counsel that relevant evidence will be preserved for over three and half years during the numerous mergers and acquisitions at CHS. *See In re Massey Energy Co. Secs. Litig.*, 2011 U.S. Dist. LEXIS 111175, at * 7 (acknowledging that as operations change hands, the PSLRA stay should be lifted to permit particularized discovery, including the issuance of preservation subpoenas); *see also Royal Ahold*, 220 F.R.D. at 251 ("the previously produced documents, which are likely to comprise the most critical evidence in the case, could help the plaintiffs identify other specific materials that may be at risk of loss.").

## IV.     CONCLUSION

For all of the foregoing reasons, Lead Plaintiff respectfully requests that the Court grant its motion to lift the PSLRA Stay to permit Lead Plaintiff to obtain discovery.

Dated: January 14, 2015

**LOWEY DANNENBERG COHEN**
**& HART, P.C.**

By:     /s/ Barbara J. Hart
         Barbara J. Hart (admitted *pro hac vice*)
         David C. Harrison (admitted *pro hac vice*)
         Scott V. Papp (admitted *pro hac vice*)
         One North Broadway, 5th Floor
         White Plains, New York 10601
         Tel.:    914-997-0500
         Fax:    914-997-0035

**PROVOST UMPHREY, LLP**
W. Michael Hamilton
TN Bar No. 10720
4205 Hillsboro Pike
Suite 303
Nashville, Tennessee 37215
Tel.:    (615) 297-1932
Fax:    (615) 297-1986

*Attorneys for Lead Plaintiff*


## CERTIFICATE OF SERVICE

I hereby certify that on January 14, 2015, a copy of the Memorandum of Law in Support

of Plaintiff's Motion to Lift the PSLRA Discovery Stay was filed with the Clerk of the Court

using the CM/ECF system, which will automatically serve a copy of same upon all counsel of

record, as identified in the following chart:

| | |
|---|---|
| Peter D. Doyle<br>Seth D. Fier<br>**Proskauer Rose LLP**<br>Eleven Times Square<br>New York, New York 10036-8299<br>Email: pdoyle@proskauer.com<br>Email: sfier@proskauer.com<br><br>*Counsel for Defendants Community*<br>*Health Systems, Inc., Wayne T. Smith,*<br>*W. Larry Cash, and Thomas Buford* | John R. Jacobson<br>James N. Bowen<br>Milton S. McGee, III<br>**Riley, Warnock & Jacobson PLC**<br>1906 West End Avenue<br>Nashville, TN 37203<br>Email: jjacobson@rwjplc.com<br>Email: jimbowen@rwjplc.com<br>Email: tmcgee@rwjplc.com<br><br>*Counsel for Defendants Community*<br>*Health Systems, Inc., Wayne T. Smith,*<br>*W. Larry Cash, and Thomas Buford* |

| | |
|---|---|
| Joel A. Blanchet<br>James M. Cooper<br>Lisa V. LeCointe-Cephas<br>**Kirkland & Ellis LLP**<br>Citigroup Center<br>601 Lexington Avenue<br>New York, NY 10022-4611<br>Email: joel.blanchet@kirkland.com<br>Email: Max.cooper@kirkland.com<br>Email: Lisa.LeCointe-Cephas@kirkland.com<br><br>*Counsel for Defendants Community*<br>*Health Systems, Inc., Wayne T. Smith,*<br>*W. Larry Cash, and Thomas Buford* | William Michael Hamilton<br>**Provost, Umphrey Law Firm, LLP**<br>4205 Hillsboro Pike<br>Suite 303<br>Nashville, TN 37215<br>Email: mhamilton@pulf.com<br><br>*Local Counsel for Lead Plaintiff New York*<br>*City Pension Funds* |
| Christopher J. Keller<br>Michael W. Stocker<br>Rachel A. Avan<br>**Labaton Sucharow LLP**<br>140 Broadway<br>New York, NY 10005<br>Email: ckeller@labaton.com<br>Email: mstocker@labaton.com<br>Email: ravan@labaton.com<br><br>*Counsel for Norfolk County Retirement*<br>*System, Alberta Investment Management Corp.*<br>*and State-Boston Retirement System* | James Gerard Stranch, IV<br>**Branstetter, Stranch & Jennings**<br>227 Second Avenue, N – 4th Floor<br>Nashville, TN 37201<br>Email: gstranch@branstetterlaw.com<br><br>*Counsel for Norfolk County Retirement*<br>*System, Alberta Investment Management Corp.*<br>*and State-Boston Retirement System* |
| Jeffrey A. Berens<br>**Dyer & Berens LLP**<br>303 E. 17th Ave. – Suite 300<br>Denver, CO 80203<br>Email: Jeff@dyerberens.com<br><br>*Counsel for De Zheng* | James L. Davidson<br>**Greenwald Davidson PLLC**<br>5550 Glades Road , Suite 500<br>Boca Raton, FL 33431<br>Email: jdavidson@mgjdlaw.com<br><br>*Counsel for De Zheng* |

| | |
|---|---|
| Robert J. Robbins<br>David R. George<br>**Robbins Geller Rudman & Dowd LLP**<br>120 E. Palmetto Park Road – Suite 500<br>Boca Raton, FL 33432<br>Email: rrobbins@rgrdlaw.com<br>Email: dgeorge@rgrdlaw.com<br><br>*Counsel for De Zheng* | Michael K. Radford<br>**Flynn & Radford**<br>320 Seven Springs Way, Suite 150<br>Brentwood, TN 37027<br>Email: mradford@allen-kopet.com<br><br>*Counsel for Minneapolis Firefighters' Relief Association* |
| Frederic S. Fox<br>Joel B. Strauss<br>Pamela A. Mayer<br>**Kaplan Fox & Kilsheimer LLP**<br>850 Third Ave. – 14th Floor<br>New York, NY 10022<br>Email: ffox@kaplanfox.com<br>Email: strauss@kaplanfox.com<br>Email: pmayer@kaplanfox.com<br><br>*Counsel for Minneapolis Firefighters' Relief Association* | Richard A. Lockridge<br>Karen H. Riebel<br>**Lockridge Grindal & Nauen, PLLP**<br>100 Washington Ave. S. – Suite 2200<br>Minneapolis, MN 55401<br>Email: lockrra@locklaw.com<br>Email: khriebel@locklaw.com<br><br>*Counsel for Minneapolis Firefighters' Relief Association* |
| David S. Hagy<br>**David S. Hagy, Attorney at Law**<br>1507 16th Avenue South<br>Nashville, TN 37212<br>Email: dhagy@hagylaw.com<br><br>*Counsel for General Retirement System of the City of Detroit* | |

Dated: January 14, 2015

/s/ Scott V. Papp
Scott V. Papp, Esq.
**LOWEY DANNENBERG COHEN
& HART, P.C.**
One North Broadway, Suite 509
White Plains, NY 10601
Ph:     914-997-0500
Fax:    914-997-0035
E-mail: spapp@lowey.com

*Attorney for Lead Plaintiff*