UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| NORFOLK COUNTY RETIREMENT SYSTEM, individually and on behalf of all others similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>COMMUNITY HEALTH SYSTEMS, INC., WAYNE T. SMITH and W. LARRY CASH,<br><br>*Defendants*. | CONSOLIDATED<br>CIVIL ACTION NO.: 3:11-cv-0433<br><br>CLASS ACTION<br><br>JUDGE JOHN T. NIXON<br>MAG. JUDGE JOE B. BROWN<br><br>JURY TRIAL DEMANDED |
| THIS DOCUMENT RELATES TO ALL ACTIONS | |

**INITIAL CASE MANAGEMENT ORDER**

Pursuant to Local Rule 16.01(d)(2) of the Local Rules of the Middle District of Tennessee, the following Initial Case Management Plan is adopted.

**1.      Jurisdiction**

Based on Lead Plaintiff's representation that it is a purchaser and seller of the defendant company's common stock, the Court has jurisdiction pursuant to 28 U.S.C. §1331 because Lead Plaintiff, the New York City Employee Retirement System, the Teachers' Retirement System of the City of New York, the New York City Teachers' Variable Annuity Program, the New York City Police Pension Fund, and the New York City Fire Department Pension Fund (collectively, the "NYC Funds" or "Lead Plaintiff") has alleged that Defendants Community Health Systems, Inc. ("CHSI"), Wayne T. Smith, and W. Larry Cash (collectively, "Defendants" and with Lead Plaintiff, the "Parties") violated federal securities laws, including Sections 10(b) and 20(a) of the

Exchange Act, 15 U.S.C. §§ 78j(b) and 78t(a), and SEC Rule 10b-5 promulgated thereunder. Jurisdiction is not in dispute.

**2.     Lead Plaintiff's Theory of the Case**

The Complaint alleges that CHSI and its senior executives violated Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 in misrepresenting and/or omitting material information concerning one of the main sources of its revenue – hospital admissions from its emergency departments.   The Complaint alleges that Defendants' public statements and filings misleadingly touted the Company's record of increasing revenues, particularly at newly acquired hospitals, which they falsely attributed to synergies and greater operating efficiencies.

Lead Plaintiff alleges that CHSI's success was due to its undisclosed systemic practice of employing improper and fraudulent strategies to drive revenue, including improperly admitting patients when not clinically necessary, rigging its Pro-Med software to increase lucrative testing procedures and acuity levels, and setting admissions quotas to drive revenue.  CHSI's top executives ordered and closely monitored these and other revenue enhancing practices, and then took credit for the company's improved performance. CHSI's improper practices first came to light in Tenet Healthcare Inc.'s anti-takeover lawsuit in April 2011 (similar allegations were made in multiple *qui tam* actions beginning in 2009 that were under seal).  When the Tenet action was made public, CHSI's stock price plunged 36%, resulting in immediate loss in market value exceeding $1.2 billion.  Government investigations, as well as class and derivative litigation, followed, which led to a large settlement with the U.S. government, whereby CHSI agreed to pay the government a total of $98 million to settle claims related to its admissions practices and fraudulent billing of Medicare.  CHSI also recently announced that it reached a settlement in principle with the government where CHSI agreed to pay $75 million to settle

claims that it fraudulently and systematically overbilled Medicaid/Medicare from three of its hospitals in New Mexico by, *inter alia*, marking up its services and then billing the government.

The Court's rulings in the Derivative Action support Lead Plaintiff's allegations of scienter in this action  In its Order denying, in part, the motion to dismiss, the Court noted that "Defendants' wealth of knowledge and experience with the business and management of healthcare entities, combined with their diligence and concern with increasing admission rates at CHSI hospitals, allows the Court to reasonably infer that *Defendants were aware* that obtaining significant increases in admissions rates—including a 50% increase in admissions at Triad hospitals—could not have been done without using improper means." *See* Derivative Action Dkt. No. 87 at 18 (emphasis added).

**3.    Defendants' Theory of the Case**

Lead Plaintiff has brought purported class action claims under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934, against CHSI and certain of its directors and officers (collectively, "Defendants").  In sum, Lead Plaintiff's Complaint claims that Defendants failed to disclose that CHSI was committing Medicare fraud by implementing systems and procedures that systemically encouraged improper patient admissions at CHSI-affiliated facilities.

