UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| NORFOLK COUNTY RETIREMENT SYSTEM, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>COMMUNITY HEALTH SYSTEMS, INC., WAYNE T. SMITH and W. LARRY CASH,<br><br>Defendants. | Consolidated<br>Civil Action No.: 11-cv-0433<br><br>Class Action<br><br>Judge Aleta Trauger<br>Magistrate Judge Joe B. Brown<br><br>JURY TRIAL DEMANDED |
| THIS DOCUMENT RELATES TO ALL ACTIONS | |

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION, PURSUANT TO LOCAL RULE 7.01(b), FOR RECONSIDERATION OF INCONSISTENT ORDERS REGARDING THE PSLRA STAY OF DISCOVERY**

Defendants Community Health Systems, Inc., Wayne T. Smith and W. Larry Cash (collectively "Defendants," or "CHSI"), submit this memorandum of law in support of their motion to reconsider Judge Nixon's May 13, 2015, order lifting the statutory discovery stay in this matter (Doc. 135), which directly conflicts with an agreed order filed by Magistrate Judge Brown that same day (Doc. 136).

**INTRODUCTION**

In this putative shareholder class action, Plaintiff alleges that Defendants committed securities fraud by telling the public that CHSI's financial performance was driven by legitimate business activities, whereas in reality, it was driven by a scheme to defraud the Medicare

1

program. Defendants contend that this claim is utterly baseless, and moved to dismiss the case on multiple grounds. (Doc. 74) That motion remains before the Court.

The Private Securities Litigation Reform Act of 1995 ("PSLRA"), directs that, in a private securities class action, "all discovery and other proceedings shall be stayed during the pendency of any motion to dismiss, unless the court finds upon the motion of any party that particularized discovery is necessary to preserve evidence or to prevent undue prejudice to that party." 15 U.S.C. § 78u-4(b)(3)(B).

On January 14, 2015, Plaintiff moved for a partial lifting of the stay, seeking production of materials Defendants had previously produced in response to a government investigation of the underlying issues, and in a parallel derivative suit in this Court. Plaintiff argued that it would not unduly burden Defendants to produce a copy of those materials, and that doing so would allow Plaintiff to "keep a-pace" with the derivative case. Defendants agreed to produce (and have produced) those materials to Plaintiff, and on May 11, 2015, further agreed to provide Plaintiff with any additional materials they produce in the derivative case so long as the PSLRA stay is in place. The parties' agreement was incorporated in Magistrate Judge Brown's May 13, 2015, First Amended Case Management Order. The First Amended Case Management Order, however, left the stay intact as to any additional discovery, in recognition of the fact that the governing statute stays discovery during the pendency of a motion to dismiss.

The same day Magistrate Judge Brown entered the First Amended Case Management Order, Judge Nixon, apparently unaware of the parties' agreement or the Order, issued a conflicting order lifting the stay entirely. Defendants now ask the Court to enforce the First Amended Case Management Order, and to reconsider Judge Nixon's conflicting order lifting the

stay.[1]  First, there is no basis for a finding that lifting the stay is necessary to "preserve evidence or to prevent undue prejudice," nor did Judge Nixon make such a finding.  To the contrary, the process set out in the First Amended Case Management Order is entirely adequate to address Plaintiff's concerns.  Second, the Eleventh Circuit's squarely on-point holding just last week in *Sapssov v. Health Management Associates, Inc.*, No. 14-12838, 2015 WL 2168322 (May 11, 2015), demonstrates that Defendants' motion to dismiss is substantially likely to succeed because Plaintiff has failed to allege the necessary element of loss causation.  Under these circumstances, lifting the stay and imposing on Defendants the attendant burdens of freewheeling discovery is especially unwarranted.  Judge Nixon's conflicting (and unexplained) order lifting the stay therefore should be reconsidered.

## BACKGROUND

*1. The Complaint against CHS and the pending motion to dismiss*.  The July 13, 2012, Consolidated Class Action Complaint alleges that, beginning in 2006, Defendant CHSI, a publicly traded hospital company, overbilled the Medicare program by systematically admitting people as inpatients when admission was not medically necessary. (Doc. 68)  Plaintiff presents this as federal securities fraud, on the theory that CHSI misrepresented to the public that its financial performance was in fact attributable to its provision of "quality healthcare."  (*Id.* at ¶ 337 (quoting CHS's 2010 Form 10-K))

To allege the required element of loss causation (*see Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, 343 (2005)), Plaintiff relies upon the charges leveled against CHSI in a lawsuit filed by Tenet Healthcare Corporation in April 2011, in the context of a bitter proxy

---

[1]  Under Local Rule 7.01(b), an order (like Judge Nixon's) entered on a motion to which the other side has not responded (Defendants did not respond to Plaintiff's January 14, 2015 motion, because the parties resolved it) may be reconsidered at the request of the non-moving party.

