# EXHIBIT A

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| NORFOLK COUNTY RETIREMENT SYSTEM, individually and on behalf of all others similarly situated,<br><br>*Plaintiff,*<br><br>v.<br><br>COMMUNITY HEALTH SYSTEMS, INC., WAYNE T. SMITH and W. LARRY CASH,<br><br>*Defendants.*<br><br>THIS DOCUMENT RELATES TO ALL ACTIONS | Consolidated<br>Civil Action No.: 11-Cv-0433<br><br>Judge Aleta A. Trauger<br>Magistrate Judge Joe B. Brown<br><br>JURY TRIAL DEMANDED |

## [PROPOSED] SECOND AMENDED INITIAL CASE MANAGEMENT ORDER

Pursuant to Rule 16.01(d)(2) of the Middle District of Tennessee, the following Second Amended Initial Case Management Plan is adopted.

**A.     JURISDICTION**

The Court has jurisdiction pursuant to 28 U.S.C. §1331 because Lead Plaintiff, the New York City Employee Retirement System, the Teachers' Retirement System of the City of New York, the New York City Teachers' Variable Annuity Program, the New York City Police Pension Fund, and the New York City Fire Department Pension Fund (collectively, the "NYC Funds" or "Lead Plaintiff") alleges that Defendants Community Health Systems, Inc. ("CHSI"), Wayne T. Smith, and W. Larry Cash (collectively, "Defendants" and with Lead Plaintiff, the "Parties") violated the federal securities laws, including Sections 10(b) and 20(a) of the

1

Exchange Act, 15 U.S.C. §§ 78j(b) and 78t(a), and SEC Rule 10b-5 promulgated thereunder. Jurisdiction is not in dispute.

## B. BRIEF THEORIES OF THE PARTIES AND PROCEDURAL HISTORY

### (1) Lead Plaintiff's Theory of the Case

Lead Plaintiff submits that the evidence produced to date reveals that CHS, through its senior executives, Chief Executive Officer Wayne Smith ("Smith") and Chief Financial Officer W. Larry Cash ("Cash"), misled investors about the source of the Company's success. Defendants attributed CHS' admissions gains, particularly at newly acquired hospitals, to standardization, synergies, and efficiencies in CHS' emergency department ("ED" or "ER") and its commitment to patient care. However, the Defendants concealed that its success actually hinged on an unsustainable, systemic practice of improperly admitting patients without medical necessity using the non-industry standard criteria contained in their home-grown Blue Book, rigging its Pro-Med software to increase lucrative testing procedures, and setting admissions quotas and applying corporate pressure on ED physicians to increase admissions, especially patients over 65 who are covered by Medicare. Admitting patients is more valuable than treating them in observation; so criteria were permissive to trigger admission. Investors purchased CHS stock during the period of inflation in reliance upon the accuracy of CHS' disclosures. Defendants' concealed scheme was publicly revealed in two corrective disclosures. After each disclosure the stock price significantly declined resulting in investor losses of over $1.2 billion dollars.

Documents recently produced to Lead Plaintiff reveal that

2

[SPACE INTENTIONALLY LEFT BLANK PENDING RESOLUTION OF LEAD PLAINTIFF'S CONFIDENTIALITY DE-DESIGNATION REQUESTS]

Notwithstanding that Smith and Cash directed, set and enforced the "admissions" policy; they withheld facts about CHS' admissions practices because disclosure would have highlighted the regulatory exposure, and unsustainability of the practices as evident from the increased denials of claims by the CMS and third-party payors. It also would have alerted the market that admissions growth could decline. Further, it would have laid bare the palpable conflict CHS constructed between it and a physician's obligation to admit based solely upon medical necessity. Defendants concealed these core operating strategies when discussing the reasons for CHS' success not because they believed they were immaterial, but because they understood their

likely effect on the market.

