IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| NORFOLK COUNTY RETIREMENT SYSTEM, individually and on behalf of others similarly situated,<br><br>    Plaintiff,<br><br>v.<br><br>COMMUNITY HEALTH SYSTEMS, INC., WAYNE T. SMITH, and LARRY CASH,<br><br>    Defendants. | NO. 3:11-cv-00433<br>CONSOLIDATED CASES<br>JUDGE RICHARDSON |

## **MEMORANDUM OPINION**

Pending before the Court is Lead Plaintiff's Motion to Clarify Class Definition (Doc. No. 400, "Motion to Clarify"). As set forth below, the Motion to Clarify will be granted in part and denied in part. In particular, the Court will decline to grant the very specific relief requested by Lead Plaintiff but will grant relief consistent with what Lead Plaintiff actually seeks, by otherwise amending its class certification order to account for Lead Plaintiff's legitimate concerns.

Via the Motion to Clarify, Lead Plaintiff seeks to clarify (or, in Defendants' view, to *expand*) the definition of the class this Court recently certified ("current class definition"), namely:

> All persons who and entities who purchased the publicly traded common stock of CHS from July 27, 2006 through April 8, 2011, inclusive, and who were damaged thereby. Excluded from the Class are Defendants, the officers and directors of the company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entities in which Defendants have or had a controlling interest.

(Doc. No. 396 at 1; Doc. No. 394 at 39). Lead Plaintiff claims that the Court should "clarify" this definition with respect to the period beginning after April 8, 2011 and continuing until October 26, 2011 ("extended period"). According to Lead Plaintiff, the Court should make clear that this definition

1

includes persons and entities who, like Lead Plaintiff, purchased publicly traded common stock of CHS both before April 8, 2011 and also during the extended period. (Doc. No. 400 at 1). Lead Plaintiff claims that this clarification will make the definition consistent with what it characterizes as the Court's extant decision concerning the extended period: that "only 'first time' purchasers of the stock during this extended period [should be excluded from the class]."[1] (*Id.*) In other words, Plaintiff seeks to clarify that those who purchased *both* during the period referenced in the current class definition (July 27, 2006 through April 8, 2011, "current class period") *and* afterwards during the extended period should be included along with those who purchased *only* during the current class period (and not during the extended period).

If this were the only issue implicated by the Motion to Clarify, the Motion to Clarify would be easy to resolve. The current class definition includes all who purchased CHS common stock during the class period (provided that they were damaged thereby); it therefore includes those who purchased during the class period *and* during the extended period. The latter group is merely a subset of the former group, and thus is necessarily included in the former group. Therefore, the Court could resolve the Motion to Clarify by making an easy (and ultimately immaterial) choice: (a) grant Lead Plaintiffs' request to amend the language to call specific attention to the fact that the subset is included in the larger group that falls within the current class definition; or (b) decline Lead Plaintiffs' request and stand on the fact that the subset is necessarily included within the current class definition, irrespective of whether that fact is specifically highlighted by the class definition. In other words, Lead Plaintiff's assertion that the subset is included within the class definition is obviously correct—so obviously that the clarification sought by Lead Plaintiff is not necessary (or also not incorrect, for that matter).

---

[1] The content is brackets is not included in the Lead Plaintiff's characterization of the Court's decision. It seems to the Court that Lead Plaintiff's characterization of the Court's decision regarding the period from April 8, 2011 up until October 26, 2011 may contain a scrivener's error and/or be unintentionally truncated. The Court perceives that the language in brackets is necessary to complete the characterization Lead Plaintiff meant to convey.

2

Ultimately, the clarification would provide the benefits of ostensible hyper-clarity in the definition at the cost of extra verbiage that ultimately would be both unnecessary and possibly misleading.[2]

Delving beneath the surface, however, the Court perceives that Lead Plaintiff is less concerned with the specification of *class membership* than it is with specification of the *claims subject to class treatment*. That is why Lead Plaintiff asserts that logically, based on certain language from the Court's Memorandum Opinion (Doc. No. 394) that pronounced the current class definition, "investors like [Lead Plaintiff], who bought stock both prior to and after Tenet's lawsuit, have *all* their purchases, before and after April 8, 2011,[3] included in the class." (Doc. No. 400 at 2) (emphasis in original).