Defendants deny the allegations in the Complaint.  The Complaint is based on unfounded allegations contained in another securities lawsuit that has been dismissed with prejudice. Contrary to Lead Plaintiff's claims, nothing in the Complaint demonstrates that CHSI has ever been found to have engaged in fraud, nor that CHSI has admitted to doing so.  Likewise, Lead Plaintiff fails to identify any actionable misstatements or omissions on the part of Defendants or explain which specific statements are false or misleading, or why.  Further, Lead Plaintiff fails to plead *scienter* as required under the law.  Assuming Lead Plaintiff is able to overcome the high pleading standards for *scienter*, Defendants will show that CHSI-affiliated facilities' admissions

policies and practices were appropriate and the Defendants' public disclosures about those policies and practices were complete and accurate. Finally, Lead Plaintiff cannot prove loss causation, including because Lead Plaintiff fails to link any alleged economic loss to Defendants supposed misstatements or omissions.

**4. Witnesses**

The following is an initial list of witnesses currently known by the Parties: the NYC Funds, CHSI, current and former employees of affiliates of CHSI and current and former contractors, including physicians, hospital administrators and staff at certain CHSI-affiliated facilities, current and former executives and directors, including Defendants Wayne T. Smith, and W. Larry Cash, representatives of other healthcare providers and/or systems, certain third-parties and vendors, including Pro-MED Systems, Inc. and Premiere, and other persons or entities revealed through the course of discovery.

**5. Pre-Mediation Staged Discovery**

The Parties agree that the following discovery-related events shall occur prior to mediation:

**(a) Protective Order**

The Court entered the Parties' Stipulation and Protective Order on January 29, 2015. *See* Dkt. No. 120.

**(b) Initial Document Production**

Defendants shall produce to Lead Plaintiff all documents that CHSI and its affiliates provided to the Department of Justice in connection with a series of Government subpoenas, the first of which was received in April 2011, related to short-stay admissions originating in the emergency department as well as the government's investigation into a hospital affiliated with

CHSI in Laredo, Texas. Defendants will also produce to Plaintiffs all applicable agreements of insurance, and insurance policies, including Director and Officer insurance policies during this same time frame.

On or before February 18, 2015, Defendants shall produce to Lead Plaintiff:

      (i)      Federal Rule of Civil Procedure 26(a) Initial Disclosures; and

      (ii)     All documents filed under seal in the consolidated derivative action

captioned *In re Community Health Systems, Inc. Shareholder Derivative Litigation*, Case No. 11-cv-00489 (M.D. Tenn.) (the "Derivative Action").

**(c)     Mediation**

The Parties agree that private mediation, consistent with Local Rule 16.05, may be an appropriate method to attempt the resolution of this action. The Parties have tentatively agreed to participate in mediation in April 2015, before the Honorable Layn R. Phillips, Retired Untied States District Judge. The mediation in this case shall be coordinated with mediation to occur in the Derivative Action, and representatives of the insurers implicated by this action and/or the Derivative Action shall participate in and attend mediation. The Parties expressly agree that Lead Plaintiff's participation in the mediation is conditioned on the following:

      1.    Lead Plaintiff's receipt and review of all discovery Defendants have voluntarily agreed to produce pre-mediation pursuant to paragraph 5(b) above. Consistent with its fiduciary obligation to the putative class, if, after review of Defendants' initial production, Lead Plaintiff identifies specific, limited additional discovery necessary to inform mediation, Lead Plaintiff will meet and confer with Defendants to see if agreement can be reached on supplementation. If no agreement can be reached, the Parties shall request a

telephonic conference with the Court regarding that issue in advance of the mediation; and

2. no preconditions to the mediation, including that there are no monetary caps on recovery.

**(d)** **Post-Mediation**

Upon determination the mediation contemplated in paragraph 5(c) is unsuccessful, any party may contact the Court to schedule a case management conference to discuss case progress including a briefing schedule on Lead Plaintiff's Motion to Lift the PSLRA Discovery Stay, and/or, in the event the Court has denied Defendants' Motion to Dismiss, a briefing schedule on Lead Plaintiff's motion for class certification.

IT IS SO ORDERED.

/s/ Joe B. Brown                .
UNITED STATES MAGISTRATE JUDGE
JOE B. BROWN

APPROVED FOR ENTRY:

/s/ Barbara J. Hart
_____
Attorney for Plaintiffs

/s/ Peter D. Doyle
_____
Attorney for Defendants

{2499 / ORD / 00127317.DOCX v1}     6

Case 3:11-cv-00433   Document 121   Filed 01/30/15   Page 6 of 6 PageID #: 3806