3

fight. (Doc. 68 at ¶ 359) To fend off CHSI's hostile takeover bid, Tenet alleged—based on an "analysis of publicly available information on hospital observation rates"—that CHSI had achieved the revenues reported in its proxy solicitation materials only on the strength of an unlawful set of patient admission criteria. Complaint for Violations of Federal Securities Laws, *Tenet Healthcare Corp. v. Community Health Sys., Inc.*, No. 11CV00732, 2011 WL 1346942 at ¶¶ 10, 19 (N.D. Tex. Apr. 11, 2011). In the wake of Tenet's suit (which was promptly dismissed, *Tenet Healthcare Corp. v. Community Health Sys., Inc.*, 839 F. Supp. 2d 869 (N.D. Tex. 2012)), CHSI's stock price fell precipitously, as the market concluded that CHSI's planned acquisition of Tenet was likely to fail.

Defendants moved to dismiss the Amended Complaint on September 11, 2012, asserting (among other things) that Plaintiff failed adequately to plead loss causation, because Plaintiff did not allege the necessary link between the supposed fraud and the decline in CHSI's stock price. (Doc. 74 at 18-19) In particular, the asserted "corrective disclosure" (the lawsuit filed by Tenet, which Plaintiff contends disclosed the "truth" and precipitated the stock price decline), merely repeated information that had long been publicly available; and in any event amounted to mere allegations, rather than facts. (*Id.* at 18) Briefing on the motion was completed on January 23, 2013, but it remains unresolved.

***2. The PSLRA stay of discovery and the parties' agreement to partially lift the stay.*** Under the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), "all discovery and other proceedings" in federal securities class actions are "stayed during the pendency of any motion to dismiss." 15 U.S.C. § 78u–4(b)(3)(B)**.** The central purpose of the automatic discovery stay is to "discourage plaintiffs from filing securities class actions for the purpose of causing corporate defendants to settle their claims, regardless of their apparent or actual merit, rather than

4

bear the costs of discovery." *Frank v. Dana Corp.*, No. 3:05CV7393, 2007 WL 1748887, at *2 (N.D. Ohio, June 18, 2007) (quoting H.R. Conf. Rep. No. 104-369 at 37 (1995) ("The cost of discovery often forces innocent parties to settle frivolous securities actions. According to the general counsel of an investment bank, 'discovery costs account for roughly 80% of total litigation costs in securities fraud cases.'")). Accordingly, until after the Initial Case Management Order on January 30, 2015 (discussed below), there was no discovery in this case, pending resolution of Defendants' motion to dismiss.

On May 24, 2011, a separate derivative action was filed in this Court against multiple CHSI officers and directors, asserting that they had damaged the company by implementing the allegedly improper admission practices. *Plumbers & Pipefitters Local Union No. 630 Pension-Annuity Trust Fund v. Smith* No. 11-cv-00489 (M.D. Tenn. May 24, 2011) (Doc. 1). On September 29, 2013, Judge Nixon (to whom both cases were assigned) dismissed three of the four claims in the derivative action. On November 10, 2014, in anticipation of a mediation scheduled for early 2015, the defendants in the derivative case were directed to produce the set of documents CHSI had earlier produced to the Department of Justice in connection with its investigation of the same underlying conduct.

Citing the fact that CHSI had produced materials to the plaintiffs in the *derivative* case, on January 14, 2015, Plaintiff in this case moved to lift the automatic PSLRA Discovery Stay. (Docs. 112 and 113) Plaintiff argued that producing the same documents in this case "should pose no burden on CHS" (Doc. 113 at 2), because "CHS has already found, reviewed and organized the requested documents in connection with the DOJ investigation and the parallel Derivative Action." (*Id.* at 10) Further, Plaintiff argued, the PSLRA's concerns about burdensome discovery in non-colorable securities cases does not apply here because the fact of

5

CHSI's settlement with the Justice Department "tend[s] to demonstrate that Lead Plaintiff's claims against CHS are meritorious." *Id.* at 8.