Indeed, once Tenet sued CHS in a pleading containing an extensive description of the fraudulent nature of CHS' admission practices, and corroborated by expert analysis of raw Medicare data, CHS' stock price immediately declined by 36% erasing over a billion dollars in market capitalization. While CHS vehemently denied the allegations, it abandoned the aggressive admission practices and same-"store" (aka hospital) admissions declined significantly. In its October 26, 2011 financial results, CHS reported that the decline in same store admissions accelerated to 7.0% in 3Q 2011, which alerted the market that CHS' claim that switching to the industry standard would not adversely impact operations was false. The next day, CHS' stock price dropped $2.32 per share on significant trading volume.[3] Subsequently, the Company settled with the U.S. Department of Justice ("DOJ") for $98 million, in one of the five largest Medicare fraud settlements in history. Shortly thereafter, CHSI also announced it reached another settlement with the government in which CHSI agreed to pay $75 million to settle claims that it fraudulently and systematically overbilled Medicaid/Medicare from three of its hospitals in New Mexico by, *inter alia*, marking up its services and then billing the government.

This Court's prior rulings in the related derivative action captioned *Plumbers and Pipefitters Local Union No. 630 Pension-Annuity Trust Fund et al. v. Smith et al.*, No. 11-cv-00489 (M.D. Tenn.) (the "Derivative Action") finding that "Defendants' wealth of knowledge and experience with the business and management of healthcare entities, combined with their diligence and concern with increasing admission rates at CHSI hospitals, allows the Court to

---

[3] As shown in Point D, *infra*, the October 26, 2011 adverse disclosures constituted a second corrective disclosure that supports extending the close of the Class Period.

4

reasonably infer that *Defendants were aware* that obtaining significant increases in admissions rates—including a 50% increase in admissions at Triad hospitals—could not have been done without using improper means" is unquestionably supportive of the viability of Plaintiff's claims here. *See* Derivative Action, Dkt. No. 87 at 18 (emphasis added).

### (2) Defendants' Theory of the Case

### (3) Procedural History

This class action was filed on May 9, 2011 on behalf of purchasers of CHS' common stock to recover damages resulting from the substantial market losses starting on April 11, 2011 when it was revealed that Defendants had employed a nationwide scheme to improperly increase hospital patient admissions and overbill Medicare. Dkt. No. 1.

On December 28, 2011, the Court consolidated this action with two other similar securities class actions and appointed the NYC Funds as Lead Plaintiff. Dkt. No. 64. On March 23, 2012, the parties jointly agreed to a scheduling order for the filing of a consolidated class action complaint and CHS' motion to dismiss. Dkt. No. 67. In addition, the parties stipulated to the production of certain books and records that were produced by CHS in the related Derivative Action").

On July 29, 2012, Lead Plaintiff filed its Consolidated Class Action Complaint (the "Complaint") [alleging that investors suffered damages when Tenet Healthcare, Inc. exposed that CHS' unsustainable improper admissions practices]. Dkt. No. 70. On September 11, 2012, CHS moved to dismiss the Complaint Dkt. No. 53. That Motion was fully submitted on January 23, 2013 and remains *sub judice*. During the interim period, the parties filed notices of supplemental

5

authorities (Dkt. Nos. 90, 101, 105, 108, 111) and Lead Plaintiff filed a Motion to Ascertain the Status of the Case. Dkt No. 97.

On January 14, 2015, Lead Plaintiff moved this Court to lift the stay of discovery imposed by the Private Litigation Reform Act of 1995 (Dkt. No. 112-114) and for a hearing on that motion. Dkt. No. 115.

On January 16, 2015, Magistrate Judge Brown issued an order granting the motion for a hearing and set January 29, 2015 for an initial case management conference and indicated that he believed "the stay should be lifted and this case should proceed on a roughly parallel scheduling order with the [Derivative Action]." Dkt. No. 116. After that initial case management conference, the Court entered an Initial Case Management Order ("Initial CMO") (Dkt. No. 121) which provided, consistent with the parties agreement, that in anticipation of mediation, Defendants agreed to produce all of the documents produced to the DOJ during its investigation into CHS' admission practices. A final determination of the Motion to Lift the Stay was continued pending a resolution of the mediation.

On April 27, 2015, the parties jointly participated in a private mediation session which was unsuccessful. Lead Plaintiff's counsel so advised the Magistrate and renewed its request for a case management conference. Dkt. No. 122.