Defendants opposes the Motion to Clarify. Initially, Defendants assert that the requested clarification is unnecessary because (according to Defendants) the current class definition "expressly *includes* those who purchased the stock of Community Health Systems, Inc. ("CHSI") through and including April 8, 2011, and expressly *excludes* those who purchased the stock thereafter." (Doc. No. 402 at 1-2) (emphasis in original). For two reasons, the Court cannot tell exactly why Defendants are claiming that class membership need not be clarified. The first is that Defendants provide an inexact characterization of the current class definition; it does not categorically exclude (expressly or otherwise) all those who purchased stock after April 8, 2011, but rather excludes (albeit only implicitly) those who purchased stock *only* after April 8, 2019. The second is that, like Plaintiffs, Defendants are concentrating not so much on who is included *class membership* but rather on which *claims are subject to class treatment*: Defendants' focus, like Lead Plaintiff's, is understandable but tends to obscure their analysis of why the current class definition need not be amended to clarify *who is included in class*

---

[2] When extra, unnecessary verbiage—mere surplusage—is included in a definition, it may incline observers to read into the definition an unintended meaning in order to render the extra verbiage something other than mere surplusage.

[3] Lead Plaintiff does not so state, but presumably it intends here to mean after April 8, 2011 through and including October 26, 2011. Lead Plaintiff well may not have made any purchases after October 26, 2011, but if it did, as it presumably realizes, those purchases obviously would not be included in class treatment under any circumstances.

3

*membership*. But in any event, as discussed above, the Court agrees that clarification of class membership is unnecessary (though not necessarily inappropriate on balance), albeit perhaps for a different reason than Defendants have in mind.

Defendants then address what is truly at issue on the Motion to Clarify: which claims, of purchasers who bought both during the current class period and the extended period, are subject to class treatment? According to Defendants, it is only claims based on purchases on or before April 8, 2011. As noted above, not surprisingly, Lead Plaintiff asserts that claims based on purchases after April 8, 2011 and on or before October 26, 2011 are also subject to class treatment. This is the primary issue the Court actually needs to resolve on the Motion to Clarify.[4]

## ANALYSIS

It is understandable that the parties are raising and contesting this issue in the aftermath of the Court's Order granting class certification and defining the class. Although confident (for the reasons discussed above) that it provided an adequately clear definition of those included within the class, the Court acknowledges that it could have been clearer as to which claims are subject to class treatment. The Court did state, clearly enough, that "investors who purchased CHS stock on or before April 8, 2011 may bring claims based on events that transpired through October 26, 2011 (to the extent they held their stock until October)." (Doc. No. 394 at 38). But what was arguably left ambiguous was whether those falling within the current class definition may bring claims based on *purchases* (as opposed to other "events" that could impact a claim that is based on a purchase made within the current class period) made within the extended period. The Court will clarify whether such claims are subject to class treatment.

---

[4] Defendant appears to question whether the motion to clarify is cognizable under Rule 60(b). (Doc. No. 402 at 3). This is a fair question, but one the Court need not answer because it has the discretion, which it believes it should exercise in this case, to clarify—by amending—its certification order under Rule 23(c)(1)(C).

For 16 years now, Rule 23 has required a class certification order to define, among other things, the claims subject to class treatment. "Included as part of the 2003 amendments to the rule was newly-created Subdivision (c)(1)(B), which provides in relevant part that '[a]n order certifying a class action must define the class and the class claims, issues, or defenses....'" *Wachtel ex rel. Jesse v. Guardian Life Ins. Co. of Am.*, 453 F.3d 179, 184 (3d Cir. 2006) (quoting Fed. R. Civ. P. 23(c)(1)(B)). As the Third Circuit in particular has noted, this separate imperative of specifying the claims subject to class treatment is an important one—one the Third Circuit requires to be satisfied with particular rigor. *E.g., Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 591-92 (3d Cir. 2012); *Wachtel*, 453 F.3d at 184. The Court perceives that courts within the Sixth Circuit have not always focused to the same extent on, or displayed the same rigor with respect to, this requirement; perhaps this is because in many cases the specification of the class will operate as a *de facto* indication of the claims subject to class treatment, thus making the specification of those claims something of an afterthought. Nevertheless, in any case the claims subject to class treatment must be defined with whatever specificity is necessary under the circumstances.[5]