On January 30, 2015, Magistrate Judge Brown entered an Initial Case Management Order that reflected the parties' compromise, pursuant to which Defendants agreed to provide Plaintiff the same materials Defendants had produced to both the Justice Department and the plaintiffs in the derivative case. (Doc. 121, § 5.) The parties agreed that Defendants would not respond to Plaintiff's Motion to Lift the Stay unless and until mediation failed.

***3. The mediation and the parties' subsequent agreed order on discovery.*** The parties mediated both cases on April 16 and 17, 2015, but were unsuccessful. Magistrate Judge Brown accordingly scheduled a new case management conference for May 11, 2015, and directed the parties to this action to submit a proposed briefing schedule as to Plaintiff's earlier-filed motion to lift the stay. (Doc. 123.) Magistrate Judge Brown further directed the Clerk to "reactivate" the motion to lift the stay as a pending motion. (*Id.*)

Once again, the parties agreed to a compromise resolution as to discovery, and jointly submitted the agreement to Magistrate Judge Brown in advance of the May 11, 2015, conference. (Attached as Ex. A) Magistrate Judge Brown endorsed the agreement during the conference, which he memorialized in an agreed First Amended Case Management Order, filed on May 13, 2015. (Doc. 136) Per the parties' agreement, the Order provides that, subject to certain carefully negotiated exceptions, the PSLRA discovery stay "shall remain in place." *Id.* ¶ 1. Generally stated, the exceptions are: (1) "Defendants agree to produce to Lead Plaintiff in this case non-privileged documents that they produce to the plaintiffs in the Derivative Action during the 90-day period beginning on May 8, 2015 and running through August 7, 2015" (*id.*

¶ 2); and (2) Defendants do not object to permitting Plaintiff "to attend any deposition held in the Derivative Action" (*id.* ¶ 7(B)).

This compromise agreement—providing Plaintiff with substantially all the discovery to be produced in the derivative action, so long as the PSLRA stay remains in place—addressed Plaintiff's principal concern that it must "keep a-pace" with the derivative-case plaintiffs. (Doc. 113 at 12 (citation omitted)) At the same time, the agreement preserved Defendants' right under the PSLRA not to be put to the coercive expense of discovery unless the Plaintiff's claims are sustained over a motion to dismiss.

   **4.   *Judge Nixon's conflicting order.*** On May 13, 2015, just hours before Magistrate Judge Brown filed the agreed First Amended Case Management Order, Judge Nixon entered an order recusing himself from the present case. (Doc. 135)[2] By the same Order, Judge Nixon, apparently unaware of the parties' negotiated agreement as to discovery, which Magistrate Judge Brown had approved during a telephonic conference two days earlier, lifted the stay entirely. The order lifting the discovery stay did not include a finding "that particularized discovery is necessary to preserve evidence or to prevent undue prejudice." 15 U.S.C. § 78u-4(b)(3)(B). Plaintiff's counsel has since advised that, in Plaintiff's view, discovery should now proceed "without any limitations."[3]

---

[2] To date, Judge Nixon has not recused himself from the parallel derivative suit even though Judge Sharp had previously transferred that case to Judge Nixon because the two cases are related. Order Reassigning Case, *Plumbers & Pipefitters Local Union No. 630 Pension-Annuity Trust Fund v. Smith*, No. 3:11-cv-00489 (Sept. 19, 2012) (ECF No. 42).

[3] Plaintiff's counsel has advised that Plaintiff intends to move for leave to file another amended complaint that would (among other things) extend the putative class period by several months. Defendants will address any such motion at the appropriate time. To the extent Plaintiff's proposed amendment is relevant here, however, it supports maintaining the discovery stay subject to the limitations in the Amended First Case Management Order. Defendants should not be required to provide yet more discovery until the Court has a chance to assess the legal validity of the as-yet unfiled claims.

## ARGUMENT

The Court should give effect to Magistrate Judge Brown's May 13, 2015, First Amended Case Management Order, which embodies the parties' negotiated agreement as to discovery. The Court should reconsider Judge Nixon's conflicting Order, to the extent it lifts the PSLRA stay entirely. 15 U.S.C. § 78u-4(b)(3)(B).