On May 11, 2015, Magistrate Judge Brown held a second case management conference. Defendants agreed to produce all discovery produced in the related Derivative Action for a period of 90 days (ending August 7, 2015) during which time the PLSRA stay of discovery would remain in place. Defendants also agreed to permit Lead Plaintiff to attend any depositions held in the Derivative Action. On May 13, 2015, the Court entered an order setting forth the parties' agreement. *See* Dkt. No. 136 ("First Amended CMO").

On May 12, 2015, Judge Nixon granted Lead Plaintiff's motion to lift the PSLRA stay. Dkt. No. 135. In the same order, Judge Nixon recused himself from this action. *Id.*

On May 13, 2015, this action was re-assigned to Judge Aleta A. Trauger.

### C. ISSUES RESOLVED

Jurisdiction and venue are not in dispute.

Judge Nixon's May 12, 2015 Order resolved Lead Plaintiff's Motion to Lift the PSLRA Stay (Dkt. No. 135). Discovery can now proceed accordingly without any limitations.

### D. ISSUES IN DISPUTE

Liability and Damages are still in dispute. Defendants' motion to dismiss has remained *sub judice* since January 24, 2013 (Dkt. No. 53).

#### (1) Motion to Amend the Complaint

Lead Plaintiff anticipates moving for leave to file a First Amended Consolidated Complaint ("FAC") in order to (a) include certain key factual developments relevant to Lead Plaintiff's claims that have occurred since the filing of the Complaint (including the CHS' settlement with the DOJ); (b) bolster the factual basis of the claims based upon Lead Plaintiff's review of documents that CHS produced to the DOJ; and (c) in lieu of awaiting the class certification motion to enlarge the closing date of the class period from April 11, 2011 to October 26, 2011. Lead Plaintiff shall move for leave to file a FAC within **45 days** of entry of this order.

#### (2) Motion to Dismiss the FAC

Defendants shall move to dismiss or otherwise respond to the FAC within **45 days** from the filing of the FAC. Plaintiffs shall file a response within **45 days** from the filing of the motion

7

to dismiss the FAC. Defendants shall file a reply within **21 days** from the filing of Lead Plaintiff's response to the motion to dismiss.

### (3) Motion for Class Certification

#### (a) Lead Plaintiff's Position

In the event Defendants' Motion to Dismiss is denied, Lead Plaintiff proposes the following briefing schedule related to class certification under Rule 23 of the Federal Rules of Civil Procedure:

- Lead Plaintiff's Motion for Class Certification shall be filed within **30 days** from the denial of Defendant's Motion to Dismiss;
- Defendants' Opposition thereto shall be filed within **45 days** from the filing of the Motion for Class Certification; and
- Lead Plaintiff's reply shall be filed within **45 days** from Defendants' opposition to class certification.

Lead Plaintiff further proposes that Defendants shall have **30 days** from the filing of Plaintiff's Motion for Class Certification to take the deposition of Lead Plaintiff's class expert(s). Lead Plaintiff shall have **30 days** from the filing of Defendants' response to take the deposition of Defendants class expert(s).

Any motion for Class Certification, as well as the corresponding opposition, may not exceed 25 pages. Any reply brief is limited to 15 pages, absent Court permission for longer pleading. In addition, the Court shall hold a hearing on Lead Plaintiff's Motion for Class Certification within **30 days** from the day the motion is fully submitted.

#### (b) Defendants' Position

[Premature]

E.  **INITIAL DISCLOSURES**

Pursuant to the Initial CMO, on February 18, 2015, Defendants served their initial disclosures pursuant to Rule 26(a) of the Federal Rules of Civil Procedure. Lead Plaintiff will serve its initial disclosures on _____, 2015.

F.  **DISCOVERY**

Discovery shall not be stayed during dispositive motions, unless ordered by the Court. No motions concerning discovery are to be filed until after the parties have conferred in good faith and, unable to resolve their differences, have scheduled and participated in a conference telephone call with Judge Trauger.

**(1) Protective Order**

The parties stipulated to a Protective Order governing the exchange of discovery which was entered by the Court on January 29, 2015.