It is also understandable why each side contends that its take on this issue is the correct one. There is something to be said for each side's position. Defendants reasonably rely on the Court's rationale for excluding those who purchased only after the current class period. As Defendants note,

---

[5] The Third Circuit has noted the ambiguity in Rule 23 as to what exactly is required in this regard:

> In our efforts to determine precisely what district courts must do in order properly to "define" those claims, issues, or defenses appropriate for class treatment in a given matter, we find ourselves in uncharted waters. Not only are the requirements of Rule 23(c)(1)(B) a matter of first impression for this Court, but, to our knowledge, neither our sister courts of appeals nor any other federal court has addressed the issue. Furthermore, the Advisory Committee Notes accompanying the text of Rule 23 make no explicit reference to Subdivision (c)(1)(B).

*Wachtel*, 453 F.3d at 184. Here, the Court will identify the claims subject to class treatment with the degree of specificity it believes appropriate given the unique circumstances of this case and the current issues related to the extended period.

"As the Court explained, the *reason* post-April 8, 2011 purchasers are excluded from the class is that their claims differ on the merits from those who purchased on or before April 8." (Doc. No. 402 at 2) (emphasis in original).[6] Taken to its logical conclusion, Defendants imply, this rationale entails that *all* purchases in the extended period should be excluded as the basis for a claim subject to class treatment.

Lead Plaintiff responds that the Court's extant decision, as well as Defendants' pre-certification briefing, were expressly focused specifically on whether to exclude purchasers who *first* purchased during the extended period. (Doc. No. 403 at 3). Lead Plaintiff also asserts that under (non-binding) case law regarding typicality, and regarding the need not to slice securities-fraud classes so thinly as to frustrate the purpose of class action litigation, a class can include members who purchased both before and after relevant corrective disclosures. (*Id.* at 4-5).[7]

Faced with two colorable, competing positions, the Court must choose between them. Consistent with its original intent, though only after considering the parties' new arguments on the Motion to Clarify, the Court sides with Lead Plaintiff. It does so for five reasons.

First, Defendants' argument, though hardly frivolous, suffers from a basic flaw. Contrary to Defendants' apparent perception upon which its argument is largely based, the Court did not categorically exclude *"post-April 8, 2019 purchasers."* Instead, the Court categorically included "on-

---

[6] Defendants also rely on an alleged acknowledgment from Lead Plaintiff's counsel that "'the decision by the Court . . . carve[d] out purchases in CHS stock made after April 8, 2011.'" (Doc. No. 402 at 2) (claiming to quote Exhibit A to Doc. No. 402). The Court, however, cannot find in Exhibit A any such acknowledgment, and so Defendants' reliance on it appears inapt.

[7] In citing these cases and making this argument, Lead Plaintiff may also mean to convey a disagreement not only with Defendant on the current issue of whether class claims will include purchases made during the extended period by those who also purchased during the current class period, but also a disagreement with the Court over its prior decision not to include in the current class definition purchasers who purchased only in the extended class period. If so, the Court does not begrudge Lead Plaintiff this disagreement, but it would note that it need not respond fully and that in any event the Court's prior decision: (a) was not grounded solely on a lack of typicality, but also a lack of adequacy under the unique circumstances of this case; and (b) neither causes in this case nor promotes generally a "slic[ing] and dic[ing]" of classes in securities litigation, (Doc No. 403 at 5 (quoting *Wilkof v. Caraco Pharm. Labs.*, Ltd, 280 F.R.D 332, 340 (E.D. Mich. 2012)), but rather merely draws a single, clean, and easily articulable line between those included in the class and those excluded from the class.

or-before April 8 purchasers," a group that necessarily includes any "post-April 8, 2019 purchaser" who was also an on-or-before April 8, 2019 purchaser.