### A. There Are No Grounds To Support A Lifting Of The Automatic PSLRA Stay

The main purposes of the PSLRA discovery stay are to protect defendants from (1) "being subjected to extortionate demands for settlement on behalf of class plaintiffs simply because of the high cost associated with discovery in these cases"; and (2) "plaintiffs' counsel 'discovering' their way into facts that could allow them to amend an initially frivolous complaint." *In re Transcrypt Int'l Sec. Litig.*, 57 F. Supp. 2d 836, 841 (D. Neb. 1999) (quoting Conference Report). Courts do have authority to lift the stay, in whole or in part, but only upon a "find[ing] upon the motion of [a] party that particularized discovery is necessary to preserve evidence or to prevent undue prejudice." 15 U.S.C. § 78u-4(b)(3)(B).

There is no colorable basis here for a finding (and Judge Nixon did not make one) that unfettered discovery is the same as "particularized discovery," much less that such discovery is necessary "to preserve evidence or to prevent undue prejudice." *See In re Bank of Am. Corp. Sec.*, No. 09 MDL 2058, 2009 WL 4796169, at *3 (S.D.N.Y. Nov. 16, 2009) ("Even when a court finds undue prejudice, the stay will only be lifted on a 'clearly defined universe of documents.' *In re Worldcom, Inc.*, 234 F. Supp. 2d 301, 306 (S.D.N.Y. 2002). 'A string of requests, even a string of individually particularized requests—is not sufficiently particularized at the outset.' *Waldman v. Wachovia Corp.,* No. 08 Civ. 2913, 2009 WL 86763, *1 (S.D.N.Y. Jan. 12, 2009).").

Indeed, what Plaintiff requested in its motion to lift the stay was far narrower than what Judge Nixon ordered: Plaintiff asked that, unless and until the pending motion to dismiss is denied, CHSI should be required to produce in this case the same documents it previously had produced to DOJ and in the derivative case—no more and no less. (Doc. 113 at 9 (citing *In re Firstenergy Corp. Sec. Litig.*, 229 F.R.D. 541, 544 (N.D. Ohio 2004) (granting partial lifting of the discovery stay to obtain documents previously produced to the government)) Plaintiff maintained that it would be left at a "significant disadvantage" relative to the plaintiffs in the derivative case if it were not provided with the same documents at the same time. (Doc. 113 at 11)

Defendants *agreed* to Plaintiff's request, and have now produced to Plaintiff the same documents they had produced to the derivative plaintiffs.[4] And pursuant to the agreed First Amended Case Management Order, Plaintiff will continue to receive substantially all discovery in the derivative suit. It is true, as Plaintiff notes, that Defendants' motion to dismiss has been pending for a long time. But that is no basis for ignoring the PSLRA's statutory command, or to impose upon Defendants the burden of onerous discovery in a case that—as highlighted below—

---

[4] It bears noting that Defendants agreed to Plaintiff's "keep a-pace" request, even though courts have routinely rejected motions seeking the same relief. *See, e.g.*, *In re Refco, Inc.,* No. 05-civ-8626, 2006 WL 2337212, at *2 (S.D.N.Y. Aug. 8, 2006) ("As a general matter, the mere fact that documents have been provided to a third party does not entitle plaintiffs to a modification of the stay to obtain those documents."); *see id*. ("Whether PSLRA plaintiffs should be subjected to a discovery stay while other parties, who are bringing claims under other causes of action, are not subjected to a stay is a question for Congress, and one that Congress has answered. Under the PSLRA, discovery in this action has been stayed. That stay does not apply to government investigations, bankruptcy proceedings, internal investigations, or non-PSLRA actions. The discrepancy between PSLRA actions and other actions is not evidence of undue prejudice, but rather is evidence of Congress's judgment that PSLRA actions should be treated differently than other actions."); *Kuriakose v. Fed. Home Loan Mort. Co*., 674 F. Supp. 2d 483, 487 (S.D.N.Y. 2009) ("the mere fact that government entities have been provided the discovery that Plaintiffs must wait to obtain 'does not rise to the level of undue prejudice.' The delay faced by Plaintiffs is inherent in every PSLRA-mandated discovery stay.") (citation omitted).

ought to be dismissed on the pleadings. *See In re Initial Pub. Offering Sec. Litig.*, 236 F. Supp. 2d 286 (S.D.N.Y. 2002) (refusing to lift the PSLRA stay merely because the complexity of the case resulted in a lengthy delay of discovery). In short, the stay should not be lifted outright, because in light of the First Amended Case Management Order, of which Judge Nixon appears to have been unaware, there is no basis for concluding that Plaintiff will suffer undue prejudice.

### B. Lifting The Stay Would Be Particularly Inappropriate Here In Light Of Recent Authority That Supports Dismissal Of The Case

Plaintiff also has argued that lifting the stay is appropriate because the fact that CHSI entered a settlement with DOJ as to the alleged conduct "tend[s] to demonstrate" that Plaintiff's claims are meritorious. (Doc. 113 at 8) As courts have held, however, a plaintiff's argument "that its case is particularly meritorious" is "irrelevant," since the showing the plaintiff must make is that lifting the stay is "'necessary to preserve evidence or to prevent undue prejudice to that party.'" *In re Petrobras Sec. Litig.*, No. 14-cv-9662, 2015 U.S. Dist. LEXIS 51451, at *8 (S.D.N.Y. Apr. 13, 2015). In any event, to the extent it matters, Plaintiff's claims are *not* meritorious, and should be dismissed on the pleadings. In particular, recent authority confirms that the case should be dismissed for failure adequately to plead loss causation.[5]

In *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, 343 (2005), the Supreme Court held that to plead a securities fraud claim, it is not enough to allege that the defendant's misstatement caused the price of the stock to be artificially inflated. The plaintiff also must plead loss causation—meaning that plaintiffs typically must allege that the decline in the stock price for which the plaintiff seeks to recover was caused by a "corrective disclosure." To meet this pleading requirement, the plaintiff must identify a disclosure that "reveal[s] a previously

---

[5] Defendants intend to move the Court for leave to submit supplemental briefing on this aspect of their pending motion to dismiss and the new case law that directly supports it.

concealed truth," and the disclosure "obviously must disclose *new* information." *FindWhat Investor Grp. v. FindWhat.com*, 658 F.3d 1282, 1311 n.28 (11th Cir. 2011) (emphasis added); *see also D.E.J. Ltd. Partnership v. Conaway*, 133 F. App'x 994, 1000 (6th Cir. 2005). In addition, because the corrective disclosure must reveal the actual truth that was previously concealed, mere allegations by a third party, or the fact that the government initiates an investigation, are not sufficient. *Meyer v. Greene*, 710 F.3d 1189, 1201-02 (11th Cir. 2013).

Plaintiff has not, and plainly cannot, satisfy either of these requirements. First, the corrective disclosure Plaintiff alleges is the Tenet lawsuit filed in April 2011. (Doc. 68 at ¶ 359) But the Tenet complaint makes clear that the information it discloses is *not* new, since it is merely an "analysis of **publicly available information** on hospital observation rates." *See supra* at 3-4 (emphasis added). Second, the Tenet complaint did not reveal "facts" or "truth"; instead it comprised a set of allegations by a competitor attempting to fend off a hotly contested takeover bid, and the complaint was promptly dismissed.[6]

Since briefing on Defendants' motion to dismiss was completed, numerous courts have rejected virtually identical theories of loss causation. Indeed, one week ago, the Eleventh Circuit decided *Sapssov v. Health Management Assoc., Inc.*, No. 14-12838, 2015 WL 2168322 (11th Cir. May 11, 2015)—a case that is directly on point and is dispositive in Defendants' favor. In *Sapssov*, the same plaintiff as in this case (Norfolk County Retirement System) brought precisely the same claim against Health Management Associates ("HMA") as it brought here. And as in this case, the plaintiff alleged that HMA had "devised a corporate policy mandating unnecessary admission of Medicare patients to [its] hospitals to boost its financial position and stock price." *Id.* at *1. The plaintiff tried to plead loss causation based on stock price drops that occurred

---

[6] The DOJ investigation was also settled without a finding of liability.

following (1) the issuance of an analyst report that summarized an already-public whistleblower lawsuit based on the same theory; and (2) the initiation of an Inspector General's ("OIG") investigation into these practices. *Id*. at *5. The district court dismissed for failure to plead loss causation and the Court of Appeals affirmed.

As to the analyst report, the Court of Appeals held that, "because a corrective disclosure must reveal a previously concealed truth, it obviously must disclose new information, and cannot be merely confirmatory." *Id*. at *7 (internal quotation marks and alterations omitted). That is because confirmatory information "will not cause a change in stock price, because that information already has been assimilated by the market and incorporated in the stock price." *Id*. at *6. The analyst report, however, did no more than summarize facts "that had existed in publicly accessible court dockets for three months." *Id*. at *7. And because it "was easily obtainable" earlier, "the market was able to assimilate the information without the assistance" of the analyst report. *Id*. The report thus failed to support the element of loss causation, because "the mere repackaging of already-public information . . . is simply insufficient to constitute a corrective disclosure." *Id*. at *8 (citation omitted). *See Fla. Reg'l Council Pension Plan v. Eaton Corp. (In re KBC Asset Mgmt. N.V.)*, 572 F. App'x 356, 362 (6th Cir 2014) ("Because a corrective disclosure 'obviously must disclose *new* information,' the fact that the sources used in the alleged disclosure were already public is fatal to the plaintiffs' claim of loss causation.") (citation and internal quotes omitted) (emphasis in original).[7]

---

[7] *See also Meyer v. Greene*, 710 F.3d 1189, 1199 (11th Cir. 2013) (activist investor's "expert analysis" of publicly available information not a corrective disclosure); *In re Herbalife, Ltd.*, No. CV 14-2850, 2015 WL 1245191 (C.D. Cal. Mar. 16, 2015) (same); *Stein v. Tangoe, Inc.*, No. 3:13-cv-00286, 2014 U.S. Dist. LEXIS 137966 (Sept. 30, 2014) (same); *see also Fla. Carpenters Reg'l Council Pension Plan v. Eaton*, 572 Fed. App'x at 362 (endorsing *Meyer* and holding that information revealed in the course of unrelated litigation cannot constitute a corrective disclosure where it is "duplicative" of information already disclosed to market).

As for the OIG investigation, as well as the whistleblower suit summarized in the analyst report, those failed as well because they amounted to mere allegations, not facts. "Revelation of the OIG investigation, including issuance of subpoenas, does not show any actual wrongdoing and cannot qualify as a corrective disclosure." *Sassprov*, 2015 WL 2168322, at *7; *see id.* (the "whistleblower case, the basis of the 2012 [analyst] Report, was not proof of fraud, because a civil suit is not proof of liability."). *See also Loos v. Immersion Corp.*, 762 F.3d 880, 887 (9th Cir. 2014) ("The announcement of an investigation does not 'reveal' fraudulent practices to the market . . . . [A]ny decline in a corporation's share price following the announcement of an investigation can only be attributed to market speculation about whether fraud has occurred. This type of speculation cannot form the basis of a viable loss causation theory.")

The holdings in *Sapssov* and the other cases cited above are directly applicable here, and warrant dismissal on two related but independent grounds. *First*, the filing of the Tenet lawsuit against CHSI is not a corrective disclosure because Tenet's complaint makes clear that its allegations are based on "publicly available information," and a "negative characterization of already-public information" is not a corrective disclosure. *New Orleans Emps.' Ret. Sys. v. Omnicom Grp., Inc. (In re Omnicom Grp., Inc. Sec. Litig.)*, 597 F.3d 501, 512 (2d Cir. 2010). *Second*, whether the Tenet allegations are new or old, they are in any event no more than allegations, which as a matter of law "cannot qualify as a corrective disclosure." *Sapssov*, 2015 WL 2168322, at *7.

Given the circumstances of the Tenet complaint, crediting that suit as a corrective disclosure as to an alleged CHSI fraud would be particularly inappropriate. Tenet was a fierce competitor of CHSI, attempting to ward off an unwanted takeover attempt. It filed the lawsuit for the *purpose* of causing turmoil in the market for CHSI's stock. Defendants are aware of no

case finding that such a lawsuit revealed the "truth" of a company's prior misstatements. At a bare minimum, Defendants submit that there is a substantial likelihood that Defendants' Motion to Dismiss will be granted on this ground, which militates against a wholesale lifting of the PSLRA stay.

## CONCLUSION

For the foregoing reasons, the Court should enforce the parties' agreement as to discovery, embodied in the First Amended Case Management Order, and should reconsider Judge Nixon's lifting of the PSLRA.

Respectfully submitted,

/s/ Steven A. Riley
Steven A. Riley
John R. Jacobson
Milton S. McGee, III
Riley Warnock & Jacobson, PLC
1906 West End Avenue
Nashville, TN 37203
Telephone: (615) 320-3700
Fax: (615) 320-3737
sriley@rwjplc.com
jjacobson@rwjplc.com
tmcgee@rwjplc.com

*Counsel for Defendants*
*Community Health Systems, Inc.,*
*Wayne T. Smith and W. Larry Cash*

Gary A. Orseck (*pro hac vice*)
Michael L. Waldman (*pro hac vice*)
Alison Barnes (*pro hac vice*)
Robbins, Russell, Englert, Orseck,
   Untereiner & Sauber LLP
1801 K Street, N.W., Suite 411L
Washington, DC 20006
Tel:  (202) 775-4500
gorseck@robbinsrussell.com
mwaldman@robbinsrussell.com
abarnes@robbinsrussell.com

*Counsel for Defendant*
*Community Health Systems, Inc.*

# CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing has been served upon the following Filing Users through the Court's Electronic Filing System:

Peter D. Doyle
Seth D. Fier
Proskauer Rose, LLP
Eleven Times Square
Eighth Avenue & 41st Street
New York, NY 10036-8299
pdoyle@proskauer.com
sfier@proskauer.com

William M. Hamilton
Provost, Umphrey Law Firm, LLP
4205 Hillsboro Pike, Suite 303
Nashville, TN 37215
mhamilton@pulf.com

Barbara J. Hart
David Harrison
Scott V. Papp
Thomas Skelton
Lowey Dannenberg Cohen & Hart PC
White Plains Plaza, Suite 509
One North Broadway
White Plains, NY 10601
bhart@lowey.com
dharrison@lowey.com
spapp@lowey.com
tskelton@lowey.com

Christopher J. Keller
Michael W. Stocker
Rachel A. Avan
Labaton Sucharow LLP
140 Broadway
New York, NY 10005
ckeller@labaton.com
mstocker@labaton.com
ravan@labaton.com

James Gerard Stranch, IV
James Gerard Stranch, III
Branstetter, Stranch & Jennings
227 Second Avenue, N, 4th Floor
Nashville, TN 37201
gerards@bsjfirm.com
jims@bsjfirmc.om

David S. Hagy
David S. Hagy, Attorney at Law
1507 16th Avenue South
Nashville, TN 37212
dhagy@hagylaw.com

Kyle A. Young
Adams and Reese LLP
424 Church Street, Suite 2700
Nashville, TN 37219-0058
kyle.young@arlaw.com

Frederic S. Fox
Joel B. Strauss
Pamela A. Mayer
Kaplan Fox Kilsheimer LLP
850 Third Avenue, 14th Floor
New York, NY 10022
ffox@kaplanfox.com
jstrauss@kaplanfox.com
pmayer@kaplanfox.com

Richard A. Lockridge
Karen Hanson Riebel
Lockridge Grindal Nauen PLLP
100 Washington Avenue South
Suite 2200
Minneapolis, MN 55401
lockrra@locklaw.com
khriebel@locklaw.com

16
Case 3:11-cv-00433   Document 138   Filed 05/18/15   Page 16 of 17 PageID #: 3901

Michael K. Radford
Flynn & Radford
320 Seven Springs Way, Suite 150
Brentwood, TN 37027
mradford@allen-kopet.com

Robert J. Robbins
David J. George
Robbins Geller Rudman & Dowd LLP
120 E Palmetto Park Road, Suite 500
Boca Raton, FL 33432
rrobbins@rgrdlaw.com
dgeorge@rgrdlaw.com

James L. Davidson
Greenwald Davidson PLLC
5550 Glades Road, Suite 500
Boca Raton, FL 33431
jdavidson@mgjdlaw.com

Jeffrey A. Berens
Dyer & Berens LLP
303 East 17th Avenue, Suite 300
Denver, CO 80203
jeff@dyerberens.com

Michael I. Fistel, Jr.
Johnson & Weaver, LLP
40 Powder Springs Street
Marietta, GA 30064
michaelf@johnsonandweaver.com

James Maxwell Cooper
Joel A. Blanchet
Lisa V. LeCointe-Cephas
Kirkland & Ellis
Citigroup Center
601 Lexington Avenue
New York, NY 10022-4611
max.cooper@kirkland.com
joel.blanchet@kirkland.com
lisa.lecointe-cephas@kirkland.com

this 18th day of May, 2015.

                s/ Steven A. Riley