**(2) Witness Disclosures**

The following is an initial list of witnesses currently known by the Parties: the NYC Funds, CHSI, current and former employees of affiliates of CHSI and current and former contractors, including physicians, hospital administrators and staff at certain CHSI-affiliated facilities, current and former executives and directors, including Defendants Wayne T. Smith, and W. Larry Cash, representatives of other healthcare providers and/or systems, certain third-parties and vendors, including Pro-MED Systems, Inc., Executive Health Resources, Inc., Premiere, and other persons or entities revealed through the course of discovery.

### (3) Initial Document Production

Pursuant to the Initial CMO, Defendants produced to Lead Plaintiff all documents that CHSI and its affiliates provided to the DOJ in connection with a series of Government subpoenas, the first of which was received in April 2011, related to short-stay admissions originating in the emergency department as well as the government's investigation into a hospital affiliated with CHSI in Laredo, Texas. Defendants also produced to Plaintiffs all applicable agreements of insurance, and insurance policies, including Director and Officer insurance policies during this same time frame.

### (4) Meet and Confer Obligations

The parties have agreed to meet and confer concerning any questions that arise concerning Initial Document Production and/or the Derivative Action Discovery. *See* Initial CMO at ¶5(c)(1); First Amended CMO at ¶3. To the extent any disputes arise regarding this discovery, the parties may contact the Court to seek relief.

### (5) Merits Discovery Plan

#### (a) Initial Discovery Requests

The parties shall serve their initial discovery requests within **14 days** of the entry of this Order. Written responses to those discovery requests will be due within **28 days** from service. Responsive materials are to be produced within **28 days** from service of the discovery request and continue on a rolling basis thereafter.

#### (b) Subpoenas to Third Parties

The parties are permitted to serve subpoenas pursuant to the Federal Rules of Civil Procedure on any third party upon entry of this Order.

### (c) Number of Depositions

The number of depositions imposed by the Federal and Local Rules of Civil Procedure is increased to a maximum of **25** per side. The parties may agree to more, but if they are unable to agree, they should request a telephone conference with the Court to resolve the issue.

### (d) Interrogatories

Local Rule 33.01(b) shall be expanded to allow 50 interrogatories, including subparts.

### (e) Fact Discovery Cut-off

Factual discovery shall close on **January 31, 2017**.

## G. MOTIONS TO AMEND

*See* Section D(1) above.

## H. EXPERT REPORTS AND EXPERT DISCOVERY

Initial reports and disclosures from Lead Plaintiff's and Defendants' retained experts under Rule 26(a)(2) shall be served on **March 1, 2017**. Rebuttal expert reports and disclosures, if any, will be served on **April 15, 2017**. Expert discovery shall close on **May 26, 2017**.

## I. DEPOSITIONS OF EXPERT WITNESSES

Depositions of the parties' experts shall be conducted between **April 15, 2017 and May 26, 2017**.

## J. JOINT MEDIATION REPORT

On April 16, 2015, the parties participated in a private mediation that was unsuccessful.

## K. DISPOSITIVE MOTIONS

Motions for summary judgment and/or summary adjudication shall be filed with the Court on **June 30, 2017**. Responses to dispositive motions shall be filed on **August 18, 2017**, and a reply shall be filed on **September 15, 2017**. Any motion for summary judgment and/or

summary adjudication, as well as the corresponding opposition, may not exceed 25 pages. Any subsequent reply brief is limited to 10 pages, absent Court permission for longer pleading.

L. **ELECTRONIC DISCOVERY**

The parties have agreed to meet-and-confer to discuss and develop certain protocols, within **14 days** following the entry of this order, that will govern the production of ESI and anticipate agreeing to an appropriate searchable format. Absent agreement, Administrative Order 174 will apply.

M. **ESTIMATED TRIAL TIME**

The parties agree that the instant action will be subject to a jury trial. The parties also agree that any discussion of a target trial date or trial duration is premature until after the pleadings in this action are resolved.

IT IS SO **ORDERED**.

_____
UNITED STATES DISTRICT JUDGE
ALETA A. TRAUGER

APPROVED FOR ENTRY:

_____
Attorney for Lead Plaintiff

_____
Attorney for Defendants