Second, as noted above, the Court did say that "investors who purchased CHS stock on or before April 8, 2011 may bring claims based on events that transpired through October 26, 2011," and its unspoken intent was for such "events" to include additional purchases. Third, Lead Plaintiff's (and the Court's original and now-restated) position is on balance more consistent with what the Sixth Circuit said—or at least implied— regarding this issue prior to remanding this case. The Sixth Circuit generally seemed to imply that investors who held CHS stock as of April 2011 continued to allegedly be victimized by the same alleged fraud until October 2011. If so, any such investor, being within the current class definition, presumably should be permitted to bring claims based on purchases through October; the Sixth Circuit was not entirely clear on this point, but the Court concludes that this is the upshot of what the Sixth Circuit did say. Fourth, consistent with Lead Plaintiffs' observations, the Court is having trouble seeing where Defendants originally even placed in issue whether those who purchased during the current class period could also bring claims based on purchases made during the extended period.

Finally, the Court goes back to a key aspect of the Court's rationale for excluding from the class definition the additional class members that had been proposed by Lead Plaintiff, *i.e.*, those who purchased CHS stock only after April 8, 2011. The Court reasoned that "Lead Plaintiff likely would not be an adequate representative of the [proposed] additional class members, as Lead Plaintiff well may focus heavily on the fact of, and resulting harm from, the prior withholding of information that was revealed on April 11, 2011; any such focus would likely be to the detriment of the proposed additional class members." (Doc. No. 394 at 38). The Court here was concerned with the likely stark difference in potential strategy between: (a) those who purchased on or before, *even if also after*, April 8, 2011 (*i.e.,* during the current class period *even if also* during the extended period); and (b) those who purchased *only after* April 8, 2011 (i.e., *only* during the extended period). The former group—

especially but not exclusively those who did not purchase within the extended period—likely has an incentive to maximize the significance of Tenet's April 11, 2011 disclosures. By contrast, the latter group likely has every incentive to minimize the significance of these disclosures compared to the significance of later disclosures.

It was this difference that made Lead Plaintiff, in the Court's view, an inadequate representative for those who purchased *only* during the extended period. The Court did not have the same concerns regarding Lead Plaintiff's ability to represent those post-April 8, 2019 purchasers who, like Lead Plaintiff, also purchased during the current class period; there could be some strategic tensions between class members like Lead Plaintiff (who purchased during both the current class period and the extended period) and class members who purchased only during the current class period.. However, the Court believes that the tension would not be nearly as strong; all such purchasers would have a likely incentive to emphasize the significance of the April 8, 2011 disclosures by Tenet, even if those who also purchased during the extended period would be less likely to put all their eggs in that basket.

Put another way, because all class members must be represented by the same class counsel, no member of a class that includes (and indeed is defined in terms of) those who purchased on or before April 8, 2011 should have a substantial incentive to minimize the impact and importance of Tenet's April 11, 2011 disclosures. Those who purchased *only* after April 8, 2011 likely would have such a substantial incentive and thus should be excluded from such a class.

## CONCLUSION

Lead Plaintiff's Motion to Clarify Class Definition (Doc. No. 400) will be **GRANTED IN PART** and **DENIED IN PART**.

Lead Plaintiff's request for clarification is well taken. To be sure, the clarification needed actually relates to the claims subject to class treatment rather than the persons or entities falling within the class. Nevertheless, Plaintiff is entitled, in substance, to essentially the relief it seeks. The Order certifying the class will be amended to reflect that current class members may bring claims based on

purchases occurring up to and including October 26, 2011. In this sense, the Motion to Clarify will be granted.

As for Lead Plaintiff's ostensible request to clarify *who is included in the class*, that request is denied because: (a) such clarification is unnecessary because the current class definition unambiguously includes all those whom Lead Plaintiff wishes to highlight as included in an amended definition; (b) the requested clarification would result in superfluous language that is not worth the marginal benefits of the hyper-clarity the requested clarification is intended to promote; and (c) any marginal utility that might flow from Lead Plaintiff's requested hyper-clarity on this issue in fact has been rendered virtually non-existent due to the additional clarity brought to this issue by the Court's clarification of the related issue of which *claims* are included within class treatment. To this extent, the Motion to Clarify will be denied.

An appropriate order will be entered.

*Eli Richardson*
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE